ORIGINAL

Michael F. Schulze
Reg. #36817-048
FCI Bennettsville
P.O. Box 52020
Bennettsville, SC 29512-5220

IN PRO PER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 13 2006

at 11 o'clock and 27 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                             )<br>             Plaintiff,      )<br>                             )<br>     vs.                     )<br>                             )<br> MICHAEL F. SCHULZE,          )<br>                             )<br>             Defendant.      )<br> _____ ) | CR. NO. 02-00090 (DAE)<br><br>MOTION FOR DISCLOSURE OF<br>GRAND JURY TRANSCRIPTS<br>PURSUANT TO FEDERAL RULES<br>OF CRIMINAL PROCEDURE,<br>RULE 6e |

COMES NOW defendant Michael Schulze, pro se, and moves this Honorable Court to Order that Copies of the grand jury transcripts from the hearings held on: (1) March 21, 2002; (2) October 3, 2002; and (3) December 27, 2002, in re the above captioned case be provided to him for good cause shown.

This motion is made pursuant to Federal Rules of Criminal Procedure, Rule 6(e), which provides for disclosure of grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occured before the grand jury; Rule 6(e)(3)(E)(ii).

This request is also made pursuant to the Sixth and Fourteenth Amendment, which override any need for secrecy of the grand jury proceedings, where requested transcripts are needed to support defendant's position in another judicial proceeding.

Specifically, the requested material will likely prove that the proceedings before each grand jury was tainted by governmental and prosecutorial misconduct, and perjured testimony; that the Indictment(s) should be dismissed because Assistant U.S. Attorney, Kenneth M. Sorenson's (hereinafter Sorenson) overreaching conduct interfered with the juries exercise of unbiassed judgment, by where he:

A) allowed perjured testimony from FBI Special Agent, Cindy Maglasang (Maglasang) that was based upon evidence they knew had been obtained in violation of state and federal laws;

B) allowed perjured testimony from Maglasang that was based upon evidence known to have been fabricated and misleading;

C) elicited agreements to several erroneous calculations of proffits from drug deals and large bank accounts;

D) expressed personal views and conclusions concerning conversatons and evidence not available to the jury.

The requested transcripts are particularly important to test the credibility of trial witness, Maglasang, whose pre-trial documents and statements were contradicted by evidence and testimony at trial, and, where the evidence relied upon to form the Indictment(s) was provided by outside source, Steven Olaes (Olaes), who, proved to be deceitful and dishonest.

Also, the transcripts are needed to demonstrate defendant's position that the Government did not independently obtain corroborative evidence to support the Indictment; that each overt act mentioned in the Indictment was based on the recordings Olaes made in violation of state and federal laws.

## BACKGROUND

1. In early August, 2001, Olaes contacted the Honolulu FBI to become an informant. Subsequently, between August 30th, 2001, and March 20th, 2002, Olaes recorded numerous private conversations of himself and others at the request of Maglasang.

2. On March 21, 2002, defendant Schulze, Ralph Byrd, and Anthony Tabion, were indicted for conspiring to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §846.

3. On October 3, 2002, a Superseding Indictment was issued, charging defendant with distribution of 5 and 50 grams of methamphetamine on August 30th (Count Two), and October 2nd, 2001 (Count Three), respectively.

4. In October, 2002, defendant moved to suppress evidence on the ground that it was obtained by Olaes in violation of state and federal laws.

5. In November, 2002, this Honorable Court denied the motion(s) based upon Sorenson's claim that Olaes was an Informant acting under Government direction when he made the recordings for FBI, and as such, the evidence was legally obtained under color of law.

6. On December 26, 2002, defendant moved for reconsideration of the previous Order denying suppression.

7. On December 27, 2002, the Second Superseding Indictment was issued, dismissing Ralph Byrd from Count One (Conspiracy).

8. On January 23, 2003, this Honorable Court denied defendant's motion for reconsideration.

9. On January 30, 2003, defendant's eight-day trial began at which Maglasang and Olaes testified.

## STANDARD OF REVIEW

"Grand jury testimony is ordinarily confidential, but, after the grand jury's functions are ended, disclosure is proper where the ends of justice require it." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234 (1940).

"Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater then the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil Company of California v. Petrol Stops Northwest, 441 U.S. 221, ___, (1979).

"A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists... which outweighs the policy of secrecy." United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986).

"On occasion, and in widely-varying factual contexts, federal courts have dismissed indictments because of the way in which the prosecution sought and secured the charges from the grand jury. These dismissals have been based either on constitutional grounds or on the court's inherent supervisory powers. Whatever the basis of the dismissal, however, the court's goal has been the same, 'to protect the integrity of the judicial process, ... particularly the functions of the grand jury, from unfair or improper prosecutorial conduct.'" United States v. Chanen, 549 F.2d 1306, 1309 (9th Cir. 1977).

Prosecutorial misconduct before the grand jury occures

"[W]here abuse [is] to such an extent as to be capricious and violative of due process." United States v. Samango, 607 F.2d 877, 881 (9th Cir. 1979)(quoting United States v. Welch, 572 F.2d 1359, 1360 (9th Cir. 1978)), Cert. denied. 439 U.S. 842 (1978).

"Flawed grand jury proceedings can be reviewed and remedied after a conviction has been entered and all criminal proceedings have been terminated in the district court. A conviction could be reversed if at a later statge it is concluded that the grand jury was tainted." In re Grand Jury Proceedings (Johanson), 632 F.2d 1033, 1039 (3rd Cir. 1980); See also: United States v. Garner, 632 F.2d 758, 767 (9th Cir. 1980).

Under the doctrine of Napue v. Illinois, 360 U.S. 264, 269-72 (1959), a conviction violates the Fourteenth Amendment if is obtained by the use of perjured testimony which the prosecution knows to be false or later discovers to be false and allows to go uncorrected.

ARGUMENT

A. PERJURED TESTIMONY BEFORE THE GRAND JURY.

Defendant believes the facts and documents submitted herein demonstrate that Sorenson allowed Maglasang to misinform the jury about Olaes' participation, and the origin of the evidence in this case. Specifically, Maglasang likely testified that Olaes was a confidential informat who worked with FBI since August, 2001, and that his recordings were legally made under FBI direction.

The fact is, Olaes was not legally allowed to assist the FBI until October 5, 2001, and Counts Two and Three were based upon evidence Olaes obtained in violation of state and federal laws.

-5-

Defendant believes that Sorenson and Maglasang were aware that evidence obtained by Olaes during this period was in fact unlawful and prone to suppression, and it appears that they were committed to improper measures to conceal this information through the process of misrepresenting the facts and circumstances before this Honorable Court, and possibly each grand jury.

It was established during trial that evidence provided by Olaes up until October 5, 2001, was obtained in violation of state and federal laws. Maglasang stated that Olaes was on probation and that she sought, but was unable to obtain authorization to allow his participation in her investigation, because as an informant, "he would be undertaking in criminal activity under our direction." (Exhibit "A")

Government documents indicate that Sorenson was aware that Olaes was on probation during this period and did not qualify under FBI guidelines to participate in Tier II criminal activity (purchase of contraband). Sorenson's concurrence was not given until October 22, 2001. (Exhibit "B")

In fact, Government documents appear to indicate that Olaes did not become an FBI informant until October 24, 2001, whereupon recording conversations and performing drug transaction would be "under government direction" pursuant to 18 U.S.C. §2511(2)(c). Therefore, evidence obtained prior was illegal. (Exhibit "C")

Despite this apparent knowledge, Sorenson and Maglasang continued to submit documents and statements that were misleading and in some instances were completely false. For example.

In his November 4, 2002, Response to defendant's motion for suppression, Sorenson states:

>"These conversations were all recorded by FBI
>agents and 'live' monitored while they were
>taking place over transmissions from the body
>wire the CS had concealed on his person. Id at 4.

and

>"The consensual recordings in this case were
>conducted under the color of law pursuant to
>Section 2511(2)(c),..." Id at 16.

At the November 18, 2002, suppression hearing, this Honorable Court asked Sorenson whether the transactions of August 30th and October 2nd were observed? Sorenson answered:

>"These were observed monitored -- well, excuse
>me. The second one was an observed monitored --
>electronically monitored conversation..."
>(Exhibit "D") [1]

These statements were contradicted during trial when FBI Special Agent, Bruce Neal Strauss, testified that while assisting Maglasang on October 2nd, 2001 (TR:2-202), he did not observe or overhear any conversation, stating:

>"I believe my transmitter was not picking up
>very clearly and I don't recall any
>conversation." (Exhibit "F")

Trial testimony revealed that Agent Strauss and Maglasang were the only Agents to participate in the October 2nd event, and that Maglasang did not observe the alleged meeting or monitor any conversations either. (Exhibit "G")

As for the alleged August 30th transaction, Maglasang testified that there were no witnesses, surveillance, monitoring, transmission, or recordings. (Exhibit "H")

---

[1] During this hearing, Sorenson insisted the recordings contain admissions by defendant. Instead of producing transcripts of these alleged confessions, Sorenson refers the court to page 11 (Exhibit "E"), of an affidavit filed in Nevada by Agent Gavin, who received his information from Olaes and Maglasang and relayed "the general substance of the conversations...as was uderstood by those who recorded...or monitored...or reviewed [them]." Affidavit at 7.

In his January 13, 2003, Response to defendant's motion for re-consideration, Sorenson stated:

> "The most important conversations were recorded by FBI personnel using the informant as a host for the transmitter." Id at 7.

This statement appears to be misleading. The FBI did not record a single conversation in this case, they were not authorized pursuant to 18 U.S.C. § 2518. In addition, considering it was established at trial that Counts 2 and 3 were not transmitted or monitored by "FBI personnel", one is left to wonder what "important conversations" could Sorenson be referring to?[2]

Despite personal knowledge that FBI was denied authorization for Olaes to participate until October 5th, 2001, Maglasang submitted a sworn Declaration in support of Sorenson's January 13, 2003, Response, stating:

> "In August of 2001, the FBI began working with then confidential informant Steven Olaes..." Declaration at 1. (Emphasis added)

Considering the documents and trial testimony submitted herein, it appears this is a perjured statement.

B.  TESTIMONY BASED UPON MANUFACTURED EVIDENCE.

Upon defendant's arrest on April 2, 2002, FBI took bank records, corporate documents, construction and other business receipts from his Las Vegas home. Maglasang also subpoenaed bank records from defendant, his mother, and fiancee, Alena Olaes.

---

[2] There were two meetings recorded after October 2nd, 2001, in which defendant is an alleged participant. These recordings of February 5th and 6th, 2002, were made in Las Vegas and appear to have been partially monitored. However, they are of social, not criminal settings, and were not mentioned in either indictment.

Defendant believes these bank records and documents taken from Las Vegas did not reflect the type of financial situation needed to prove Government contention that defendant "operated a substancial and profitable methamphetamine traffiking enterprise". (November 4, 2002, Response at 2).

Defendant submits that as a result, the Government devised a crafty plan that allowed Sorenson to solicit misspoken testimony based upon manufactured evidence during his "show me the money" phase of the trial. (TR:1-124).

The manufactured evidence was provided by Maglasang, where she comprised bank statements consisting of deposits and checks issued (double-counting), loans, transfers (double-counting), and receipts of miscellaneous merchandise paid by cash, credit, and check. Maglasang then created worksheets designed to reflect numerous accounts and large cash deposits, and overall unexplained wealth in comparison to income reported.

These "worksheets" were then provided to FBI Financial Analyst, Conrad Ho, who transferred Maglasang's conclusions onto his own speadsheets and summary charts. (Exhibit "I").

Sorenson then introduced Ho's spreadsheets and summary charts as exhibits, and proceeded to draw testimony from Agent Ho petaining to his conclusionary findings of Maglasang's worksheets. (Exhibit "J").

Defendant submits Maglasang's worksheets were maliciously fabricated, and it caused Agent Ho to give false and misleading testimony of non-existent accounts; doubled and tripled balances; and fictitious deposits (Exhibit "K"). All of which defendant believes was conveyed and relied upon by the grand juries.

C.  ERRONEOUS STATEMENTS FROM FALSE CALCULATIONS OF PROFFIT.

During trial, Sorenson made statements and elicited agreements from Maglasang pertaining to the same erroneous calculations of proffits from the alleged conspiracy that she had manufactured in the first place.  Defendant suggests that these were misleading statements consciously made to create a bias jury. For example, Sorenson stated:

> "Gretchen Schulze, Mike's mother, she had close to ten accounts at Pearl Harbor Federal Credit Union.  **I have no idea why she had so many accounts**... [S]o $344,000 went into her accounts."  (TR:1-125,126).

Sorenson knew, or should have known that <u>three</u> of these "ten accounts" were <u>bank loans</u>; that the others were an: <u>IRA</u>, <u>Money Market</u>, <u>Checking</u>, and <u>Savings</u> account, because they are itemized as such on the worksheets that Maglasang created for him.  He had to have reviewed his own evidence prior to trial.  (Exhibit "L").

Sorenson then asked Maglasang (while under oath):

> "is there evidence in this case that indicates that -- large amounts of monies went through bank accounts controlled by [Gretchen Schulze]?"

Maglasang then answered: "Yes."  (TR:3-89,90)

Sorenson also stated directly to this Honorable Court:

> "we think we can show through our evidence that a large amount of... cash... [went into] the bank accounts of both his mother,... and girlfriend [Alena Olaes]."  (TR:3-97).

This appears to be a recklessly false statement.  Days later Agent Ho testified that that Gretchen Schulze had a total of $12,000 in cash deposits over the five-year period (Exhibit "M"). In addition, cash deposits into the checking account of Alena Olaes averaged less then $1,000 per month (Exhibit "N") and was reported as income.  No deposits of cash went into her savings.

-10-

D.  SORENSON'S PERSONAL VIEWS OF CONVERSATIONS AND EVIDENCE NOT AVAILABLE TO THE JURY.

During trial, Sorenson made statements expressing his personal views and conclusions of evidence not available to the jury. For example, Sorenson stated:

> "Specifically, there will be evidence to show that this guy Ronnie Vasconcellos wired on one occasion 15 grand to that [account]. Ronnie Vasconcellos is a drug dealer now convicted." (TR:1-115); "Now, he [defendant] fronted dope to Ronnie Vasconcellos and had some problems for that." (TR:1-122);
>
> "Brennen Roberts told Mike --- Mike fronted him two pounds. What's that, $60,000 worth of dope? I think he gave it to him for $40,000." (TR:1-122);
>
> "You will hear [defendant] talking to his close friend Shane Ahlo... [H]e's a criminal... working as an informant with the FBI." (TR:1-124); "December 15th, the next notable event, is that Shane Ahlo meeting,..." (TR:1-131).

Defendant is aware that opening statements are not offered as evidence. However, the individuals mentioned here did not testify, and no such evidence was provided to the jury to support these otherwise baseless claims. These are the type of prejudicial statements defendant believes the grand jury heard.

E.  INFORMANT'S TESTIMONY.

Defendant believes Sorenson likely allowed Olaes to testify before the grand juries despite knowing Olaes: (1) had a history of drug abuse (TR:4-85); (2) a criminal record (TR:4-66); (3) used drugs during the investigation (TR:4-89); (4) was paid $18,000 in cash for his information (TR:6-131); and (5) knew he could earn up to $250,000 per conviction (TR:4-78 and 6-133).

These factors alone place Olaes' credibility in question. However, the need for grand jury disclosure becomes paramount when it is learned that throughout his participation, Olaes: (1) made false statements to federal officials; (2) obstructed justice; (3) violated his probation; (4) possessed, distributed, and conspired to distribute methamphetamine; and (5) stole drugs from the FBI for his own personal use. (Exhibit "O").[3]

Olaes' credibility and testimony were critical to this case. Counts Two and Three of the Indictment(s) are derived from Olaes' account of August 30th and October 2nd, and Count One encompasses the contents of conversations recorded or recited by him. It is also evident from Maglasang's trial testimony, and Agent Gavin's Affidavit, that the FBI relied "exclusively" on Olaes.

It was demonstrated through trial that the Government did not possess any corroborative evidence independent of Olaes' assistance, and there were no witnesses who testified to having personal knowledge to support Olaes' claims. These facts suggest that without Olaes, the Indictment(s) would not exist.

## CONCLUSION

Defendant submits that he has established justification for disclosure; that Sorenson's and Maglasang's misconduct is clearly prevalent in this matter; and where Olaes has demonstrated an utter disrespect for law enforcement, and a propensity to lie and

---

[3] It is important to note here that Maglasang acknowledged Olaes violated state and federal laws during his participation, which is precisely the issue defendant based his suppression motion(s) on, and what Sorenson and Maglasang concealed pre-trial. Also, Maglasang indicates she was aware of Olaes' real source of methamphetamine all along (Emory), but did not care to investigate.

fabricate evidence to secure his position of access to free drugs to support his addiction. Under these circumstances, justice requires disclosure.

For the foregoing reasons, defendant respectfully submits this motion and prays that this Honorable Court Order that Copies of the grand jury transcripts from each hearing be provided.

DATE: April 5, 2006                    Respectfully submitted,

                                       _____
                                       Michael F. Schulze
                                       Defendant, pro se

//
//

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing MOTION FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS was duly served upon counsel for the United States of America, by depositing the same in the U.S. Institutional Mail at FCI Bennettsville, South Carolina, first class, with sufficient postage attached and addressed to:

> Kenneth M. Sorenson, Esq. AUSA
> Office of the United States Attorney
> Room 6-100, PJKK Federal Building
> 300 Ala Moana Boulevard
> Honolulu, Hawaii 96850

DATED: April 7, 2006
Bennettsville, SC

By: _____
Michael F. Schulze
Defendant, pro se