EXHIBIT "D"

(TRANSCRIPT OF HEARING TO SUPPRESS EVIDENCE)

November 18, 2002.

APPEARANCES: AUSA, Kenneth Sorenson, before the Honorable David Alan Ezra, Chief United States District Judge.

1  independent evidence out of the defendant's own mouth of his
2  drug dealing; all you have is a bunch of admissions by him
3  that he has a lot of expensive goodies.
4       MR. SORENSON: Well, Your Honor, again, if -- if the
5  Court looked at this affidavit and read it, and assumed that
6  the Court knew everything that the defense says is true about
7  this informant, which we don't -- which we deny. A lot of
8  it -- some of it is true, a lot of it isn't true, but in -- in
9  any event, take it all at face value, throw it in there, and
10 if the Court looked at this affidavit would the Court issue
11 the search warrant in this case. And we believe that question
12 is answered with a resounding yes.
13      THE COURT: Well, what exactly do you have in terms
14 of -- I think you need to put it on the record. What do you
15 have -- what admissions do you have that the defendant -- you
16 stated in your memo that the defendant laundered money --
17 admitted he laundered money, drug proceeds, admitted he did
18 drugs. Where is that in the -- in --
19      MR. SORENSON: Well, Your Honor, really you have to
20 take the affidavit in its totality. You have to read the
21 whole thing.
22      THE COURT: That's not what I asked.
23      MR. SORENSON: No, I understand that. But what I am
24 saying is, is that when you read the affidavit, you realize,
25 number one, that Mike Schulze sold drugs directly to our

1  undercover informant in this case on two occasions. He sold
2  enough drugs on each one to trigger a ten-year mandatory
3  minimum. He sold two ounces the first time and he sold two
4  ounces the second time.
5          THE COURT: Were these observed transactions?
6          MR. SORENSON: These were observed, surveilled --
7  well, excuse me. The second one was an observed, monitored --
8  electronically monitored conversation and drug sale that took
9  place in Schulze's house. Now, during that --
10         THE COURT: And that was in the affidavit?
11         MR. SORENSON: Yes, that's in the affidavit. The --
12 the first one was the August 30th deal. Now, on that
13 particular occasion, the confidential informant met with
14 Mr. Schulze, Mr. Schulze gave him the drugs, he then came back
15 and gave them to Special Agent Maglasang.
16         There's an allegation by the defense that the
17 informant stole drugs on that occasion. Now, if you look at
18 the affidavit and you go through it, you will see time after
19 time after time Mr. Schulze in recorded, monitored
20 conversations, that FBI agents are listening to as they occur,
21 admits to the August 30th deal, admits he did the deal, tells
22 and directs the confidential informant to pay his drug
23 associate, Anthony Tabion.
24         Now, through this investigation Tabion is paid time
25 and time again for drugs that Mr. Schulze fronted. On the

1   August 30th deal, the confidential informant went to
2   Mr. Tabion on two or three occasions to make payments for
3   those drugs. On September 20th, in a recorded conversation, a
4   sit-down, live-monitored recorded conversation with
5   Mr. Schulze, and if you look at this conversation, Your Honor,
6   and it's -- it's in the affidavit on Page 11, Mr. Schulze
7   describes his drug dealing, and during that recorded
8   conversation he talks about selling the drugs on August 30th,
9   and the money that was supposed to be paid, and how it was
10  supposed to be paid, and the fact that --
11         THE COURT: I -- I have, in fact, read the affidavit,
12  and the bottom line is I'm afraid for the defendant that there
13  is more than ample evidence in the record that, even if the
14  magistrate was told that this guy was a habitual drug dealer,
15  the fact that the law enforcement was actually listening in
16  and the defendant's own admissions, in addition to the
17  corroborating evidence, doesn't even present a close case.
18  There just is -- just no question that under existing federal
19  law, the magistrate would have had more than probable cause
20  here because of things that the defendant himself said, things
21  that were monitored, in which he admitted his complicity in
22  drug trafficking.
23         The fact that they had a monitored sale, that -- even
24  that by and itself with a large quantity of drugs would have
25  been enough by itself. The circuit has upheld warrants based