EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-Mail:  Ken.Sorenson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00090 DAE |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S COLLECTIVE |
| | ) | RESPONSE TO PETITIONER'S |
| vs. | ) | MOTION FOR A NEW TRIAL AND |
| | ) | DISCLOSURE OF GRAND JURY |
| MICHAEL F. SCHULZE, | ) | TRANSCRIPTS; EXHIBIT A; |
| | ) | CERTIFICATE OF SERVICE |
| Defendant. | ) | |
| | ) | |

GOVERNMENT'S COLLECTIVE RESPONSE TO
PETITIONER'S MOTION FOR A NEW TRIAL
AND DISCLOSURE OF GRAND JURY TRANSCRIPTS

I.   INTRODUCTION

Petitioner Michael Schulze (Schulze) appears again before the Court to revisit a tired series of allegations which have no factual basis and no legal significance.  In his motion for a new trial Schulze asserts that based upon unsupported and legally irrelevant allegations he is due a new trial.  In his Motion for Disclosure of Grand Jury transcripts Schulze argues for disclosure of transcripts in his case citing baseless

allegations of prosecutorial misconduct and perjury by the case agent.  For the reasons set forth below, both motions should be denied.

II.   RELEVANT FACTS

The evidence at trial in this case proved that Schulze was a long term, significant crystal methamphetamine dealer operating his criminal activities out of Las Vegas, Nevada. Schulze operated a substantial and profitable methamphetamine trafficking enterprise between Las Vegas, Nevada and Honolulu, Hawaii for the five (5) year period preceding his April 2002 arrest.  Evidence offered at trial showed that Schulze distributed hundreds of pounds of methamphetamine in Hawaii, and made well over $1,000,000.  Schulze then laundered his drug proceeds through various means, including a shell corporation, Innovative Investments.  Schulze also purchased a variety of boats, cars and real estate with his drug proceeds, which were ultimately ordered forfeited following his conviction.

At the time of his arrest, Schulze's primary residence was 3224 Ludlow Avenue, Las Vegas, Nevada.  Evidence offered at trial showed that Schulze's *modus operandi* was to obtain multiple pound quantities of methamphetamine from drug sources in Los Angeles, which either he, or individuals acting at his direction, then shipped to Hawaii via parcel services such as Federal Express.  Once the methamphetamine arrived in Honolulu, Schulze

then arranged for it to be delivered to sub-dealers, like Ralph Byrd, who then sold the methamphetamine and returned the money to Schulze via couriers.

On February 11, 2003, Schulze was convicted of conspiring to distribute 50 grams or more of methamphetamine in Hawaii and of two individual counts of distribution of methamphetamine. During trial FBI Special Agent Cindy Maglasang testified concerning the involvement of the informant in the case, Steve Olaes. Maglasang testified that Olaes approached the FBI in August, 2001 and provided information about a number of drug dealers, including Schulze. Following their meeting Maglasang began the administrative procedure of processing him as an informant. In late August, 2001 Olaes contacted Maglasang to advise her that he had received methamphetamine from Schulze. (Tr. Vol. 3, p. 20) Maglasang testified that she then met with Olaes, recovered the methamphetamine and had Olaes "make a consensually recorded telephone call to Michael Schulze" to confirm the drug deal. (Tr. Vol. 3, p. 20). Maglasang testified that by late August, however, she had not completed the formal administrative process on Olaes since he was on state probation, which terminated in October, 2001. (Tr. Vol. 3, p. 19) Maglasang testified at trial that "we needed to get approval from the state side to actually have him work with us as an informant because he--if he did work with us, he would be undertaking criminal

activity under our direction." Maglasang testified that Olaes subsequently qualified under FBI guidelines and was formally signed up as an FBI informant. The trial record and the Court has found that all of Olaes' activities with respect to recording conversations with Schulze were under the supervision and direction of FBI agents. Additionally, Olaes state supervision terminated in October, 2001. The vast majority of the inculpatory statements of Schulze made by Olaes were recorded by FBI after October, 2001.

On September 2, 2003, following his conviction, the Court sentenced Schulze to 360 months imprisonment finding that Schulze was responsible for distributing at least 1.5 kilograms of methamphetamine. The evidence at trial showed that he distributed hundreds of pounds of ice in Hawaii for a period of nearly 5 years while he lived a wealthy, job free existence in Las Vegas. On December 27, 2005, the Ninth Circuit affirmed Schulze's conviction, but remanded for re-sentencing based on the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005). Schulze, who has yet to accept responsibility for his actions has filed no less than 10 separate, frivolous motions before this Court since his conviction.

III. Motion For A New Trial

Schulze bases his motion upon the newly discovered evidence provisions of Rule 33(b)(1) of the Federal Rules of

Criminal Procedure. Schulze contends that the government did not disclose until trial that informant Steve Olaes was on state probation during a portion of the time he was used as an informant in the case. For the reasons set forth below, Rule 33(b)(1) offers Schulze no relief.

    A.    The Testimony of F.B.I. Special Agent Cindy Maglasang Cannot Be Considered Newly Discovered Evidence Since it <u>was Known to Schulze During Trial</u>.

The gist of Schulze's motion is that FBI Special Agent Maglasang used Olaes as an informant to record calls and contacts with him under the "color of law" provisions of 18 U.S.C. § 2511(2)(C). Schulze argues that because Olaes was on state probation at the time, Maglasang was barred from using him as an informant by state and federal law. Not surprisingly, Schulze fails to articulate what provisions of state or federal law prohibit Olaes from acting as an informant.

A defendant is entitled to a new trial on the basis of newly discovered evidence when five requirements are met: (1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., <u>discovered after the trial</u>; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal. <u>United States v. Arbelaez</u>, 719

F.2d 1453, 1461-62 (9th Cir. 1983), *cert. denied*, 467 U.S. 1255 (1984).  Schulze's motion establishes that "[d]uring trial, ... it was revealed by the FBI that the Informant was not under their direction during a significant period of the investigation - FBI agents could not receive authorization to use the informant because he was on state probation ... ."  (Schulze's Motion for New Trial, p. 2) This is not newly discovered evidence since both Schulze and his trial counsel knew of it at trial.  A motion for a mistrial or continuance could easily have been made during trial, and a motion for a new trial could have been made within the 7 days after the verdict as is required for new trial motions on "other grounds."  Fed. R. Crim. Proc. 33(b)(2).

Additionally, Schulze fails on virtually every other one of the Arbelaez factors.  First, his motion demonstrates no diligence on his part.  Schulze's motion was filed on March 16, 2006, over three years from the date of his conviction.[1]  Maglasang's testimony has been available to him since trial, yet no action was attempted until 3 years after his conviction.

Third, the evidence offered is legally immaterial.  Steve Olaes status as state probationer has no legal effect on

---

[1] Schulze contends that his motion was timely filed on February 11, 2006, a date he contends is timely since it is three years from the date of his conviction.  But Schulze's motion was not filed with the Court until March 16, 2006, over one month later.  No explanation as to why it took 5 weeks for it to arrive in Honolulu and be filed has been offered by Schulze.

whether he can operate under "color of law" pursuant to Section 2511(2)(c). All of the evidence and information in this case, and this Court's own findings clearly establish that every recorded phone call introduced at the trial of this case was made at the direction of FBI agents. Schulze has cited the Court to no authority supporting the proposition that legal rights are created for him by FBI administrative guidelines. The undisputed fact is that FBI agents utilized Olaes to record calls pursuant to an official criminal investigation. Olaes was accordingly operating "under color of law" when he was used as the host for recording Schulze's drug dealing activities. Courts have repeatedly held that informants who tape-record private conversations at the direction of government investigators are "acting under color of law" within the meaning of Section 2511(2)(c). See, e.g., United States v. Mendoza, 574 F.2d 1373, 1377 (5th Cir.), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); United States v. Ransom, 515 F.2d 885, 889 (5th Cir. 1975), *cert. denied*, 424 U.S. 944, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); United States v. Craig, 573 F.2d 455, 476 (7th Cir. 1977); United States v. Rich, 518 F.2d 980, 985 (8th Cir. 1975). This court has repeatedly determined, as has the Ninth Circuit, that the recordings in this case were consensual and conducted under color of law pursuant to Section 18 U.S.C. § 2511(2)(c).

For these same reasons, the fact of Olaes being on state supervision is not material to the issue of Schulze's guilt and would certainly not result in an acquittal, since it is neither exculpatory nor relevant to the fact that Schulze is a drug dealer. Thus, Schulze strikes out on every one of the Arbelaez factors.

IV.  Motion for Disclosure of Grand Jury Transcripts

Schulze moves for disclosure of grand jury transcripts by fabricating baseless allegations of prosecutorial misconduct and grand jury perjury. For the reasons set forth below, this motion should be denied.

Granting a request for grand jury transcripts is within the sound discretion of the Court. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986). Rule 6(e)(3)(E)(ii) sets forth instances when a Court "may authorize disclosure" of grand jury information. The Court should permit disclosure of grand jury transcripts to a defendant "when the party seeking them has demonstrated that a 'particularized need exists which outweighs the policy of secrecy.'" Id. (quoting Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395 (1959). As discussed in Douglas Oil Co. of Cal. v. Petrol Stops N.W., 441 U.S. 211, the "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid the possible injustice in another judicial proceeding, that the need for

disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."

Schulze fails to carry his burden on several levels. First, Schulze requests blanket release of all grand jury testimony in his case, although he seems most concerned about the testimony of F.B.I. Special Agent Maglasang stating: "[t]he requested transcripts are particularly important to <u>test the credibility of trial witness, Maglasang</u>, (emphasis added) whose pre-trial documents and statements were contradicted by evidence and testimony at trial." (Motion for Disclosure, p. 2)  Schulze seems to forget that (1) his trial is over; (2) the government turned over Special Agent Maglasang's grand jury testimony prior to trial pursuant to its obligations under the Jencks Act, 18 U.S.C. § 3500, *et. seq.* (see pre-trial disclosure letter dated January 24, 2003 appended as Exhibit "A"), and (3) Special Agent Maglasang testified at Schulze's trial and her credibility has already been tested .  Hence, Schulze has demonstrated no particularized need, since he has already been given the very transcripts he represents he does not have.

Nor has Schulze demonstrated the materials he seeks are needed to avoid "possible injustice in another judicial proceeding" as is required by Rule 33.  In fact, there is no other judicial proceeding for which he can allege they are

necessary. Schulze has moved for a new trial, but as shown conclusively above, Schulze has no basis to request a new trial on any ground.

V.   CONCLUSION

Schulze has demonstrated no basis for a new trial and has been given access to the grand jury transcripts for which he moves. Schulze's repetitive and frivolous motions should be denied.

DATED: May 31, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By  /s/ Kenneth M. Sorenson
   KENNETH M. SORENSON
   Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served by First Class Mail:

>MICHAEL SCHULZE #36817-048
>FCI Bennettsville
>Federal Correctional Institution
>P.O. Box 52020
>Bennettsville, SC   29512

>H. DEAN STEWARD, ESQ.
>107 Avenida Miramar
>Suite C
>San Clemente, CA   92672

DATED: May 31, 2006, at Honolulu, Hawaii.

/s/ Dawn M. Aihara