ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 3 1 2006

at 2 o'clock and 55 min. P M
SUE BEITIA, CLERK

Michael F. Schulze
Reg.#36817-048
FCI Bennettsville
P.O. Box 52020
Bennettsville, SC 29512-5220

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00090-DAE |
| Plaintiff, | ) | |
| | ) | NOTICE OF SUPPLEMENT TO |
| vs. | ) | MOTION FOR NEW TRIAL |
| | ) | PURSUANT TO FEDERAL RULES |
| MICHAEL F. SCHULZE, | ) | OF CRIMINAL PROCEDURE, |
| | ) | RULE 33; CERTIFICATE OF |
| Defendant. | ) | SERVICE. |
| | ) | |

COMES NOW defendant Michael Schulze, pro se, and hereby submits this supplemental pleading in support of his Motion for a New Trial pursuant to F.R.Cr.P., Rule 33 (hereinafter "Rule 33 motion"), filed March 16, 2006.

Defendant's Rule 33 motion for a new trial based on newly discovered evidence is grounded on the Government's nondisclosure of information favorable to defendant under Brady v. Maryland, 473 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963), which "altered the outcome of the proceeding." United States v. Service Deli Inc., 151 F.3d 938, 943 (9th Cir. 1998).

Evidence is material and favorable if there is a reasonable probability that the disclosure of the evidence would have changed the trial's result. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

The purpose of this supplement is to expand the points and authorities to support defendant's Rule 33 motion, and to supply documentation, which, had been originally submitted with defendant's Second Motion for Reconsideration, filed April 7, 2005 (that was based on newly discoverd <u>Brady</u> material, post-trial), but of which defendant learned on May 1, 2006, had been denied on April 18, 2005, for lack of jurisdiction.

Defendant's Rule 33 motion is based on <u>Brady</u> information discovered during trial (but after the fact). Information that had been concealed by the prosecution which affected the District Court's resolution of defendant's dispositive suppression pretrial motion. Because had this informaton been available to the defense pretrial, the outcome of this matter would have been an acquittal.

<u>STATEMENT OF RELEVANT FACTS</u>

Defendant was charged with distributing a total of 55 grams of methamphetamine to Steve Olaes ("Olaes") on August 30th and October 2nd, 2001 (Counts Two and Three), respectively. These two instances were overt acts to support Count One - conspiracy to distribute 50 grams or more of methamphetamine. (Docket # 61).

Defendant moved to suppress the Government's evidence (tape recordings made by Olaes), on the basis that Olaes recorded the private conversations in violation of state (HRS § 803-42), and federal (18 U.S.C. § 2511(2)(d)) laws. (Docket #75).

The Government responded by stating that Olaes "voluntarily and willingly undertook the task of covertly acting as an undercover operative working for the FBI ... The consensual recordings in this case were conducted under the color of law ..." Government's November 4, 2002, Collective Response at 15 & 16.

-2-

During the November 18, 2002, Suppression Motion Hearing, the Government advanced its position by calling FBI Special Agent, Terrence Chu, who testified that "pretty close to August of 2001, ... [Olaes] mentioned [an] interest in becoming involved in an investigation, ... [we] got him to fill out a few documents, [and] had him start making some consentually recorded telephone calls.." Hearing Transcripts at 22, 23 and 24.  (Docket # 95).

On November 26, 2002, this Court filed its written order denying defendant's suppression motion, holding that 18 U.S.C. § 2511(2)(d) did not apply to the situation because Olaes' communications were made under the color of law pursuant to 18 U.S.C. § 2511(2)(c). Order at 8.  (Docket # 97).

On December 31, 2002, defendant filed a motion for reconsideration based on newly discovered evidence of Olaes' concession to committing unauthorized criminal acts while working for the FBI.  (Docket # 112).

On January 13, 2003, the Government filed its response to defendant's reconsideration motion insisting that Olaes was acting under color of law, stating that, "[W]hen assessing whether someone acted under 'color of law' for the wiretap statute, the qustion is whether the witness was acting under the government's direction when making the recordings ... the recordings made by Olaes were authorized by the FBI and made with FBI equipment. Response at 6-7.  (Docket # 121).

On January 23, 2003, this Court filed its order denying defendant's reconsideration motion, stating "the Government authorized the recording of all conversations..." Order at 12. (Docket # 128).

On February 4, 2003, during defendant's jury trial, FBI Special Agent, Cindy Maglasang, testified that upon Olaes' approach to becoming an FBI informant, she performed a records-check and learned that he was on probation from the State of Hawaii until October 5, 2001.  As a result, she sought permission from state authorities to use Olaes in the investigation, but was denied because his participation would cause him to "undertak[e] criminal activity under [FBI] direction."  Trial Record, volume 3 at 19.  (Docket # 136).

The Audio Recordings introduced by the Government at trial were marked as Exhibit numbers 1 through 8.  Exhibits 1 through 5 were recordings made during the period of Olaes' probation, i.e., August 30th (Count Two) and October 2nd, 2001 (Count Three). Exhibits 5a and 8 are of Olaes and a different FBI target, and 6 and 7 are recordings made while Olaes was on vacation in Las Vegas with defendant during social settings.

On March 7, 2005, shortly after firing his appellant lawyer, but prior to filing his pro se reply brief in the Ninth Circuit Court of Appeals, and upon rewiewing the transcripts of his suppression hearing and of his trial, defendant discovered that the Government had concealed information pertaining to the period of Olaes' participation and filed a motion styled "Second Motion for Re-consideration of Orders Denying Motion to Suppress Tape Recorded Evidence-(Newly Discovered Evidence, Post-Trial)", which specifically raised a <u>Brady</u> claim.  Motion at 6. (Docket # 228).

On February 11, 2006, three years to the day of his jury conviction, defendant placed, in the institutional mailbox at FCI Bennettsville, the instant Rule 33 motion.

-4-

On February 16, 2006, defendant submitted a Motion for Judicial Notice of Ajudicative Facts which contained the trial transcripts of FBI Agent Maglasang's testimony to support his Rule 33 motion. (Docket # 243).

ARGUMENT

Rule 33 motions are frequently based on the Government's nondisclosure of information favorable to the defense under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. In United States v. Bagley, 473 U.S. 667 (1985), the United States Supreme Court announced a single prejudice standard covering all such cases, regardless of whether the exculpatory materials were specifically requested by the defense, responsive to a general defense request, or not requested by the defense at all. There must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." Bagley, 473 U.S. at 682.

Rule 33 motions can also be based on newly discovered evidence that goes to an issue other than the defendant's guilt. For example, a motion could be based on new evidence affecting the court's resolution of a dispositive suppression, or other pretrial motion. If the motion is based on one of these claims, the prejudice prong is satisfied by showing a reasonable probability that the outcome of the pretrial litigation would have been different if the newly discovered evidence had been considered. See United States v. Woodley, 9 F.3d 774, 777 (9th Cir. 1993); United States v. Steinberg, 99 F.3d 1486, 1490 (9th Cir. 1996) (setting forth the standard for prevailing on a motion for a new trial based on a post-conviction discovery of a Brady violation).

A.  RULE 33 MOTION.

"To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, a defendant must satisfy a five-part test: (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would brobably result in acquittal." United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir. 1991); United States v. Harrington, 410 F.3d 598, 602 (9th Cir. 2005) (same).

1.  Newly Discovered Evidence.

In the instant matter, defendant did not become aware of the Government's nondisclosure of information pertaining to Olaes' period of actual and legal participation, until he received and reviewed the trial transcripts and documents while proceeding on his own behalf in submitting his pro se appellant reply brief.  It was at this point of discovery that defendant immediately brought this infomation to the attention of this Court though his Second Motion for Reconsideration, filed April 7, 2005.  (Docket # 228).

To be sure, this information was not released to the defense prior to its disclosure during trial.  Evidence demonstrative that the FBI was denied authorization to use Olaes while he was on probation was a pretrial issue for suppression purposes.  The introduction of the recordings at trial is an after-the-fact issue, and learning information after the fact which would have prevented their use at trial is "newly discovered evidence".

2. Lack of Diligence.

The failure to discover that the FBI had sought and were refused authorization to allow Olaes to participate in their investigation was not through defendant's lack of diligence. This particular information was not disclosed to the defense because "[T]he Government purposely withheld this information from Schulze and this Court." Second Motion for Re-consideration at 6.

"A prosecutor is 'deemed to have knowledge of and access to anything in the custody or control of any federal agency (FBI) participating in the same investigation of the defendant.'" United States v. Zuno-Arce, 44 F.3d 1420, 1427 (9th Cir. 1995)(quoting United States v. Bryan, 686 F.2d 1032, 1036 (9th Cir. 1989)). As this pleading will prove, the prosecution was aware that Olaes was not authorized to "undertake in criminal activity" until October 5, 2001, which demonstrates knowledge that Olaes was not "under the direction" of FBI during that period. The facts of this case prove that this information was suppressed from the defense. Under this circumstance, defendant could not have discovered information that was purposely being withheld.

3. The Information was Material to the Issues on Trial.

As previously established, Counts Two and Three are based on the alleged violations of August 30th and October 2nd, 2001, respectively. Trial testimony from FBI established that there were no witnesses, visual sighting, or oral conversations overheard on either occasions. (Trial Transcripts: 2-210, 3-59, and 4-64). Moreover, Olaes was not called to testify to either occasion. The only evidence to indicate that these violations may have occurred, are the unathorized recordings that Olaes made

in violation of state and federal laws, which, would have been suppressed <u>as required by law</u> had the Government not withheld this information in violation of <u>Brady</u>.  Illegally obtained evidence "is inadmissible in a Government's direct case, or otherwise, as substantive evidence of guilt." <u>United States v. Watson</u>, 118 F.3d 1315, 1319 (9th Cir. 1997)(citing <u>United States v. Havens</u>, 446 U.S. 620, 628 (1980)).  "Favorable evidence will be considered material if 'its suppression undermines confidence in the outcome of the trial." <u>Bagley</u>, 473 U.S. at 678.

4.  Cumulative or Impeaching Evidence.

The newly discovered evidence in this matter is neither for cumulative or impeachment purposes.

5.  Resulting in Acquittal.

As fully articulated below, had these recordings been suppressed, defendant would have been acquitted of Counts Two and Three.  And when proven that these recordings made up the bulk of the Government's evidence to support Count One, it is more than likely that excluding such evidence would produce an acquittal on all charges.  "The defendant does not have to show that it is more likely than not that the verdict would have been different if the evidence in question had been disclosed, but only that there is a 'reasonable probability' that the outcome would have been different ..." <u>United States v. Gonzalez</u>, 93 F.3d 311, 316 (7th Cir. 1996)(quoting <u>Kyles v. Whitely</u>, 514 U.S. 419, 434 (1995)).


B.  BRADY MATERIAL.

To establish a <u>Brady</u> violation, a defendant is required to demonstrate that the Government (1) suppressed material; (2) that

was favorable; and (3) that the suppression caused him prejudice.
See United States v. Danielson, 325 F.3d 1054, 1075 (9th Cir.
2003)(citing United States v. Ciccone, 219 F.3d 1078, 1085 (9th
Cir. 2000).

1.  Suppressed Material.

    Defendant's pretrial motion sought to suppress the Olaes
recordings on a number of fronts, among which, was pursuant to
Hawaii Revised Statute § 803-42 (which makes recording private
conversations a violation of state law), and, 18 U.S.C. § 2511
(2)(d) (which renders recordings unlawful if "such communications
is intercepted for the purpose of committing any criminal or
tortious acts in violation of the Constitution or laws of the
United States or of any state.").   The criminal and torious acts
alleged by defendant was that Olaes: stole drugs from the FBI to
"continue his heavy drug habit"; possessed drugs in violation of
Hawaii Revised Statutes § 712 through 1241; and used the recodings
to commit and further his own criminal objectives. Motion at 14,
15, & 16.

    The Government argued that § 2511(2)(c) allowed "for a
person acting under color of law to intercept a wire or oral
communication, ..." and that the "recordings in this case were
conducted under color of law." Response at 14 & 16.   To be sure,
the Government's position was that whatever criminal acts Olaes
may have committed, he did so under the color of law.   To bolster
their position that Olaes "voluntarily ... undertook active
involment in the investigation ...", Agent Terrence Chu testified
during the suppression hearing that the FBI "signed [Olaes] up"
"close to August of 2001, in that month." (Hearing Tr. at 22,23).

Subsequent to this Court's denial of the motion to suppress, defendant moved for reconsideration after receiving information from the Government confirming defendant's allegations of Olaes' criminal acts and drug use, and that he was on "felony pre-trial release during a substantial portion of his participation in the instant investigation." Motion at 4. (Relying on Olaes' arrest record provided by the Government on the moring of the suppression hearing that informed Olaes was on state probation until October 5, 2001, see Exhibit "A").

The Government responded by repeating, "The consensual recordings in this case were made and authorized by the Federal Bureau of Investigation ..." And, relying on <u>United States v. Tousant</u>, 619 F.2d 810, 813 (9th Cir. 1980), claimed that Olaes was acting "under color of law" because he "was acting under the government's direction when [he] ma[de] the recording[s]." To be sure, the Government stated, "The conversations were recorded by the informant acting on behalf of the Government," Respons at 6,7. To support their position, the Government submitted a sworn Declaration from FBI Special Agent, Cindy Maglasang, who stated, "In August of 2001, the FBI began working with then confidential informant Steve Olaes ..." Declaration at 1.

Prior to defendant's jury trial, this Court denied the motion to reconsider suppressing the Olaes Recordings and allowed their use at trial.

On the third day of trial, Agent Maglasang revealed that Olaes was not authorized to "do active drug buys or recorded conversations for us under our direction" because "[H]e was currently under state probation [which] ended sometime in

-10-

October." (Trial Record (TR), volume 3, pages 17 & 19.

    Agent Maglasang testified to the following:

> When "initially start[ing] our paperwork on
> getting Steve -- Steven to be opened up as an
> informant for the FBI [who] will actively act
> as our agent and actually do active either drug
> buys or recorded conversations for us under our
> direction, [which] process involves [N]umerous
> checks done in our database with other agencies.
> We verify certain information he's provided us.
> And basically if his -- there's no hits on our
> criminal checks or any of the other checks that
> we run through, then he's pretty much opened as
> an informant." (TR:3-17 & 18, Exhibit "B")

However,

> "by the end of August of 2001" Agent Maglasang
> had not completed the "process of signing him up"
> because "[H]e was currently under state probation
> and ... [w]e needed to get approval from the
> state side to actually have him work with us as
> an informant because he -- if he did work with
> us, he would be undertaking criminal activity
> under our direction", but "there c[a]me a time
> when he did qualify under [FBI] guidelines" and
> was signed up. (TR:3-17 & 18, Exhibit "B")

To be sure,

> on the fourth day of defendant's trial, Agent
> Maglasang testified that she had "to get some
> kind of permission to use Steve Olaes .. Because
> he was being supervised by state probation ...
> And [she] w[as] asking him to get involved in
> some kind of a drug deal ... [which is why] we
> were seeking approval for him to start that
> process to help us ... his probation was over
> October, early October, like October 5th ... so
> it would have been covered the period of August
> through September." (TR:4-66 & 67, Exhibit "C").

    In the end, Agent Maglasang admitted that her Informant,
Steven Olaes, violated state and federal laws while participating
in the investigation. (TR:4-87, Exhibit "D").

    The fact that Olaes was <u>not</u> authorized to buy drugs or
record conversations during the period of his probation was
critical to the defense because the recordings made during this

period not only made up the bulk of the Government's case, the disclosure of such information would have completely undermined the Government's pretrial position when it mislead the defense and this Court into believing that Olaes was "acting under color of law" throughout the entire investigation when in fact he was only authorized to participate after his probation expired.  And because the Government's case in chief was based on the contents of the recorings it knew were illegally obtained, the Government purposely concealed material information that would have exposed these recordings to suppression.

The following are four examples that prove the Government willfully suppressed this material information through a series of documents and statements designed to mislead the defense into believing that Olaes was "acting under color of law" since August of 2001.

First, during the Discovery phase of this case, the Prosecution submitted a series of Informant contracts, among which was a three-page FBI form of the Required Admonishments to criminal informants, signed by Agent Maglasang on August 17, 2001, which was indictive that a cooperating witness was in fact assisting the FBI as of August 2001.  Because the defense knew that Olaes was the Government's source, it believed, because of these documents, that Olaes was legally participating in the investigation since August of 2001 (Exibit "E").

Second, Agent Chu's testimony during the suppression hearing supported the Government's position by stating that he met Olaes in "August of 2001" and subsequently the FBI "signed him up [and] had him start making some consenually recorded telephone calls ...

-12-

'throughtout the course of this investigation' '[F]rom August until' April 2002". (Hearing Tr. at 22, 23 & 24, Exhibit "F").[1]

Third, Agent Maglasang's sworn Declaration specifically states that, "In August of 2001, the FBI began working with then confidential informant Steve Olaes ..." Declaration of Cindy Maglasang at 1, (Exhibit "G")

Fourth, the Prosecution in this case put forth a number of statements maintaining that:

> "Over the course of the 8 month investigation, the CS was a consensual party in dozens of conversations recorded by the FBI ... The CS voluntarily approached the FBI and then undertook active involvement in the investigation ... The consensual recordings in this case were conducted under color of law ..." (Government's November 4, 2002, Collective Response at 16);

> "in recorded consensually monitored conversations ... on September 11th and followed up on September 19th and also September 20, ... October 2nd, ... this was, again, a live body monitored conversation ..." (November 18, 2002 Suppression Hearing at 5);

> "The consensual recordings in this case were made and authorized by the Federal Bureau of Investigation ... the recordings made by Olaes were authorized by the FBI ... The conversations were recorded by the informant acting on behalf of the Government, ..." (Government's January 13, 2003 Response at 6 & 7).

Through the number of statements made by the Prosecution, it would appear that he was not aware of Olaes' probation, or that

---

[1] It is noteworthy to point out that Agent Chu testified for Olaes that his consent was voluntary instead of having Olaes available for defense to cross-examine. Considering the evidence presented above, it is defendant's position that this was a tactical maneuver to prevent the defense from questioning Olaes and discovering information that the Government was trying to suppress. (See Hearing Transcript at 37, Exhibit "H")

the FBI had sought and could not obtain authorization to allow
Olaes to legally participate in the Government's investigation
until his probation expired.  However, evidence suggests that the
prosecution was aware that Olaes was <u>not</u> acting "under the
government's direction" or "under color of law" during the most
significant period of this 8 month case.  And it chose to conceal
this material information from the defense and mislead this Court
into believing that <u>all</u> "recorings made by Olaes were authorized
by the FBI ..." (Government's January 13, 2003 Response at 7).

        "The prosecutor's disclosure obligation turns on his or her
actual knowledge of, and access to, the information at issue.
Actual knowledge is particularly significant when determining
whether the prosecution's behavior constitutes flagrant
misconduct." <u>United States v. Ross</u>, 372 F.3d 1097, 1012 (9th Cir.
2004).

        Here, the evidence of the prosecution's actual knowledge
lies in the fact that he did <u>not</u> authorize Olaes to participate in
Tier II unlawful activity until October 22, 2001 (Exhibit "I"),
which was <u>after</u> Olaes' probation expired.  This demonstrates
actual knowledge that Olaes was precluded from assisting the FBI
while on probation.[2]

        To be sure, other evidence demonstrates that Olaes did not
actually "sign on" as an FBI informat until October 24, 2001 (see
Exhibit "J"), which is consistent with the prosecution's date of
concurrence.  This fact completely contradicts Agent Chu's sworn

_____

        [2]    In <u>United States v. Isgro</u>, 947 F.2d 1091, 1098 (9th
Cir. 1992), the court sanctioned the prosecutor for, among other
things, lying to the district court about <u>Brady</u> material and
attempting to keep that material from the defense.

-14-

testimony (Exhibit "F"), and Agents Maglasang's sworn Declaration (Exhibit "G").

Even if the prosecution was not aware of the FBI's attempt and failure to obtain authorization to use Olaes, "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf." Keyles v. Whitley, 514 U.S. 419, 437 (1995), and "[W]hile the government does not have the duty to disclose information of which it is not aware, if a government agency is charged with administration of a statute and has consulted with the prosecution in the case, the agency will be considered part of the prosecution, and its knowledge of Brady material will be imputed to the prosecution." See United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995); United States v. Anderson, 31 F.Supp.2d 933, 948, 1998 WL 991216 at 3 (D.Kan. 1998). "The government cannot with its right hand say it has nothing while its left hand holds what is of vaule." Wood, 57 F.3d at 737.

The bottom line is, the prosecution was not forthright when it claimed that the recordings in this case were made under color of law. The fact is, 4 of the 6 recordings (trial exhibits 1, 2, 3 & 4) were made in violation of state and federal laws, and it was these recordings that the prosecution needed to support the allegations at trial, which is why it suppressed the material information that would have provided the defense with the proof that would have required suppression as a matter of law.

2. The Suppressed Material was Favorable.

As demonstrated above, information that would prove Olaes

was not acting under "government direction" or "color of law" when he recorded the conversations without any authorization and in violation of 18 U.S.C. § 2511(2)(d), was extremely critical to the defense because it would have required suppression pursuant to 18 U.S.C. § 2515, which states in part:

> "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication may be received in evidence at trial, hearing or other proceeding in or before any court [or] grand jury ... if the disclosure of that information would be in violation of this chapter."

Considering the above, and that Olaes' theft and possession of methamphetamine was also in violation of HRS §§ 712 through 1241, and federal drug laws pursuant to 21 U.S.C. § 841 et seq, the District Court would have suppressed the recordings as required by law. Without the recordings of August 30th and October 2nd, defendant would have been acquitted of Counts Two and Three.[3]

In addition, the exclusion of these recordings would also cause an acquittal of Count One - 21 U.S.C. § 846 (conspiracy to distribute 50 grams or more of methamphetamine under § 841(a)(1) and (b)(1)(A)), because the remaining trial exhibits of 6 & 7, alone, do not establish an actual crime under Ninth Circuit precedent, which requires a "conspiracy [to] consist[] of an agreement to engage in criminal activity coupled with one or more overt acts in furtherance of that Conspiracy." <u>United States v.</u>

---

[3]     Under the Exclusionary Rule, the prosecution is required to exclude evidence it knew had been illegally obtained. (<u>Wong Sun v. United States</u>, 371 U.S. 471, 484 (1963). Here, had these recordings been excluded from this case as required by law, Counts Two and Three would not exist and the indictment would differ.

Buena-Lopez, 987 F.2d 657, 659 (9th Cir. 1993). Here, the
Government's case would fail because these particular recordings
were made while Olaes was visiting defendant in Las Vegas during
social settings and do not demonstrate any form of an actual
agreement, nor do they take place during any form of criminal
activity (required overt act). And even if there had been an
agreement to further a criminal act, there can be no conspiracy
between a defendant and a government informer. United States v.
Asibor, 109 F.3d 1023, 1033 (5th Cir. 1997). These recordings
would not support Count One.

To be sure, while the contents of exhibits 6 & 7 could
indicate some criminal mischief or knowledge of criminal activity,
a person's general knowledge of a planned crime is insufficient to
prove a conspiracy (United States v. Wilson, 160 F.3d 732, 738
(D.C. Cir. 1998)), and mere association with conspirators is not
sufficient to support a conviction. United States v. McDowell, 250
F.3d 1354, 1365 (11th Cir. 2001). Here, while these recordings
could indicate an association with convicted felons, they do not
prove an agreement and overt act in furtherance.

To convict defendant of conspiracy, the prosecution must
offer substantial evidence that defendant was a member of the
conspiracy. United States v. Mann, 161 F.3d 840, 848 (5th Cir.
1989). The prosecution may not prove up a conspiracy merely by
presenting evidence placing defendant in "a climate of activity
that reeks of something foul." United States v. Jackson, 700 F.2d
181, 185 (5th Cir. 1983). The "essence" of a conspiracy is an
agreement to commit a crime. United States v. Recio, 537 U.S.
270, 274 (2003). Here, exhibits 6 & 7 do not produce evidence of

an actual agreement, nor an overt act. These recordings alone are not "substantial evidence".

Moreover, these recordings of February 5th & 6th, 2002, are invalid on their face to prove a conspiracy because they were made several months after the last transaction alleged to be part of the conspiracy. "A conspiracy is considered ended after its central purposes have been achieved." United States v. Knowles, 66 F.3d 1146, 1156 (11th Cir. 1995). In addition, the contents of exhibits 6 & 7 expressively demonstrate a withdrawl from any criminal conduct. See United States v. Lothian, 976 F.2d 1257, 1262 (9th Cir. 1992)(holding that the government must prove beyond a reasonable doubt that a defendant did not withdrawl from a conspiracy when the evidence suggests that he did.)

As the record reflects, Olaes purchased one (1) ounce of methamphetamine from Anthony Tabion ("Tabion") on October 13, 2001, and on October 19, 2001, Olaes paid Tabion for that drug (Count One, March 21, 2002 Indictment at 4 (Docket # 1)). Olaes recorded these transactions and were offered at trial as exhibits 5a & 8. As previously stated, exhibits 1 through 8 are the only recordings the Government used at trial. Exhibit 8 (October 19, 2001), is that last transaction used to support the Government's conspiracy allegation.

There are a number of reasons why the Government's theory of conspiracy cannot be supported by exhibits 5a and 8. First, Olaes was an informer under Asibor, 109 F.3d at 1033 (5th Cir. 1997). There can neither be a "true agrement" or "meeting of the minds" between a individual and a government informant. United States v. Escobar de Bright, 742 F.2d 1196, 1199 (9th Cir. 1984).

-18-

Second, mere proof of the existence of a buyer-seller relationship does not prove a conspiracy, nor does it link any individuals to a conspiracy. United States v. Lennick, 18 F.3d 814, 819 (9th Cir. 1994); United States v. Bascuro, 742 F.2d 1335, 1359 (11th Cir.), cert. denied, 472 U.S. 1021 (1984).

Third, the recordings of October 13th & 19th, 2001, were made before Olaes recived authorization from AUSA Kenneth Sorenson to legally participate in the investigation (Exhibit "I"), and it was before Olaes actually signed on as an FBI informant (Exhibit "J").  Exhibits 5a & 8 are therefore unlawful and are required by law to be suppressed pursuant to 18 U.S.C. §§ 2511(2)(d) and 2515, because they were not made under "color of law".

To be sure, these recordings do not demonstrate a mutual dependency between co-conspirators, or the rendering of mutual support. See United States v. Burrell, 963 F.2d 976, 990 (7th Cir. 1992).  And they certainly do not demonstrate "an agreement between at least two persons to take concerted action ..." United States v. Giunta, 925 F.2d 758, 765 (4th Cir. 1991).  These recordings prove nothing more than a buyer/seller relationship and do not support Count One.

3.  The Withholding of Material Evidence From the Defense Caused Defendant Prejudice.

As demonstrated above, the Prosecution's suppression of key information which would have caused an acquittal on all Counts did cause defendant prejudice.  The fact that the Prosecution withheld vital information from the defense was a blatant violation under Brady, but to put forth misleading documents and submit misspoken

statements designed to conceal this information in furtherance is a manifest miscarriage of justice.

The record reflects that the District Court denied defendant's pretrial motions based on the ill representation that Olaes was acting "under color of law" throughout the entire investigation. For example.

The District Court's November 26, 2002, Order denying the motion to suppress tape recorded evidence, the court stated:

> "The Government, however, maintains that it complied with the limited concent exception allowed in 18 U.S.C. § 2511(2)(c). It notes that Informant was a party who originally initiated contact in August of 2001." Id. at 6;

> "Based on the evidence presented, Informant voluntarily consented to assist the F.B.I. in its investigation of Defendant. Id. at 7;

> "The Government ... assert[s] that 18 U.S.C. § 2511(2)(d) is only applicable to censensual recordings, and not those made under 'color of law ... The Government asserts that all Informant's communications were made under color of law ... The court finds that 18 U.S.C. § 2511(2)(d) does not apply in this situation." Id. at 8.

During the November 18, 2002, Suppression Hearing, the District Court stated:

> "There isn't any evidence [of Informant's commission of crime, being in possession and drug use] ... there's nothing, except conjecture and speculation ..." Transcript at 39 & 40.

The above statement of this Court, followed this statement made by the Prosecutor:

> "We have the sworn testimony of an FBI agent describing how the informant came forward and Mr. Steward has nothing. Zero. Smoke in mirrors. He keeps talking about drug use, the drug use of the informant, but we haven't seen any evidence of that whatsoever. Id. at 38.

On December 31, 2002, defendant moved the District Court to reconsider suppressing the tape recorded evidence after receiving proof from the Government that Olaes stole, possessed, and used methamphetamine throughout the entire investigation.   On January 23, 2003, this Court denied the motion, stating in part:

> "As the Government argued in its opposition to both the original motions to suppress as well as the motion for reconsideration, the Government authorized the recording of all conversations between the CI and various targeted persons.  The CI was essentially a 'host' for the transmission of the recordings obtained by the Government.  Defendant has failed to offer evidence that the recordings were unreliable." Id. at 12.

Defendant failed to offer evidence because the Prosecution had concealed it.   The prejudice is clear.   In addition, the record does not support the Government's claim that Olaes transmitted a single conversation in which the FBI recorded.   This is another example of the Prosecution's misleading statements.

Another example of prejudice is demonstrated through defendant's exposure to the statutory minimum of a ten-year term of imprisonment pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(A). Had the evidence from August 30th and October 2nd (55 grams) been suppressed, there would not have been an established quantity of drug to sustain a charge under (b)(1)(A) (50 grams or more), because "the statutory provision [21 U.S.C. § 846 - Count One] makes no reference to a mandatory minimum penalty; rather, it provides only that a sentence imposed under that section may not exceed the maximum penalty accompanying the substantive offenses charged as the object of the conspiracy." United States v. Montoya, 891 F.2d 1273, 1294 (7th Cir. 1989).

Without the substantive offenses of Counts Two and Three, defendant could not be charged under (b)(1)(A), because the only applicable statute for an offense involving an unspecified amount of methamphetamine is (b)(1)(C). This is because there were no other amounts of drug alleged in the Inidictment that was charged, submitted to the jury, and proven beyond a reasonable doubt. See United States v. Buckland, 289 F.3d 558, 568 (9th Cir.)(en banc), cert. denied, 535 U.S. 1105 (2002).

Furthermore, the single ounce sale of methamphetamine by Tabion to Olaes can not be imputed into Count One because: (1) a buyer/seller agreement does not constitute conspiracy; (2) Olaes was an informer; and (3) the United States Probation Office further held that:

> During the course of the investigation, the CI purchased additional quantities of 'ice' from Tabion and Byrd that they allegedly obtained from the defendant. However, there is insufficient evidence to establish that the 'ice' was actually provided by the defendnat.
> (Presentence Investigation Report, at 18, ¶46)

By determination of the Government's own agency, the October 13th, 2001, transaction between Tabion and Olaes was not part of the conspiracy as alleged in Count One. Therefore this case would not contain a quantity that could allow a charge under (b)(1)(A).

The applicable guideline for an offense in violation of 21 U.S.C. § 841 & 846 is found in U.S.S.G. § 2D1.1(c)(1), and accordingly, the base level offense involving less than 2.5 grams of methamphetamine (a "detectable amount"), is 12. Pursuant to U.S.S.G., level 12 results in an exposure to a term of between 12 and 16 months imprisonment, a far less period than defendant received (360 months) under (b)(1)(A). The prejudice is clear.

Defendant also suffered prejudice through the loss of numerous items of personal property seized by the Government pursuant to 21 U.S.C. § 853 - Criminal Forfeiture (Count Four). Had the illegal recordings been suppressed, it is likely that the seized items would not have been subject to forfeiture through the jury's vote. Not only as a result of defendant's acquittal of Counts Two and Three, but because of the fact that the exclusion of the recordings would eliminate the conversations that the jury most likely based its findings on. The Prejudice here is clear.

The evidence in this case proves that: (1) the Prosecution suppressed evidence; (2) that was material to defense; (3) in violation of <u>Brady</u>; (4) which would have required the recorded evidence, obtained by Olaes between the August 30th through October 2nd, 2001, to be suppressed as matter of law; and (5) that excluding these illegal recordings would cause a different result in the proceedings. Specifically, defendant's acquittal.

Here, the Government admitted during trial what it knew pretrial but had concealed from the defense. The bottom line is that the Governent knew all along that Olaes was <u>not</u> acting under "government's direction" or "color of law" during the period of his probation, but not only concealed this information until after the fact, the prosecution continued to erroneously maintain that "the convesations in this case were conducted under color of law".

Furthermore, FBI admitted at trial, precisely what the defense alledged pretrial (Exhibit "D"), but what the Prosecution denied, and persuaded the District Court to believe was "conjecture and speculation". Evidence revealed at trial that would affect a matter pretrial is newly discovered evidence.

CONCLUSION

For all resons stated herein, Defendant Michael F. Schulze respectfully requests that this Honorable Court Grant his motion for a New Trial, and Order that all evidence obtained by FBI Informant, Steve Olaes, between the period of August 17, 2001, through at least October 5, 2001, be suppressed pursuant to 18 U.S.C. § 2515, on the basis that the evidence had been unlawfully obtained pursuant to 18 U.S.C. § 2511(2)(d).

DATED: May 25, 2006

Respectfully submitted,

Michael F. Schulze
Defendant, pro se

## ** CERTIFICATE OF SERVICE **

I hereby certify that a true and exact copy of the foregoing NOTICE OF SUPPLEMENT TO MOTION FOR NEW TRIAL PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE, RULE 33, was duly served upon counsel for the United States of America, by depositing the same in the U.S. Institutional Mail at FCI Bennettsville, South Carolina, first class, with sufficient postage attached and addressed to:

Kenneth M. Sorenson, ESQ. AUSA
Office of the United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850

DATED: May 26 , 2006
        Bennettsville, SC

By: _____
    Michael F. Schulze
    Defendant. pro se