

**ORIGINAL**

Michael F. Schulze
Reg.#36817-048
FCI Bennettsville
P.O. Box 52020
Bennettsville, SC 29512-5220

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 1 4 2006

at 2 o'clock and 50 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00090-DAE |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | DEFENDANT'S PRO SE |
| | ) | SENTENCING MEMORANDUM |
| MICHAEL F. SCHULZE, | ) | |
| Defendant. | ) | |

COMES NOW defendant Michael Schulze ("Schulze"), pro se, and respectfully submits this sentencing memorandum to establish that his sentence cannot exceed the 63 to 78 month statutory maximum term of imprisonment prescribed by and through the jury's factual findings; pursuant to the Fifth and Sixth Amendment; and pursuant to the Supreme Court's precedent established in In re Winship, 90 S. Ct. 1068 (1970); Apprendi v. New Jersey, 120 S. Ct. 2348 (2000); Ring v. Arizona, 122 S. Ct. 2428 (2002); and Blakely v. Washington, 124 S. Ct. 2531 (2004).

<u>STATEMENT OF RELEVANT FACTS</u>

Schulze was indicted for: conspiracy to distribute, and to possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count One); distribution of 5 or more grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(b) (Count Two); and distribution of 50 grams or more of

methamphetamine in violation of 21 U.S.C. § 841(a)(1) and
(b)(1)(A) (Count Three).

During the November 18th, 2002, pretrial hearing, defense
raised an Apprendi issue by arguing that the Government's delay in
arresting Schulze caused prejudice by "piling on dope" amounts,
which by doing so, "they're adding to a sentence". (HT, at 44). [1]

In response, the District Court stated, "he will have his
opportunity to require the government to establish his guilt to
each and every element beyond a reasonable doubt." (HT, at 45).

During opening statements at Schulze's trial, the
Prosecution stated to the jury: "Now, you can give a special
verdict form when you're deliberating to find lesser amounts, but
that's -- this is what we've alleged." (RT: 1-107).

Prior to the jury retiring to consider its findings, Schulze
moved the court to allow the jury to make specific findings
regarding the amount of drugs for which he should be held
responsible for.  The Government then vehemently objected,
stating: "Yeah, Your Honor, that's completely irrelevant to the
jury because those are guideline levels of methamphetamine, where,
basically, the jury's going to be asked to find whether it's going
to be a level 31 or a level 32 or a level 34." (RT:7-5).

The court then denied Schulze's request, stating: "I'm not
going to give that verdict form, because it is unnecessary, it
doesn't create any type of a significant benefit, whereas it
presents all kinds of potential deficits ... so I am going to go

---

[1]    HT refers to Hearing Transcript, followed by the page
number; RT refers to Reporter's Transcript, followed by a volume
number and the page number.

with the straight up guilty or not guilty, which means they would have to find him -- that he possessed at least 50 grams, and then, if he gets convicted, we will argue at sentencing about the amounts, and that's the appropriate time to do it." (RT:7-6 & 7).

Subsequently, the court instructed the jury that the Government was only required to prove that in Count One, the conspiratorial agreement involved "intent to distribute 50 grams or more of methamphetamine ... Count Two, with distribution of 5 grams or more of methamphetamine ... Count Three, distribution of 50 grams or more of methamphetamine ..." (RT:7-21 & 24).

The Jury convicted Schulze on all three counts. At his September 2, 2003, sentencing hearing, the court adopted the factual findings of the Presentence Investigation Report ("PSR"), and found, by a preponderance of the evidence, that Schulze was responsible for an additional 2,458 grams of methamphetamine; that the methamphetamine involved was actual, a/k/a "ice" (at least 80% pure); and that he had a leadership role in the offense.

Despite any specific findings made by the jury, the court speculated: "The court finds, as did the jury, that Yamada testified truthfully during trial ... The jury was convinced of his testimony and the correctness of it. And, therefore, the 2,458.2 grams of ice [seized from Yamada] were in fact part of the same course, scheme, and plan of the defendant." (HT, at 8-9).

Accordingly, these judge-found facts increased the guideline level from the jury's conviction of 50 grams of methamphetamine, which, prescribed a 63 to 78 month term of imprisonment, and exposed Schulze to a court-enhanced sentence of 360 months to life. The court sentenced Schulze to 360 months.

The court also imposed a fine of $50,000.00.

On appeal, Schulze insisted his sentence and fine violated his Sixth Amendment right to have a jury determine beyond a reasonable doubt the facts that resulted in his fine and enhanced sentence, citing Apprendi and Blakely, supra.

Shortly after Schulze filed his appeal, the Supreme Court issued its decision in United States v. Booker, 125 S. Ct. 738 (2005), which held that the Sixth Amendment as construed in Blakely, applies to the Federal Sentencing Guideline. Following Booker, the Government conceded to Schulze's Sixth Amendment claim, stating:

> "the District court erred in making factual findings which increased Schulze's maximum sentence beyond that justified by the jury's verdict. At the sentencing hearing, the district court made factual findings related to drug weight that went beyond the jury's findings of 50 grams or more of methamphetamine as charged in Counts 1 and 3. The Court [sic] also found that Schulze was an organizer or leader of criminal activity involving 5 or more persons. Based on this finding, Schulze's offense level increased by four levels.
> (Brief of Appellee, at 9 & 10).

On November 28, 2005, the Ninth Circuit Court of Appeals ordered Schulze to a remand pursuant to their ruling in United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005)(en banc).

ARGUMENT

A.  BASED ON THE JURY'S VERDICT, SCHULZE IS RESPONSIBLE FOR AT MOST, 105 GRAMS OF METHAMPHETAMINE.  THE MAXIMUM SENTENCE THIS COURT IS AUTHORIZED TO IMPOSE IS 78 MONTHS.

The jury's verdict supported a factual finding that Schulze was responsible for 105 grams of methamphetamine (55 grams for distribution (Counts 2 & 3) and 50 grams for the conspiracy if the

conspiracy is determined to be based on some other activity). This factual finding corresponds to a base offense level of twenty-six. See U.S. Sentencing Guidelines Manual § 2D1.1(c)(7) (providing offense level for between 50 and 200 grams of methamphetamine).   When combined with Schulze's criminal history category of I, this results in a sentencing range of sixty-three (63) to seventy-eight (78) months' imprisonment (63 being the minimum and 78 being the maximum).  The district court imposed a sentence of 360 months, which exceeds this range.

The "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose on the basis of the facts reflected in the jury's verdict. See Blakely, 159 L.Ed.2d 403, 413 (2004)(citing Ring, 536 U.S. at 602 (2002)).  "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional fact.  When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." Blakely, at 413-14.

In its burden of proof analysis, the Ninth Circuit held in United States v. Howard, 894 F.2d 1085 (9th Cir. 1990), that "the government bears the burden of proof to establish the factual predicate for the court's base offense level determination ... And the government also bears the burden of proof when it seeks sentencing enhancements." Howard, at 1089-90.

In Ameline, the Ninth Circuit specifically instructed: "The fact that the Sentencing Guidelines have become discretionary

following Booker does not alter this [burden of proof] analysis. The district court's factual findings will determine the base offense level, which is the starting point for determining the applicable guideline range for an offense level under 21 U.S.C. § 841(a)(1). See U.S.S.G. § 2D1.1(c). When a defendant contests the factual basis of a PSR, the district court remains obligated to resolve the dispute before exercising its sentencing descretion under Booker. In resolving the factual despute, **the district court must continue to apply the appropriate burden of proof**, consistant with Howard." Ameline, 409 F.3d at 1087 (emphasis added). "**The court may not rely on the factual statements in the PSR.**" Ameline, 409 F.3d at 1086 (emphasis added).

At sentencing, Schulze did contest the findings of the PSR by specifically objecting to the role enhancement and additional methamphetamine seized from Yamada, stating: "No physical evidence connects this 2,000+ gram seizure to defendant Schulze." (Defense Sentencing Statement, at 4 through 7).

The Ninth Circuit has distinctly held to "honor the intent of congress and the requirements of due process by treating drug quantity and type, which fix the maximum sentence for a conviction, as we would any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, ... and proved beyond a reasonable doubt." United States v. Buckland, 289 F.3d 558, 569 (9th Cir. 2002)(en banc). See also United States v. Thomas, 355 F.3d 1191, 1196 (9th Cir. 2004)(same).

The majority in Buckland "emphasized that the relevant inquiry is not whether a penalty provision is an element, but

rather whether it exposes the defendant to a longer sentence than would be authrozied by the jury's guilty verdict." Buckland, 289 F.3d at 566.

In Thomas, the court held that, "[a] district judge cannot determine quantity that would affect the maximum statutory sentence." Thomas, 355 F.3d at 1203 (citing United States v. Banuelos, 322 F.3d 700, 705 (9th Cir. 2003)). "Where a [drug quantity] finding exposes the [defendant] to a higher statutory maximum than he would otherwise face, the findings must be made by the jury ..." Thomas, 355 F.3d at 1203.

"In a case [] where the jury's verdict does not find a specific amount of drugs attributable to the defendant, [the court] must assume the only amounts found unanimously by the jury are those specifically alleged in the indictment." United States v. Magallanez, 408 F.3d 672, 683 (10th Cir. 2006).

In the instant matter, the only amount found unanimously by the jury was 105 grams of methamphetamine. The Government's opportunity to prove beyond a reasonable doubt: drug quantity, type, and leadership role, is lost forever. There can be no way to determine what the jury might have thought three years after the fact. And the Fifth Amendment to the Constitution does not permit the Government to put Schulze through trial twice for the same offense. Therefore, the jury's finding of 105 grams of methamphetamine must stand, and the maximum sentence this Court can impose based solely on the jury's findings is seventy-eight months.

B.  CHARGING ERROR, FACTS OMMITTED FROM THE INDICTMENT BUT USED
    TO IMPOSE SENTENCE ENHANCEMENTS.

Charging deficiencies can occur in Apprendi-type cases where

a sentence enhancement has been decided by a judge but not submitted to a jury. See Mitchell v. Esparza, 540 U.S. 12, 14 (2003). See also United States v. Cotton, 525 U.S. 625 (2002) (indictemnt charged conspiracy to distribute a "detectable amount", but was enhanced based on conspiracy to distribute at least 50 grams). The Supreme Court distinguished indictment errors under the Fifth Amendment. Apprendi, 147 L.Ed.2d at 477.

The Sixth Amendment provides that: "in all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ..." Const. Amend. VI. The Court has held that Sixth Amendment notice is insufficient if the defendant was "prejudicially surprised" by the claimed omission of an element. United States v. Miller, 471 U.S. 130, 134 (1985).

Failure to include elements in the indictment, in jury instructions, or both, is reversable error. United States v. Bieganowksi, 313 F.3d 264, 285-86 (5th Cir. 2002)(addressing claim that materiality element of mail fraud was not properly alleged in indictment), cert. denied, 528 U.S. 1014 (2003); United States v. Fernandez, 282 F.3d 500, 508-09 (7th Cir.)(same), cert. denied, 537 U.S. 1028 (2002); United States v. Gee, 226 F.3d 885, 891-92 (7th Cir. 2000)(same). Neder v. United States, 527 U.S. 1 (1999).

In the instant matter, no such elements used by the court to enhance Schulze's sentence were mentioned in the indictment. In United States v. Thomas, 247 F.3d 655, 673 (2nd Cir. 2001), the court held that in light of Apprendi, drug type and quantity are elements of the offense under 21 U.S.C. § 841. See also United States v. Lott, 310 F.3d 1231, 1238-39 (10th Cir. 2002)(same).

Apprendi and Ring held that a defendant has a Sixth and Fourteenth Amendment right to a jury finding beyond a reasonable doubt of each element of the offense and were violated where the trial court imposed an additional term based upon a judicial finding. For Sixth Amendment purposes, sentencing enhancements that impose punishment above that authorized by the jury's verdict are the "functional equivalents of an element of a greater offense," because they are facts that have the potential to increase the statutory maximum sentence. United States v. Toliver, 351 F.3d 423, 431 (9th Cir. 2003)(citing Apprendi, 530 U.S. at 494). See also Blakely, 542 U.S. at 311; Harris v. United States, 536 U.S. 545, 557-58 (2003)("those facts setting the outer limits of a sentence and the judicial power to impose it, are the elements of the crime for purposes of the constitutional analysis").

"Constitutional error occurred if the court sentenced a defendant based on facts not found by the jury." United States v. Crosby, 397 F.3d 103, 114-115 (2nd Cir. 2005). "[C]onstitutional error [is] the court's reliance on judge-found facts to enhance [a] sentence mandatorialy." United States v. Bana, U.S. App. LEXIS 4679 (10th Cir. 2006); United States v. Lauder, 409 F.3d 1254 (10th Cir. 2006); United States v. Cain, U.S. App. LEXIS 28882 (11th Cir. 2005).

Here, the Government could have indicted Schulze for crimes of a greater offense had it sought to do so. Any violation under 21 U.S.C. § 841 serves as a predicate for offenses under § 848 (Continuing Criminal Enterprise). Sections 848(a)(1) and (b)(1) provide statutory sentenceing requirements for leadership

positions of § 841 violations.  In addition, section 848(2)(A)
provides statutory sentencing requirements for violations that
involve at least 300 times the quantity of a substance described
in subsection 401(b)(1)(B) of [21 U.S.C. § 841(b)(1)(B)].

The Government believed "the proof at trial showed that
Schulze was responsible for shipping hundreds of pounds of
methamphetamine to Hawaii," (Brief of Appellee, at 9).   Had this
actually been the case, the Government could have simply indicted
Schulze under §§ 841 and 848.  This would have eliminated any
doubt as to the jury's findings; it would have prevented Schulze
from being "prejudicially surprised" by the omission of these
elements; and it would have prevented the District Court from
violating his Fifth, Sixth, and Fourteenth Amendment rights by
imposing an enhanced sentence based on these omitted elements.

C.  THE DISTRICT COURT ENTERED A DIRECTED VERDICT CONVICTING
    SCHULZE OF A GREATER OFFENSE THAN THE INDICTMENT CHARGED.

"When the term 'sentence enhancement' is used to describe an
increase beyond the maximum authorized statutory sentence, it is
the functionl equivalant of an element of a greater offense than
the one covered by the jury's verdict." Apprendi, 530 U.S. at 494
(emphasis altered); see also Ring, 536 U.S. at 609 (aggravating
circumstances that makes a defendant eligible for increased
punishment "operates as the functional equivalent of an element of
a greater offense." (emphasis added).  In the instant matter, the
court violated the Sixth Amendment by convicting Schulze of "a
greater offense than the one covered by the jury's verdict."
Apprendi, 530 U.S. at 494.

When a jury returns a complete verdict on the crime charged but the trial court makes post-trial findings effectively setting aside that verdict and entering a judgment convicting the defendant of a greater charge, that court has directed the verdict. Here, the District Court entered a directed verdict convicting Schulze of a greater offense (i.e., 21 U.S.C. § 848 (a)(1) and (b)(1), and (2)(A)) than the indictment charged or that was found by the jury to have been committed. The court did so because it found Schulze guilty of those crimes after the trial.

In Neder v. United States, 144 L.Ed.2d 35, 43 (1999), the Court itself noted that harmless-error analysis does not apply to directed verdicts. The greater offense found by this Court was never charged in the indictment and was not properly subjected to the adversarial process. The indictment in this case did not give proper notice that Schulze was also being charged for Yamada's methamphetamine, or that he was a leader or organizer of any criminal activity.

Had the Government included these charges in the indictment, Schulze would have then had the opportunity to defend himself and disprove these allegations during trial. Consequently, these post-trial charges cannot be quantitively assessed "in the context of the other evidence presented". Sullivan v. Louisiana, 508 U.S. 275, 281 (1993).

The Sixth Amendment prohibits the trial court from directing a verdict for a greater offense than charged in the indictment because it deprives a defendant of his right to have the jury pronounce whether he is guilty of that offense. The Supreme Court has long held that the Sixth Amendment prohibits a court from

"do[ing] indirectly that which it has no power to do directly,"
Sparf & Hansen v. United States, 156 U.S. 51 (1895) accord Clark
v. United States, 289 U.S. 1, 16-17 (1933) - that is, directing a
guilty verdict in a criminal case.  Here, the "wrong entity" found
Schulze guilty of the greater offense. Rose v. Clark, 478 U.S.
570, 578 (1986).

    To be sure, the elements that the court found and used to
enhance Schulze's sentence were never mentioned at all until the
day of sentencing.  In essence, Schulze was charged and convicted
of greater offenses by the court at the same moment he was being
sentenced.  Schulze was found guilty by the court for Yamada's
drugs and for a leadership role despite the fact that these
greater offenses were never alleged in any indictment.  Being
sentenced for greater offenses that the jury did not find,
"prejudicially surprised" Schulze.

    This is exactly the type of Sixth Amendment violation the
Supreme Court had in mind when it stated:

          "a defendant with no warning in either his
          indictment or plea, would routinely see his
          maximum potential sentence ballon from as
          little as five years to as much as life
          imprisonment, based on facts not found by his
          peers beyond a reasonable doubt, but on facts
          extracted after trial from a report compiled
          by a probation officer who the court thinks
          more likely got it right than got it wrong."
          Blakely, 124 S. Ct. at 2542.

    The Framers intended the Sixth Amendment's jury-trial
guarantee to be the bulwark not just against judges directing
verdicts in the classic sense, but also against judges' punishing
defendants for greater crimes than juries found them guilty of.
See Barkow, 152 U. Pa. L. Rev. at 78-79 (gathering historical
sources that Framers intended juries to have unreviewable

authority to convict of a lesser offense, no matter what the
evidence at trial showed); Thomas A. Green, Verdict According to
Conscience XV-XIX (1985)(describing such judicial power in
common-law England).  In the instant matter, the Government first
informed the jury that: "you can give a special verdict form ...
to find lesser amounts", but then later, when Schulze moved the
court to have the jury determine a lesser amount, the Government
objected, stating: "Yeah, Your Honor, that's completely irrelevant
to the jury ..." (RT:7-5).

The Supreme Court explained in Blakely that the Sixth
Amendment requires juries to be interposed as a "circuitbreaker"
between defendants and trial judges, not just with respect to
entire crimes, but also with respect to facts that are the
functional equivalent of elements of a greater offense. Blakely,
542 U.S. at 306-07; See also Apprendi, 530 U.S. at 494.

The right to "jury trial is meant to ensure [the people's]
control over the judiciary," Blakely, 542 U.S. at 306, not just
trial judges.  The Framers were loath to "entrust plenary powers
over the life and liberty of citizens to one judge or group of
judges," Duncan v. Louisiana, 391 U.S. 145, 156 (1968).

Under the precedent established in Apprendi, Ring, and
Blakely, a district court cannot permit the Government to charge a
defendant of a lesser offense of distribution of 50 grams of
methamphetamine, achieve a conviction based on just 50 grams, then
"pile on dope amounts" and other enhancements of a greater offense
at sentencing.  To do so is equivalent to directing the verdict.

Because the Blakely error here was tantamount to directing
a verdict finding Schulze guilty of a greater offense, the remedy

-13-

for that violation should be to comport with the direct verdict
entered by and through the jury, which established a statutory
maximum sentencing range of 78 months imprisonment, or,
alternatively, and automatic reversal for a new trial to allow
Schulze "his opportunity to require the government to establish
his guilt to each and every element beyond a reasonable doubt."
(Opinion of this Court, November 18, 2002 Suppression Hearing
(HT, at 45)).  To hold otherwise would (1) violate the Sixth
Amendment (again), and (2) contravene the Supreme Court's
Structural-error jurisprudence.

D.   STRUCTURAL ERROR, FAILURE TO COMPLY WITH CONSTITUTIONAL
     SAFEGUARDS OF TRIAL PROCEDURES AFFORDED TO SCHULZE.

     Structural error is the failure to conduct a trial in any
constitutional sense of the offense on which the court ultimately
entered the conviction.  "The very premis of structural-error
review is that even convictions reflecting the 'right' result are
reversed for the sake of protecting a basic right." Neder, 527
U.S. at 35.  "[D]epriving the criminal defendant of a jury verdict
is structural error." Neder, 527 U.S. at 39.

     The jury in this case was never allowed to resolve the
factual question of Schulze's guilt of a greater offense, not just
because they were not instructed on the elements, but because the
facts necessary to support the elements of the greater offense
were not alleged and litigated to the jury.  The court refused to
allow Schulze to provide instructions asking the jury to determine
whether the Government had proven beyond a reasonable doubt that
he was responsible for Yamada's methamphetamine.  Here, the jury
did not find "every fact necessary to establish every element of

the offense beyond a reasonable doubt." <u>In re Winship</u>, 397 U.S. 358, 364 (1970).

The error was not in "the presentation of the case to the jury", it is what was <u>not</u> presented to the jury and therefore could not "be quantitively assessed in the context of the other evidence presented." <u>Sullivan</u>, 508 U.S. at 281 (citing <u>Arizona v. Fulminante</u>, 499 U.S. 297, 309 (1991)).  The error here lies in the "constitution of the trial mechanism," <u>Sullivan</u>, 508 U.S. at 281, and is thus structural.

The Supreme Court has long recognized that some basic trial errors can never be treated as harmless error. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993); <u>Arizona</u>, <u>supra</u>, 499 U.S. 279; <u>Sullivan</u>, <u>supra</u>, 508 U.S. 275; <u>MaKaskle v. Wiggins</u>, 465 U.S. 168 (1984); <u>Waller v. Georgia</u>, 467 U.S. 39 (1984); <u>Gideon v. Wainwright</u>, 372 U.S. 355 (1963).

While most constitutional errors are subject to harmless error analysis, "structural errors conclusively presumed to affect the substantial rights of the defendant because they deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair.'" <u>Unites States v. Higgs</u>, 353 F.3d 281, 305 (4th Cir. 2003)(citing <u>Neder</u>, 527 U.S. at 8-9)(guoting <u>Rose v. Clark</u>, 478 U.S. 570, 577-78 (1996)).

Harmless-error analysis may often be appropriate when an error occurred which "did not interfere with the jury's ability to legitimately reach the verdict that it reached ... But this principle cannot apply unless the jury found all the elements

required to support a conviction.  The harmless-error doctrine may enable a court to remove taint from proceedings in order to preserve a jury's findings, but it cannot constitutionally supplement these findings.  It is fundamental that an appellate court (and for that matter, a trial court) is not free to decide in a criminal case that if asked, a jury would have found something it did not find.  We have consistantly rejected the pssibility of harmless error in those circumstances." Pope v. Illinois, 481 U.S. 497, 510-11 (citing Jackson v. Virginia, 443 U.S. 307, 320, n 14 (1979); Carpenters v. United States, 330 U.S. 395, 408-409 (1947); Bollenbach v. United States, 326 U.S. 607, 615 (1946); see also Marks v. United States, 430 U.S. 188, 196, n 12 (1977).

The understanding of substantial rights is apparent in Supreme Court precedental case law that indicates the difference between trial errors and structrual errors is not a question of when the error occurred in the proceedings, but rather what right was violated as a result of the error. Neder,527 U.S. at 8-9.

Here, each infringment on Schulze's constitutional rights have substantially affected the outcome of this matter.  First, the court denied Schulze's Sixth Amendment right to have the jury determine beyond a reasonable doubt the facts which resulted in his enhanced sentence.  Second, the court speculated that the jury "found something it did not find", and subsequently directed the verdict of a greater offense.  Third, the court then imposed a sentence that was twenty-three (23) years greater than that authorized by the jury's factual finding.

In addressing speculation, the Supreme Court held that: "The

difference between speculation directed towards confirming the jury's verdict (Sullivan) and speculation directed towards making a judgment that the jury has never made is more than semantic ... It is this sort of allocation of decisionmaking power that the Sullivan standrd protects.  The right to render the verdict in criminal prosecutions belongs exclusively to the jury," Neder, 528 U.S. at 38-39.  "[T]o hypothesize a guilty verdict that was never in fact rendered - no matter how inescapable the findings to support the verdict might be - would violate the jury trial guarentee." Sullivan, 508 U.S. at 280.

The errors in this case fall squarely on the precedent of structural error established by the Supreme Court.  The "only appropriate remedy" for structural error is reversal to allow for a new trial. Quintero v. Bell, 256 F.3d 409, 416 (6th Cir. 2001); United States v. Brown, 202 F.3d 691, 699 (4th Cir. 2000) (structural error "mandate[s] a new trial"); United States v. Mortimer, 161 F.3d 240, 242 (3rd Cir. 1998)(same).

However, "the Fifth Amendment to our Constitution does not permit [Schulze] to be tried twice for the same offense."  And the due process clause of the Fourteenth Amendment prevents a second prosecution, regardless of the outcome of the first trial. Therefore, Schulze's conviction of a conspiracy, and the jury's factual finding of 50 grams of methamphetamine must stand. See United States v. Velasco-Heredia, 319 F.3d 1080, 1086-87 (9th Cir. 2003).


E.  BOOKER'S REMEDIAL OPINION DID NOT DISTURB APPRENDI, RING, OR BLAKELY'S FIFTH AND SIXTH AMENDMENT JURY-FINDING REQUIREMENT.

In Blakely, the Supreme Court addressed a provision of Washington State's determinative sentencing law that allowed a judge to impose a sentence above the standard statutory sentencing range if the judge found, by a preponderance of the evidence, that certain offense aggravating factors existed that justified a sentence in excess of the "standard range." Id. at 2535. When the trial court in Blakely utilized this authority to impose a 90 month sentence, even though the standard range for Blakely's offense was 49 to 53 months, the Supreme Court struck down the sentence, holding that the sentence could not survive the Sixth Amendment challenge because the offense aggravating factors were not found by the jury beyond a reasonable doubt. Id. at 2537.

The identical situation occurred here. Schulze was found guilty by a jury of conspiracy to distribute 50 grams of methamphetamine, which authorized a standard sentencing range of 63 to 78 months. At sentencing, the court found, by a preponderance of the evidence, that certain aggravating factors existed and enhanced Schulze's sentence from 63 months to 360.

On appeal, following Blakely, the Government conceded and agreed that the "[D]istrict Court erred in making factual findings which increased Schulze's maximum sentence beyond that justified by the jury's verdict. (Brief of Appellee, at 9).

In Booker, the Supreme Court held that the Sixth Amendment as construed in Blakely, applies to the Federal Sentencing Guidelines. 160 L.Ed.2d at 640. Booker's remedial opinion, which effectively made the Guidelines "advisory", did not disturb the Court's holding in Blakely, nor did it invalidate the Sixth Amendment requirement that juries, not judges, find beyond a

reasonable doubt, all facts "which the law makes essential to the punishment ..." Blakely, 159 L.Ed.2d at 413-14.

A sentencing court cannot ignore the Blakely and Apprendi requirements simply because the Guidelines have become "advisory" under Booker.  Holding the Guidelines advisory does not cure the violations caused through judicial fact-finding of elements that the Sixth Amendment requires be submitted to a jury and proven beyond a reasonable doubt.  Especially where such elements can be used to enhance a defendant's sentence.  Booker created a remedy that allows courts to exercise discretion in sentencing.  Booker did not give those courts discretion in applying Constitutional requirements.  To hold otherwise, would only continue to violate the Fifth and Sixth Amendment of the Constitution.

F.  IN RESENTENCING SCHULZE, THE COURT MUST APPLY THE GUIDELINES IN EFFECT AT THE TIME THE OFFENSE WAS COMMITTED TO AVOID A VIOLATION OF THE EX POST FACTO CLAUSE OF THE CONSTITUTION.

Schulze recognizes this issue has been foreclosed in United States v. Dupas, 419 F.3d 916 (9th Cir. 2005)(holding that retroactive application of the Booker remedial opinion did not violate ex post facto principles incorporated into the Due Process Clause), but believes his position is distinguishable from Dupas.

The Ex Post Facto Clause prohibits the enactment of laws that increase punishment over that previously prescribed.  "[W]hen revision of Sentencing Guidelines changes legal consequences of act completed before its effective date, to convict's detriment, ex post facto clause requires application of Guidelines in effect at the time of criminal act." United States v. Kussmaul, 987 F.2d 345, 351-52 (6th Cir. 1993)(quoting Miller v. Florida, 482 U.S.

-19-

423, 430 (1987)).  "Ex post facto prohibits use of guideline in effect at time of sentencing if its use produces harsher sentence than guideline in effect when crime was committed." United States v. Beli, 991 F.2d 1445, 1452 (8th Cir. 1993); United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); United States v. Smith, 930 F.2d 1450, 1452, n.3 (10th CIr. 1991); see also Section 1B1.11 U.S.S.G.

When an "amended provision to the Guidelines call for a more sever penalty than the original one, those guidelines in effect at the time of the offense was committed govern the imposition of sentence.  The reason for this is to avoid a violation of the ex post facto clause of the Constitution." United States v. Keller, 58 F.3d 884, 890 (2nd Cir. 1995).

Booker's revision to the Guidelines, which rendered them advisory, could violate the ex post facto clause because it carries the potential to increase the level of punishment from that in which Schulze was exposed to under the mandatory application of the Guideline, which, was in place when the offense was committed.

A "sentencing scheme violates the Ex Post Facto Clause if it is enacted after commision of a crime and before sentencing, and its application results in more onerous penalty." United States v. Bailey, 123 F.3d 1381, fn.32 (11th Cir. 1997).  Under a mandatory Guideline scheme, as was in existance when Schulze was convicted, the maximum sentence Schulze could receive based on the jury's verdict was seventy-eight (78) months.  Under the now advisory scheme created by Booker, Schulze faces a potentially higher sentencing range because the courts construe Booker as authorizing them to consider elements to enhance a sentence that were not

charged in the indictment nor proven to a jury beyond a reasonable doubt as required by <u>Apprendi</u>, <u>Ring</u>, and <u>Blakely</u>, <u>supra</u>.

"Ex Post Facto Clause is aimed at laws that retroactivley ... increase punishment for criminal acts." <u>Himes v. Thompson</u>, 336 F.3d 848, 855 (9th Cir. 2003); <u>Souch v. Schaivo</u>, 289 F.3d 616, 620 (guoting <u>Cal. Dep't. of Corr. v. Morales</u>, 514 U.S. 499, 504(1995).

<u>Booker</u>'s remedial opinion has been held to apply to all cases on direct review, "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final," <u>Booker</u>, 160 L.Ed.2d at 666 (quoting <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987), thus the retro-application of <u>Booker</u>'s "advisory" scheme will violate the ex post facto clause <u>if</u> Schulze receives a sentence higher than the statutory maximum term of 78 months that he would have been exposed to under the mandatory Guideline system in effect at the time the offense was committed; when he was convicted; and when he was originally sentenced in September of 2003.

In <u>Dupas</u>, the court held that the ex post facto clause did not apply because Dupas pleaded guitly with an understanding that he would be exposed to the statutory maximum enacted in the United States Code, which, by doing so, provided him sufficient warning that his sentencing exposure could be increased.

By contrast, Schulze proceeded to trial because under the mandatory Guideline system in place at the time, the Government was required to prove each element to the jury beyond a reasonable doubt, and the sentencing court was prevented from applying such enhancements that the Fifth Amendment required be found by the jury, which is why Schulze moved the court to allow a verdict

form that would require the jury, not the judge, to determine whether elements were proven to authorize any sentencing enhancements.

Had the court then allowed Schulze's jury-finding request, he would have been sentenced between 63 to 78 months under the mandatory Guideline system because the jury would <u>not</u> have found the necessary elements to warrant an increase, and an appeal would not have been filed, which, through due course of the appellate process, brought this <u>Apprendi</u> and <u>Blakely</u>-based case into <u>Booker</u>'s realm of advisory Guidelines.

This case is distinguishable from <u>Dupas</u> and the ex post facto clause must apply <u>if</u> Schulze is resentenced under the <u>advisory</u> scheme and receives a "higher punishment" than the <u>mandatory</u> scheme would allow. See <u>United States v. Ortland</u>, 109 F.3d 539, 546 (9th Cir. 1997)(holding that "when application of a version of the Guidelines enacted after the offense leads to a higher punishment than would application of the Guidelines in effect at the time of the offense, there is an ex post facto problem"). See also <u>United States v. Maldonado</u>, 242 F.3d 1, 5 (1st Cir. 2001).

On the other hand, <u>Booker</u>'s remedial solution should not be retroactively applied to this case because the "sentencing guideline amendments that include sustantive changes are not applied retroactively unless the Sentencing Commission specifically indicates it." <u>United States v. Booker</u>, 70 F.3d 488, 491 (7th Cir. 1995). "Only Congress or the Sentencing Commission and not the courts, can effect a change in the guidelines," <u>United States v. Maxwell</u>, 25 F.3d 1389, 1401 (8th Cir.), cert.

denied, 130 L.Ed.2d 519, 115 S. Ct. 610 (1994).

Alternatively, in light of the ambiguities caused in this case by <u>Booker</u> with respect to the conflict created over its retroactive application and advisory scheme versus the mandatory scheme, which was in place when the offense was alleged to have been committed, this Court should apply the Rule of lenity and resentence Schulze to the lesser of either Guideline applications.

"Rule of lenity requires sentencing courts to impose lesser of two penalties when there is actual ambiguity over which penalty should apply." <u>United States v. Lazo-Ortiz</u>, 136 F.3d 1282, 1286 (11th Cir. 1998); <u>United States v. Ortiz</u>, 143 F.3d 728, 729 n.1, 730-31 (2nd Cir. 1998); <u>United States v. Bass</u>, 404 U.S. 336, 347-348 (1971). <u>See also United States v. Fuentes-Barahona</u>, 111 F.3d 651, 654 (9th Cir. 1997)(holding that Rule of lenity applies to Sentencing Guidelines).

The rule of lenity should clearly be utilized to prevent the application of a sentence enhancement where there is no clear language in the guideline ... to support that increased sentence. See <u>United States v. Sanders</u>, 162 F.3d 396, 403 (6th Cir. 1998). The rule of lenity applies here because <u>Booker</u> did not clearly state by which standard of evidence a sentencing court may rely.

"When ambiguities exist in Sentencing Guidelines ⌊or in procedures to enhance⌋ the rule of lenity dictates that ambiguity be resolved in favor of the defendant." <u>United States v. Pharis</u>, 176 F.3d 434, 437 (8th Cir. 1999); <u>see also United States v. Ramirez</u>, 347 F.3d 792, 799-800 (9th Cir. 2003)(holding in sentencing guidelines context that "the rule of lenity requires that we construe ambiguous terms in favor of the accused.")

CONCLUSION

"The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." United States v. Gaudin, 515 U.S. 506, 523, 132 L.Ed.2d 444, 115 S. Ct. 2310 (1995).

Apprendi and Blakely prohibit this court from usurping the role of the jury and determining, on its own by a preponderance of the evidence, a drug amount or other enhancements that increase Schulze's penalty beyond that established by the jury's factual findings, which, in this case was conspiracy to distribute 50 grams of methamphetamine.

The Booker Court did not invalidate Apprendi, Ring, or Blakely, and it certainly did not authorize any court to override the requirements and protections established and provided in and by the Constitution of the United States of America.

Therefore, based on the jury's factual finding of 50 grams of methamphetamine, Schulze must be sentenced to a term of imprisonment no greater than the seventy-eight (78) month statutory maximum prescribed by the jury's verdict, and, pursuant to the United States Sentencing Guideline that was in effect when the offense was committed; when Schulze was convicted for that offense; and when Schulze was originally sentenced in 2003.

DATED: June 7, 2006                     Respectfully submitted,


                                        Micheal F. Schulze
                                        Defendant, pro se

** CERTIFICATE OF SERVICE **

I hereby certify that a true and exact copy of the foregoing
DEFENDANT'S PRO SE SENTENCING MEMORANDUM, was duly served upon
counsel for the United States of America, by depositing the same
in the U.S. Institutional Mail at FCI Bennettsville, South
Carolina, first class, with sufficient postage attached and
addressed to:

        Kenneth M. Sorenson, ESQ. AUSA
        Office of the U.S. Attorney
        Room 6-100, PJKK Federal Building
        300 Ala Moana Boulevard
        Honolulu, Hawaii  96850

DATED: June 7, 2006
       Bennettsville, South Carolina

By: _____
        Michael F. Schulze
        Defendant, pro se