ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 2 0 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

Michael F. Schulze
Reg.#36817-048
FCI Bennettsville
P.O. Box 52020
Bennettsville, SC 29512-5220

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL F. SCHULZE,<br><br>        Defendant. | CR. NO. 02-00090-DAE<br><br>DEFENDANT'S COLLECTIVE REPLY TO GOVERNMENT'S COLLECTIVE RESPONSE TO DEFENDANT'S MOTION FOR A NEW TRIAL AND DISCLOSURE OF GRAND JURY TRANSCRIPTS; EXHIBITS A, B, & C; and CERTIFICATE OF SERVICE |

COMES NOW defendant Michael Schulze ("Schulze"), pro se, and hereby replies to the Government's Collective Response to defendant's: (1) Motion for New Trial pursuant to F.R.Cr.P, Rule 33 ("Rule 33 motion"), submitted on February 11, 2006, and filed on March 16, 2006; and (2) Motion for Disclosure of Grand Jury Transcripts pursuant to F.R.Cr.P., Rule 6(e) ("Rule 6 motion"), filed April 13, 2006.

A.  MOTION FOR NEW TRIAL.

1.  A BRIEF HISTORY.

On February 11, 2003, Schulze was convicted by a jury. On April 7, 2005, Schulze filed a post-conviction Second Motion for Re-consideration of the court's order denying his motion to suppress tape recorded evidence (hereinafter "April 7th Motion"). The April 7th motion was based on a <u>Brady v. Maryland</u>, 473 U.S. 83 (1963) / <u>Newly Discovered Evidence</u> claim, and it contained

exhibits in support.

On Saturday, February 11, 2006, believing the April 7th motion was still pending, Schulze placed a 3-page Rule 33 motion in the institution's legal mailbox at FCI Bennettsville, SC, addressed to the District Court of Hawaii. A certified copy was <u>also</u> mailed to AUSA, Kenneth M. Sorenson on the same day. The 3-page Rule 33 motion was submitted "in place of Defendant's post-conviction Second Motion for Re-consideration," and asked the court to "construe that (April 7th) motion as a timely filed Rule 33 motion ..." (Rule 33 motion at 3).

Schulze submitted his Rule 33 motion under the mailbox rule enunciated in <u>Houston v. Lack</u>, 487 U.S. 266, 270-71 (1988)(holding that a pro se prisoner's petition is considered "filed" at the moment of delivery to prison authorities for forwarding to the district court); see also <u>Anthony v. Cambra</u>, 236 F.2d 568, 574-75 (9th Cir. 2000)(same).

On Tuesday, February 14, 2006, the mail room staff at FCI Bennettsville processed the envelope which contained the court's copy of the Rule 33 motion. (See Exhibit "A"). However, for some unexplicable and suspicious reason, the envelope was re-routed to a post office in Florance, SC, and not processed until February 28, 2006. (See Exhibit "B"). Then, due to a deficiency in postage of 13¢, the envelope was returned to Schulze.

Immediately following receipt, Schulze affixed additional postage onto the envelope and placed it back into the institution's legal mailbox. The reason Schulze sent the same envelope back to the court was so that it would see the original process date of February 14th, to prove it was timely filed.

On March 2, 2006, the envelope was processed again, this time at the post office at Bennettsville, SC. On March 6, 2006, the District Court of Hawaii unexplicably refused the envelope. (See Exhibit "B"). On March 9, 2006, Schulze received the "refused" envelope and instantly placed the Rule 33 motion in a new envelope and attached a letter to the Clerk of the Court explaining the situation and asked that the explanation letter be filed along with the Rule 33 motion. (See Exhibit "C"). On March 16, 2006, the Rule 33 motion was finally filed.

On or about April 24, 2006, Schulze wrote to the District Court to request a copy of his criminal docket. On May 1, 2006, Schulze received the docket and learned that his April 7th motion had been denied on April 18, 2005. As a result, Schulze prepared a twenty-four (24) page supplement ("Supplement") to support his 3-page Rule 33 motion, and hand-delivered it to the institution's mail room staff on May 26, 2006. The court received it on May 31.

On June 5, 2006, Schulze received the Government's Collective Response ("Response") to the instant matter, which, was also filed on May 31, 2006. Because Schulze's Supplement was "delivered to prison authorities" under the mailbox rule, it was "filed" on May 26, 2006, which is prior to the Government's filing of their Response.

Because it is more than likely that the Government also received the Supplement on the same day it filed its Response, the Government should be allowed an opportunity to submit an entirely new Response in order to fully address the meritorious motion for a new trial.

That being said, Schulze submits the following reply.

As a preliminary matter, it should be noted that the Government's "RELEVANT FACTS" are incorrect. The Government states: "Evidence offered at trial showed that Schulze distributed hundreds of pounds of methamphetamine in Hawaii, and made well over $1,000,000. Schulze then laundered his drug proceeds through various means, including a shell corporation, Innovative Investments." (Response at 2).

TRUE FACT: The jury convicted Schulze of conspiracy to distribute 50 grams, and two counts of distributing a total of 55 grams. At trial, Schulze moved the court to allow a verdict form that would require the jury to make a specific finding pertaining to drug amounts, the Government objected. Now it speculates as to an amount *it* thinks it proved despite any factual finding.

TRUE FACT: As proven in Schulze's motion for disclosure of grand jury transcripts, the FBI fabricated evidence to show a combined amount of over $1,000,000 by double and triple-counting bank deposits, transfers, and loans.

TRUE FACT: Money laundering was not charged in this case; no one testified that Schulze laundered any money, or that Innovative Investments was a shell corporation.

The Government also states:"The vast majority of the inculpatory statements of Schulze made by Olaes [?] were recorded by FBI after October, 2001." (Response at 4).

TRUE FACT: At trial, the Government relied on nine (9) recordings to support their case. These were Exhibits 1 through 5, 5a, and 6 through 8. Exhibits 6 & 7 were the only recordings made "after October, 2001" and they are not the "vast majority of the inculpatory statements". As proven in Schulze's Supplement, 6 & 7

-4-

alone do not support the Government's allegation of a conspiracy. In addition, Counts Two and Three (August 30th and October 2nd, 2001, respectively), are based solely on the conversations of Exhibits 1 & 4, and are mentioned in the indictment as overt acts to support Count One - Conspiracy.  Exhibits 6 & 7 are not.

The Government also states that Schulze "lived a wealthy, job free existence [for a period of nearly five years] in Las Vegas."

TRUE FACT: Contractor, Carl Gaumount, testified that Schulze is a journeyman carpenter who had worked for him in Hawaii as late as 1998 (Tr. Vol. 6, p.98); Dr. Brian Thompson testified that he had visited Schulze while living in Atlanta, Georgia, and "saw his office where he was managing his recording business ... and [wood-working] shop ... in 1999."  Dr. Thompson also testified that he later visited Schulze while living in Las Vegas on a number of occasions, and observed several custom homes under construction by Schulze.  "I saw several of his -- the homes that he had built.  I saw some completely done, some partially done, others that were scheduled for demolition -- for reconstruction." Dr. Thompson also witnessed Schulze "direct[ing] and instruct[ing] his building crew." (Tr. Vol. 6, p.107-108).  No one testified that Schulze "lived a wealthy, job free existence in Las Vegas.

2.  NEWLY DISCOVERED EVIDENCE.

As articulated in Schulze's Supplement, Rule 33 motions are frequently based on the Government's nondisclosure of information favorable to the defense under Brady, supra.  Rule 33 motions can also be based on newly discovered evidence that goes to an issue

other than the defendant's guilt, and it can also be based on a post-conviction discovery of <u>Brady</u> violations. <u>See United States v. Woodley</u>, 9 F.3d 774, 777 (9th Cir. 1993); <u>United States v. Steinberg</u>, 99 F.3d 1486, 1490 (9th Cir. 1996). A Rule 33 motion is proper where a <u>Brady</u> violation "altered the outcome of the proceedings." <u>United States v. Service Deli Inc.</u>, 151 F.3d 938, 943 (9th Cir. 1998).

The Governemnt appears to misunderstand the substance of Schulze's motion. The Government incorrectly believes (or cleverly misstates) that the "gist" of Schulze's motion is that Special Agent Maglasang used Olaes "as an informant to record calls and contacts with him under the '<u>color of law</u>'" (emphasis added), and that "because Olaes was on state probation at the time, Maglasang was barred from using him as an informant by state and federal law." (Response at 5).

This is not true. The "gist" of Schulze's motion is that Olaes was <u>not acting under the "color of law" while he recorded private conversations during the period of his probation</u>. And Special Agent Maglasang testified to this fact at trial, which was <u>after</u> Schulze lost the pre-trial Suppression Hearing on the basis of the Prosecution's representation that Olaes was acting under the "color of law" throughout the entire investigation, when in fact he knew that Olaes was not. This fact is proven in the Supplement.

The Government now claims that this was not newly discovered evidence because the defense knew of Olaes' probation status during trial. Maybe. But the issue here is that the defense was never told about the FBI's <u>attempt</u> and <u>failure</u> to obtain authorization to allow Olaes to "undertake in criminal activity". The Prosecution

purposely concealed this information from the defense during the pre-trial Suppression Hearing because it knew that the bulk of its case was based on the recordings that were illegally obtained by Olaes, and under such circumstances, federal laws would require suppression. See 18 U.S.C. §§ 2511(2)(d) and 2515.

The Government then suggests that "since both Schulze and his trial counsel knew of it at trial. A motion for a mistrial or continuance could easily have been made during trial, and a motion for a new trial could have been made within the 7 days after the verdict as is required for new trial motions on 'other grounds.' Fed. R. Crim. Pro. 33(b)(2)." (Response at 6).

First, Schulze is not required to move for a new trial within 7 days if the motion is based on newly discovered evidence. See Eberhart v. United States, 546 U.S. ___, 126 S. Ct. ___, 163 L.Ed.2d 14 (2005)(Per Curiam)(where "on the last day available for for posttrial motions," Eberhart moved for a new trial based on a single asserted ground that a flaw in a transcript had been published to the jury during trail. The District Court granted the motion, the Circuit Court reversed based on untimeliness, the Supreme Court remanded).

Second, as previously stated, Schulze did not become aware of the Government's Brady violation until receiving his case file and trial transcripts (which was newly recieved evidence) while proceeding pro se on his direct appeal. And it was precisely at this point when Schulze filed his Brady claim in the district court on April 7th, 2005. This disproves the Government's claim that: "Maglasang's testimony has been available to him since trial (emphasis added), yet no action was attempted until 3 years after

-7-

his conviction." (Response at 6).

Third, the Government advances the suggestion that Schulze's trial counsel was ineffective for his failure to "motion for a mistrial". The Government appears to shift the burden from its obligation to disclose favorable information under <u>Brady</u>, to counsel's failure to notice a <u>Brady</u> violation in and during the course of an eight-day trial, where the Government called no less than twenty-one (21) witnesses to testify. In this effect, the Government is suggesting that Schulze's trial counsel should have stopped the trial after each witness and reviewed documents and statements provided by the Government to ensure that no <u>Brady</u> violations had occurred. There is little chance that any court would prescribe to such a method.

There is a reason Congress established a three-year period in which a defendant may discover new evidence and bring it to light. And the Supreme Court has established that this period is also extended to claims made under <u>Brady</u> violations. See <u>Banks v. Dretke</u>, 540 U.S. 668, 157 L.Ed.2.d 1166, 124 S. Ct. 1256 (2004) (Texas prisoner held entitled to relief based on "long-suppressed [<u>Brady</u>] evidence [that] came to light" after being concealed by the Prosecution for 12 years). The facts in this case clearly demonstrate a <u>Brady</u> violation, and this fact <u>cannot</u> be dispelled, no matter how the Government tries to direct the blame.

In addressing the Government's concerns of the five factors it cites in <u>United States v. Arbelaez</u>, 719 F.2d 1453 (9th Cir. <u>1983</u>), Schulze's Supplement not only addresses these five factors required in the controlling case of <u>United States v. Kulczyk</u>, 931 F.2d 542, 548 (9th Cir. <u>1991</u>), but submits three additional

factors required to establish a <u>Brady</u> violation in <u>United States v. Ciccone</u>, 219 F.3d 1078, 1085 (9th Cir. 2000). Altogether, Schulze satisfies eight (8) factors to prevail on this motion.

Next, the Government claims that "this Court's own findings clearly establish that every recorded phone call introduced at the trial of this case was made at the direction of FBI agents." (Response at 7). Maybe. But the Court's findings were also based clearly on the <u>pre-trial</u> statements made by the Prosecutor who has not been forthright with the court from day-one. See <u>Supplement at 13-14</u>.

Next, the Government claims the "undisputed fact is that FBI agents utilized Olaes to record calls pursuant to an official criminal investigation. Olaes was accordingly operating 'under color of law' when he was used as the host for recording Schulze's drug dealing activities." (Response at 7). Maybe. But clearly <u>not</u> during the period of Olaes' probation because Special Agent Maglasang testified that the FBI <u>could</u> <u>not</u> use him to "undertake in criminal activity" until his probation expired on October 5th.

Next, the Government claims that "the Ninth Circuit [has determined], that the recordings in this case were consensual and conducted under color of law pursuant to Section 18 U.S.C. § 2511 (2)(c)." (Response at 7). This is not entirely true. The Panel's memorandum opinion only affirmed the "<u>district court['s] conclu[sion]</u> (emphasis added) that audiotapes of conversations between Schulze and [Olaes] were legally made because [Olaes] was 'acting under color of law' as required by 18 U.S.C. § 2511 (2)(c)." (Opinion at 2). The Panel did not have before it the argument, facts, and evidence that this motion provides.

Section 2511(2)(c), on which the Government, this Court, and the Panel rely, states in part: "It shall not be unlawful under this chapter for a person <u>acting under color of law</u> to intercept a wire, oral, or electronic cummunication ..." (emphasis added). The Panel's opinion points to the same case on which the Government relies to establish that "an informant act[s] under the 'color of law' when directed by the government to make the recordings." <u>United States v. Thiocyante [Tousant]</u>, 619 F.2d 810, 813 (9th Cir. 1980). (Opinion at 2-3).

To be sure, Olaes is considered to be "acting under color of law", when he "intercepts cummunications", which "shall not be unlawful", "when directed by the government". If this is true, then Schulze must prevail on the merits of his motion for a new trial because Special Agent Maglasang testified that Olaes <u>was not acting</u> "<u>under our direction</u>" until the period of his probation expired. (Tr. Vol. 3, p.19)(emphasis added).

Special Agent Maglasang's testimony proves that Olaes was not under color of law while he recorded private conversations because he was not authorized by any state or federal agency to do so. And this fact is supported by the evidence that demonstrates even the Prosecutor in this case did not authorize Olaes to participate in the investigation until October 22, 2001. (See Supplement at 14, and Exhibit "I"). Therefore, all recordings made by Olaes during this period were illegally obtained in violation of state (HRS § 803-42) and federal (18 U.S.C. § 2511 (2)(d) recordation laws, and Section 2515 mandates suppression.

Finally, the Government urges that "the fact of Olaes being on state supervision is not material to the issue of Schulze's

-10-

guilt and would certainly not result in an acquittal, since it is neither exculpatory nor relevant to the fact that Schulze is a drug dealer." (Response at 8). This is not true. Olaes' period of probation is extremely relevant because the <u>only evidence</u> in this entire case was obtained soley by Olaes. And the bulk of that evidence was the recordings made during this period when Olaes was <u>not</u> authorized because the <u>law</u> prohibited him from participating in the FBI's investigation. And without these recordings, the Government would not have had sufficient evidence to achieve a conviction. If it did, it would not have risked exposure of committing a <u>Brady</u> violation, and it would have certainly provided some evidence or even argue to the contrary in its response to the instant Rule 33 motion.

    The bottom line is: Had the defense been told, <u>pre-trial</u>, that <u>Olaes was not acting under color of law</u> during the period of his probation because <u>the FBI could not obtain authorization to direct him to record coversations</u>, Schulze would have been <u>acquitted</u> of all charges because there would not have been any proof to support the allegations, <u>because these recordings would have been suppressed as a matter of law</u>. And this fact has been proven by the Supplement and Exhibits to support this motion.

B.  <u>MOTION FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS.</u>

    To begin with, the Government claims that "Schulze requests blanket release of all grand jury testimony in this case." (Response at 9). This is not true. Schulze only requested the testimony from: (1) Special Agent Maglasang ("Maglasang"); (2) informant Steve Olaes ("Olaes"); and (3) AUSA Kenneth Sorenson,

during the questioning of Maglasang and Olaes at each of the three hearings. However, if the Government is implying that Maglasang and Olaes are the only persons to have testified, then the need for disclosure in increased because Schulze's motion has demonstrated that Maglasang manufactured evidence in this case; made misleading statements under oath; and gave conflicting testimony at trial in comparison to other Agent's statements and relevant facts, and, where Olaes testified at trial to being dishonest with federal officials throughout this entire matter. See Rule 6 motion at 9, 11, & 12.

Both Maglasang and Olaes have demonstrated a propensity to lie during each grand jury hearing. Consequently, it is more likely than not that the grand jury transcripts will expose this.

Next, the Government claims that it "turned over Special Agent Maglasang's grand jury testimony prior to trial ..." (Response at 9). This claim is supported with a letter made to Defense Attorney, Dean Steward, which states in part:

> "I also enclose the grand jury testimony of Special Agent Cindy Maglasang. As we have discussed, by accepting these materials you agree that they will not be shared with your client," (Govt.'s Response, Exhibit "A").

The Government claims that this demonstrates that "[Schulze] has already been given the very transcripts he represents he does not have." (Response at 9). This is a baseless claim. The fact that Mr. Steward received a copy of the transcripts does not prove Schulze "has been given the ... transcripts", especially in light of the fact that the Government's letter expressly states that the transcripts "will not be shared with [Schulze]". In addition, the Government does not indicate which of the three hearings it

-12-

provided Mr. Steward, and implies that it turned over to Schulze "the very transcripts" he requests. The Government <u>does</u> <u>not</u> prove through such insufficient evidence that Schulze's grand jury transcript request has "already" been satisfied.

Next, the Government claims that Schulze has not "demonstrated the material he seeks are needed to avoid 'possible injustice in another judicial proceeding' as required by Rule 33. In fact, there is no other judicial proceeding for which he can allege they are necessary." (Response at 9-10). The Government is factually incorrect and it improperly applies Rule 33 here. In addition, it is apparent that the Government has not read Schulze's Rule 6 motion, nor is it familiar with Rule 6.

Rule 6(e)(3)(E)(ii) specifically provides for disclosure of grand jury transcripts "at the request of a defendant who shows that a ground may exist to <u>dismiss the indictment because of a matter that occurred before the grand jury</u>", and this <u>fact</u> is clearly stated at <u>page one</u> of Schulze's Rule 6 motion. Schulze's motion clearly demonstrates that the transcripts are needed to prove that the "matter" which occurred before the grand jury was that <u>Maglasang and Olaes were not forthright during the grand jury hearing(s)</u>. More important, the transcripts will likely show Governmental and Prosecutorial misconduct before each hearing, and Schulze's twelve-page motion and thirty-nine-pages of exhibits definitively "show that a ground may exists to dismiss the indictment". (Rule 6 motion at 2).

To support his motion, Schulze cited, among other cases, <u>United States v. Chanen</u>, 549 F.2d 1306, 1309 (9th Cir. 1977) (holding that "federal courts have dismissed indictments because

of the way in which the prosecution sought and secured the charges from the grand jury." (Rule 6 motion at 4). An indictment can be dismissed after finding before the grand jury, the prosecutor had: inter alia, (1) allowed a witness to make irrelevant and potentially prejudicial statements, and (2) expressed his personal views concerning the evidence. See United States v. Sears, Roebuck and Co., 719 F.2d 1386, 1392 n. 9 (9th Cir. 1983). See also United States v. Samango, 607 F.2d 877, 881-82 (9th Cir. 1979)(The Ninth Circuit affirmed the Hawaii District Court's dismissal of an indictment on the ground that "the prosecutor's behavior was so improper and prejudicial that it created a biased grand jury.")

Schulze has provided overwhelming evidence to support the allegation that prosecutorial misconduct occurred in this case, but whether it also occurred before the grand jury will remain unknown unless this Court discloses the requested transcripts. The evidence and facts in this case are "entirely consistant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." Dennis v. United States, 384 U.S. 855, 871 (1966).

Here, Schulze's motion is supported by overwhelming facts, evidence, and relevant case law. Contrarily, the Government fails to demonstrate that Maglasang's "worksheets" were not munufactured, or that Olaes was forthright with his FBI handlers, or that the Prosecution did not make false and misleading statements throughout this entire case. The Government does not attempt to disprove or discredit the evidence submitted in this motion. And it fails to offer a clear reason as to why this

Court should not Grant this motion. Indeed, if Schulze "has already been given the very transcripts he represents he does not have", then there really is no opposition from the Government at all.

### CONCLUSION

For all the foregoing reasons, the Defendant, Michael F. Schulze, respectfully prays this Honorable Court GRANTS his motion for a new trial based on newly discovered evidence, and GRANTS his motion for disclosure of grand jury transcripts or GRANTS whatever relief it deems proper and just.

DATED: June 14, 2006, at Bennettsville, South Carolina.

Respectfully submitted,

_____
Michael F. Schulze
Defendant, pro se

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing DEFENDANT'S COLLECTIVE REPLY TO GOVERNMENT'S COLLECTIVE RESPONSE TO DEFENDANT'S MOTION FOR A NEW TRIAL AND DISCLOSURE OF GRAND JURY TRANSCRIPTS, was duly served upon counsel for the United States of America, by hand-delivering the same to prison authorities at the institution's mail room at FCI Bennettsville, South Carolina, First Class, with sufficient postage attached and addressed to:

> Kenneth M. Sorenson, Esq., AUSA
> Office of the U.S. Attorney
> Room 6-100, PJKK Federal Building
> 300 Ala Moana Boulevard
> Honolulu, Hawaii  96850

DATED: June 15, 2006
Bennettsville, SC

By: _____
Michael F. Schulze
Defendant, pro se