ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

23 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

Michael F. Schulze
Reg. #36817-048
Mailing Address:
91-189 Ewa Beach Road
Ewa Beach, HI   96706

A Pro Se Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.

MICHAEL F. SCHULZE

                Defendant.

_____/

CASE NO. 02-00090-DAE

DEFENDANT'S AMENDED PRO SE
SENTENCING MEMORANDUM;
EXHIBITS "A", "B" and "C", AND "D";
and CERTIFICATE OF SERVICE

## I.  INTRODUCTION

    **COMES NOW** the Defendant, MICHAEL F. SCHULZE ("Schulze"), pro se,
and respectfully submits this Amended Sentencing Memorandum to establish that his
current 360 month sentence violates his Fifth and Sixth Amendment rights which require
the district court to resentence him to a term of imprisonment that is consistent with
controlling authority that mandate his sentence not exceed the statutory maximum fixed
by the jury's verdict and constitutionally restricted by the mandatory requirements of the
penalty provision  pursuant to 21 U.S.C. § 841(b) (1) (D) (3), which is binding on the
instant matter.

## II. STATEMENT OF RELEVANT FACTS

### A. The Indictment(s).

Schulze, Ralph Luther Byrd ("Byrd"), and Anthony M. Tabion ("Tabion"),
were indicted on March 21, 2002, and charged under 21 U.S.C. §§ 846 and 841(a) (1);
and (b) (1) (A) - conspiracy to distribute, and possess with intent to distribute 50 grams
or more of methamphetamine (Count One). All three were arrested on April 2, 2002.

On July 11, 2002, Tabion pleaded guilty to Count One and was subsequently
sentenced by this Court to a term of **60 months'** imprisonment.

On October 3, 2002, the Indictment was superseded, charging Schulze with two
additional counts of possession with intent to distribute, but released Byrd from Count
One and charged him instead with Counts 4 through 7.

On October 29, 2002, Byrd pleaded guilty to distributing 5 and 50 grams or more
of methamphetamine to FBI Informant, Steven Olaes ("Olaes"), Counts 4, 5 and 7
(§ 841(a)(1) and (b)(1)(B)), and 6 (§ 841(a)(1) and (b)(1)(A)), and was subsequently
sentenced by this Court to a term of **51 months'** imprisonment.

On December 27, 2002, a Second Superseding Indictment charged Schulze with
**Count 1:** conspiracy to distribute, and to possess with intent to distribute 50 grams or
more of methamphetamine in violation of U.S.C. §§ 846 and 841 (a)(1) and (b)(1)(A);
**Count 2:** distribution of 5 grams or more of methamphetamine in violation of § 841 (a)(1)
and (b)(1)(B);
**Count 3:** distribution of 50 grams or more of methamphetamine in violation of
§ 841(a)(1) and (b)(1)(A).

### B.    The Trial.

During opening statements, the Government informed the jury that the allegations against Schulze involved 50 grams or more of methamphetamine,  stating, "Now you can give a special verdict form when you're deliberating to find lesser amounts, but that's – this is what we've alleged."  (RT:1-107).[1]

No drugs were seized during the nine-month-long investigation into this matter. However, a total of 101 grams of methamphetamine was obtained by Olaes and provided to FBI Agents on August 30th and October 2nd, 2001 (Counts 2 & 3, respectively).  There were no witnesses to either alleged transaction, and Olaes later admitted to deceiving the FBI and tampering with the drug evidence he provided to this case.

At trial, the Government introduced 2,458 grams of methamphetamine seized from Susan Fukumoto ("Fukumoto") and Earl Yamada ("Yamada"), in a separate case in July of 2000, and alleged it to be part of the instant offense.[2]    Though Fukumoto and Yamada are mentioned in the Second Superseding Indictment, the July seizure and the 2,458 grams of methamphetamine are not.[3]

---

[1]
    RT refers to Reporter's Transcript, followed by a volume number and page number; HT refers to Hearing Transcript, followed by the page number.

---

[2]
    Fukumoto and Yamada pleaded guilty to a one-count indictment charging conspiracy to distribute (§ 846), and to possess with intent to distribute 50 grams or more of methamphetamine (§ 841 (a)(1) and (b)(1)(A)) (CR00-00320SOM).  That case was not before this Court and is separate.  See Exhibit "A".

---

[3]
    See Second Superceding Indictment, Exhibit "B".  There were no phone records, witnesses, or physical evidence to support Yamada's story, Fukumoto declined to testify, and Yamada admitted his testimony was given in hopes of a sentence reduction  (RT:2-130).

Yamada testified that he obtained the 2,458 grams from an (un-indicted) source in Long Beach, California, then shipped it from Las Vegas, Nevada, to Fukumoto in Hawaii (RT:2-118). Yamada stated that he received a call from Schulze (while in Florida), and was informed that the source was ready for a "visit" (RT:2-117). There were no phone records, witnesses, or physical evidence to support Yamada's story; Fukumoto declined to testify; and Yamada admitted his testimony was given in hopes of a sentence reduction (RT:2-130).

Prior to jury deliberations, Schulze moved the court to submit a special verdict form that would require the jury to determine the amount of drugs specifically attributable to him, i.e., a "lesser amount". Schulze argued that a jury determination would assist the court at sentencing to establish the appropriate range of punishment, should a conviction occur.

The Government, having proposed a special verdict form in the first place, suddenly objected, stating, "Yeah, Your Honor, that's completely irrelevant to the jury because those are guideline levels of methamphetamine, where, basically, the jury's going to be asked to find whether it's going to be a level 31 or a level 32 or a level 34." (RT:7-5).

The court then denied Schulze's request, stating, "I'm not going to give that verdict form, because it is unnecessary, it doesn't create any significant benefit, whereas it presents all kinds of potential deficits ... so I am going to go with the straight up guilty or not guilty, which means they would have to find him—that he possessed at least 50 grams, and then, if he gets convicted, we will argue at sentencing about the amounts, and that's the appropriate time to do it." (RT:7-6 & 7).

Subsequently, the court instructed the jury that the Government was only required to prove that in Count One, the conspiratorial agreement involved "intent to distribute 50 grams or more of methamphetamine … Count Two, with distribution of 5 grams or more of methamphetamine ... Count Three, distribution of 50 grams or more of methamphetamine ..."  (RT:7-21 & 24).  The jury found Schulze "guilty" as to Counts 1, 2 and 3.

### C.  The Sentence.

At the September 2, 2003, sentencing hearing, the court adopted the factual findings of the Pre-sentence Investigation Report ("PSR"), and found by a preponderance of the evidence, that Schulze was responsible for Yamada's 2,548 grams; that the methamphetamine involved in this case was "ice" (at least 80% pure); and that Schulze held a leadership role in the offense.

Despite the fact that the jury was not asked to determine the drug quantity attributable to Schulze, the court stated, "The court finds, as did the jury, that Yamada testified truthfully during  trial ... the jury was convinced of his testimony and the correctness of it. And, therefore, the 2,458.2 grams of ice were in fact part of the same course, scheme, and plan of the defendant." (HT: at 8 & 9).  The court, after determining the drug quantity and type,

and adding a four-level increase for a leadership role, imposed a sentence of **360 months'** imprisonment, and a $50,000 fine.

### D.  The Appeal.

On appeal, Schulze raised a Sixth Amendment claim based on <u>Apprendi v. New Jersey,</u> 120 S.Ct. 2348, 530 U.S. 466 (2000), and <u>Blakely v. Washington,</u> 124 S.Ct. 2531,

542 U.S. 296 (2004), arguing that the district court committed an Apprendi error by imposing a sentence greater than the maximum permitted based on facts found by the jury, where "any fact (other than a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Id. 530 U.S. at 490.

Schulze submitted that the jury's verdict, though void a specific drug finding, reflected at most an amount of 105 grams of methamphetamine (55 grams for Counts 2 & 3), and 50 grams for the conspiracy if the conspiracy was based on some other activity), which, in conjunction with his criminal history category of I, prescribed a sentence of between 63 and 78 months. And even if the court applied the mandatory minimum under 21 U.S.C. § 841(b)(1)(A), the maximum sentence the court was authorized to impose is 120 months.[4]

In its response, the Government conceded, stating:

> "the District Court erred in making factual findings which increased Schulze's maximum sentence beyond that justified by the jury's verdict. At the sentencing hearing, the court made factual findings related to drug weight that went beyond the jury's findings of 50 grams or more of methamphetamine as charged in Counts 1 and 3.   The Court also found that Schulze was an organizer or leader of criminal activity   involving 5 or more persons. Based on this finding, Schulze's offense level increased by four levels." (Brief of Appellee at 9 & 10).

---

[4]
    Shortly after filing his appeal, the Supreme Court issued its decision in United States v. Booker, 125 S.Ct. 738 (2005), which held that the Sixth Amendment as construed in Blakely, applies to the Federal Sentencing Guidelines which, the Court then held created a constitutional violation when mandatorally applied.

On November 28, 2005, an appellate panel from the Ninth Circuit issued a memorandum opinion confirming Schulze's conviction and ordering a limited remand in light of <u>Booker</u> and the Ninth Circuit's related case of <u>United States v. Ameline</u>, 409 F3d 1073 (9th Cir. 2005)(en banc) (holding, inter alia, that defendants on direct review (appeal) who were sentenced under the mandatory Guidelines are entitled to a limited remand, where the record is void to show whether the district court would have imposed the same sentence had it known the Guidelines were merely advisory). Id. at 1078-79.

Despite the fact that Schulze specifically raised an <u>Apprendi</u> error on appeal, to which the Government conceded, and of which had absolutely nothing to do with <u>Booker</u> or any application of the United States Sentencing Guidelines ("U.S.S.G."), the panel, without addressing the merits of his issues raised, remanded him back to the district court without instructions.

## III. THE LIMITED REMAND PURSUANT TO <u>AMELINE</u> IS MISPLACED BECAUSE SCHULZE'S 360 MONTH SENTENCE VIOLATES HIS FIFTH AND SIXTH AMENDMENT RIGHTS WHICH REQUIRE THE DISTRICT COURT TO IMPOSE A NEW TERM THAT IS CONSISTENT WITH CONTROLLING AUTHORITY WHICH MANDATES HIS SENTENCE NOT EXCEED THE STATUTORY MAXIMUM FIXED BY THE JURY'S VERDICT AND CONSTITUTIONALLY RESTRICTED BY THE MANDATORY REQUIREMENTS OF THE PENALTY PROVISION UNDER 21 U.S.C. § 841 (b)(1)(D)(3), WHICH IS BINDING ON THIS COURT AND TO THE INSTANT MATTER.

---

### 1. The Limited Remand Pursuant To <u>Ameline</u> Is Misplaced And Schulze Must Be Resentenced According To Control Authority Established By the Supreme Court In <u>Apprendi</u> And Its Line Of Case Logic As Recognized By The Ninth Circuit In <u>United States v. Buckland</u>, infra, And Its Line Of Indistinguishable Case Logic.

The <u>Ameline</u>-based limited remand in this case under <u>Booker</u> is misplaced. The facts

and issues raised in the district and circuit court were, and are, based on <u>Apprendi</u>'s line of case

logic, which include <u>Buckland's</u> line of controlling authority that mandates a strict adherence to

the constitutional demands of due process that require a jury to determine drug quantity and

type, which form the basis for punishment under either sentencing systems.

By contrast, <u>Booker</u> and <u>Ameline</u> pertain to the U.S.S.G., and a court's imposition of a

mandatory sentence derived from its use.  Neither of these cases nor their issues were raised by

Schulze during his appeal.  And the remand was not based on a de novo or sua sponte review.

As the Ninth Circuit has been quick to point out, <u>Booker</u> does not apply to cases where

mandatory minimum sentences are at issue, because such sentences are driven by statutes and

not the U.S.S.G.  <u>See United States v. Cardenas</u>, 405 F.3d 1046, 1048 (9th Cir. 2005)(holding that

"Booker does not bear on mandatory minimums").  Similarly, <u>Ameline</u> has no bearing on the

instant matter because the issues here pertain to a jury's finding of facts beyond a reasonable

doubt, which establish the range of a **statutory** (<u>Apprendi</u> / <u>Buckland</u>) sentence application

where the Guidelines are then advised.

### 2. The District Court's Factual Findings Which Increased Schulze's Maximum Sentence Beyond That Justified By The Jury's Verdict Violates The Sixth Amendment.

A Sixth Amendment (Apprendi) error occurs when a district court imposes a sentence

greater than the maximum permitted based on facts found by a jury.  <u>United States v. Booker</u>,

125 S.Ct. 2348, 530 U.S. 466 (2000) (holding that "any fact (other than a prior conviction) that

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proven beyond a reasonable doubt."  <u>Id.</u> 530 U.S. at 490.  The "statutory maximum"

for <u>Apprendi</u> purposes is the maximum sentence a judge may impose on the basis of the facts

reflected in the jury's verdict. <u>Blakely v. Washington</u>, 124 S.Ct. 2531, 2537 (2004).

Although the jury in this case did not determine drug quantity or type, and it made no specific findings other than the general offense under Section 841(a)(1), Counts 1, 2 and 3, did allege a total of 105 grams of methamphetamine (50 grams each for Counts 1 & 3, and 5 grams for Count 2). Pursuant to the U.S.S.G Manual, 105 grams of methamphetamine corresponds to a base offense level of twenty-six. See § 201.1 (c)(7) (providing offense level for between 50 and 200 grams of methamphetamine). When combined with Schulze's criminal history category of I, this results in a sentencing range of **63 to 78** months' imprisonment.

Assuming, arguendo, that the jury had determined that Counts 1 and 3 did involve 50 grams or more of methamphetamine. This finding would trigger the application of the penalty provision of Section 841 (b)(1)(A) (providing a mandatory minimum sentence of 10 years / 120 months' imprisonment). With the total of 105 grams (per indictment), in conjunction with the mandatory application of (b)(1)(A), Schulze's sentencing range would increase from the jury's maximum of **78 months** to the mandatory minimum term of **120 months'** imprisonment, therefore making the **120** month mandatory minimum the **statutory maximum the "judge may impose on the basis of the facts reflected in the jury's verdict."** Blakely, 124 .Ct. at 2537. (emphasis added).

In addition, in a case such as this that include multiple counts of conviction, the U.S.S.G. instruct that <u>if</u> "the total punishment mandated by the guidelines exceed the highest statutory maximum," the district court must impose consecutive sentences to achieve the total punishment.

See U.S.S.G. § 5G1.2(d). [5]   Section 5G1.2(d) does not apply to this case because both the total amount alleged and/or recovered from Olaes [6] is less than the amount that would permit consecutive sentences under Section 841(b)(1)(A) because the statutory maximum term is life. Therefore, pursuant to U.S.S.G. § 2D1.1, the district court was required to group each count together to impose one sentence consistent with the jury's verdict, which authorized at most a **120 month** term of imprisonment.

The district court's finding of facts used to enhance Schulze's sentence beyond that justified by the jury's verdict, and then imposing a sentence of **360 months**, which far exceeds the **120 month** "statutory maximum" sentence permitted under Apprendi and Blakely, is plain error that clearly affected Schulze's substantial rights and violates the Sixth Amendment.

3. **The District Court's Reliance On The Preponderance Of The Evidence Standard To Enhance Schulze's Sentence Beyond The Maximum Term Justified By The Jury's Verdict Violates The Fifth Amendment's Due Process Requirement That Drug Quality And Type Be Submitted To A Jury And Proved Beyond A Reasonable Doubt.**

Prior to Apprendi (2000), Ninth Circuit precedent clearly held that drug quantity was not an element of conspiracy to distribute a controlled substance and could be proved for sentencing

---

[5]

The U.S.S.G. were mandatorily applied during Schulze's sentencing.

---

[6]

Schulze hereby submits that the 101 grams of methamphetamine is unreliable and cannot be properly assessed in the quantity determination and imputed into this matter because Olaes confessed to tampering with and hopelessly compromising this drug evidence. Tangible evidence of Schulze's alleged drug possession is admissible only when shown to be in substantially the same condition as when the crime was committed. Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960); see also United States v. Godoy, 528 F.2d 281, 283 (9th Cir. 1975)(per curiam). Here, the Government cannot show that the 101 grams are in its original state.

purposes by a preponderance of the evidence. See, e.g., United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir. 1991). The usual course in a trial was not to determine drug quantity until sentencing. A district court's procedural approach to this issue and use of the preponderance standard to determine the amount of drugs attributable to the defendant was fully in accord with controlling Ninth Circuit Law.

Enter Apprendi v. New Jersey, supra, which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. In light of Apprendi's holding, the Ninth Circuit was thus challenged to determine whether drug quantity is a fact that the government must prove beyond a reasonable doubt in connection with sentencing.

Sitting en banc in United States v. Buckland, 277 F.3d 1173 (9th Cir. 2001) (en banc) (Amended at 289 F.3d 558 (9th Cir. 2002)), the Ninth Circuit answered this and related questions in the affirmative. The court held that because the determination of drug quantity can increase the maximum penalty to which a defendant is subject, it is the type of fact that the government must prove beyond a reasonable doubt.

In examining the language of Section 841, the Ninth Circuit noted that the statute neither specified who would determine the drug quantity nor identified the appropriate burden of proof. Id. at 565. The Majority therefore held that drug type and quantity are not elements of the offense, but rather material facts that must be submitted to the jury and proved beyond a

reasonable doubt. Id. at 567.

The court stated, "we honor the intent of Congress and the requirements of due process by treating drug quantity and type, which fix the maximum sentence of a conviction, as we would any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt." Buckland, 289 F.3d at 568.

Buckland's decision established that Section 841 mandate a jury's task to be twofold - it must first determine guilt of the violation itself, i.e., the "Unlawful Acts" under § 841 (a)(1) and then determine drug quantity and type to satisfy the "Penalties" provision under §841 (b). The Ninth Circuit long recognized "that a 'penalty enhancement provision' which is not an element of the crime charged, specifically 21 U.S.C. § 841 (b) [(1) (A)], can be included in an indictment and **submitted to a jury for a decision as to the existence of the facts that make the enhancement applicable at sentencing."** Buckland, 289 F.3d at 566 (emphasis added) [7] (citing United States v. Wright, 742 F.2d 1215, 1220 (9th Cir. 1984).

---

[7]
    The indictment of Buckland alleged he possessed 1,000 grams of methamphetamine, though he was specifically charged with possession with intent to distribute 500 grams or more under § 841 (b) (1) (A). The jury was not instructed to find quantity, however, when arrested, Buckland was personally found with 749 grams - sufficient to qualify under (A). At sentencing, the judge, who, applying a preponderance of the evidence standard, determined the amount involved. The government acknowledged that the judge should have submitted the question of drug quantity to the jury for a finding beyond a reasonable doubt. Id. at 562-63.

Section 841 (b) (1) (A), which provides for increased punishment for quantities of methamphetamine exceeding 50 grams is clearly labeled a "Penalties" provision, as distinguished from the "Unlawful Acts" prohibited by Section 841 (a) (making unlawful possession with intent to distribute). <u>Buckland</u>, 289 F.3d at 566 and 573 (Hug, Circuit Judge, Concurring and Dissenting).

Although (b) (1) (A) was included in the indictment of the instant matter, the jury did not make a "decision as to the existence" of any drug amount, and consequently the "Penalties" requirement was not satisfied to justify a sentencing enhancement beyond the range established by the jury's verdict, which, only demonstrate that Schulze was properly convicted of the general offense under 21 U.S.C § 841 (a) (1), and nothing more.

"The Fifth Amendment requires proof beyond a reasonable doubt, not by preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant." <u>Booker</u>, 125 S.Ct. at 749 n.6 (Thomas, J., dissenting). And <u>Buckland</u> mandates that drug quantity and type are precisely the "material facts that must be submitted to the jury and proven beyond a reasonable doubt." <u>Id</u>. at 567.

The district court's disallowance of Schulze's request to require the jury to determine drug quantity, i.e., finding for a "lesser amount" attributable to him was clear error and demonstrably harmful. What is worse, the court then enhanced Schulze's sentence based on a quantity not found by the jury beyond a reasonable doubt, but by using the same preponderance standard that <u>Buckland</u> ruled out almost two years prior to Schulze's sentencing hearing.

These errors seriously affected Schulze's substantial rights, and they interfered with the fairness and integrity of the judicial proceedings in this case. Especially in light of the fact that

_Apprendi_ and _Buckland_ were well established long before these errors took place.

**4.  Failure To Elicit A Finding From The Jury Regarding Drug Quantity Cannot Be Corrected By A Drug Quantity Determination On Remand.**

Where a drug quantity finding exposes the defendant to a higher statutory maximum than he would otherwise face, the findings must be made by the jury beyond a reasonable doubt. _United States v. Banuelos_, 322 F.3d 700, 702 (9th Cir. 2003).[8]    When an "Apprendi error" occurs, the Ninth Circuit is "required to remand the case with instructions to the district court to re-sentence [the defendant] 'subject to the maximum sentence supported by the facts found by the [jury] beyond a reasonable doubt.'" _Banuelos_, at 706 (quoting _United States v. Nordby_, 225 F.3d 1053, 1062 (explaining that a court may not order a retrial of a conviction that is final); _see also_ 18 U.S.C. § 3742 (f) (stating that, "If the court of appeals determines that - (1) the sentence was imposed in violation of law [_Apprendi_ error], the court shall remand the case for further sentencing proceedings with instructions as the court considers appropriate...." 18 U.S.C. § 3742 (f) (1); and _United States v. Velasco-Heredia_, 319 F.3d 1080 (9th Cir. 2003).

In _Velasco-Heredia_, the defendant was remanded for re-sentencing pursuant to § 841 (b) (1) (D) when drug (marijuana) quantity attributable to him was not proven beyond a reasonable doubt.  The court held that _Apprendi_ error occurred when the trial court used preponderance of the evidence standard at sentencing to determine drug quantity attributable to the defendant. _Valasco-Heredia_, 319 F.3d at 1085.

On appeal, Schulze proved that an _Apprendi_ error occurred, where the "trial court used

---

[8]
In _Banuelos_, the Ninth Circuit remanded for a 5-year sentence pursuant to § 841 (b) (1) (D) because no drug (marijuana) quantity had been made.  The court held that a "defendant in a conspiracy involving drugs... the government has the burden to prove not only the amount of drugs involved in the conspiracy, but also the amount of drugs specifically attributable to him." _Id._ at 707.

preponderance of the evidence standard at sentencing to determine drug quantity attributable to

[him]."  And the Government agreed, stating that,

> "the District Court erred in making factual findings
> which increased Schulze's maximum sentence beyond
> that justified by the jury's verdict.  At the sentencing
> hearing, the district court made factual findings
> related to drug weight that went beyond the jury's
> finding of 50 grams or more of methamphetamine as
> charged in Counts 1 and 3." (Brief of Appellee, at
> 9 & 10).

Accordingly, because an Apprendi error did in fact occur, on remand, the district court

is required to impose a sentence which is subject to the maximum term supported by the facts

found by the jury beyond a reasonable doubt.  And upon re-sentencing Schulze, the court may

not "empanel a jury to determine drug quantity beyond a reasonable doubt ... the failure to elicit

an admission from the defendant [or jury] regarding drug quantity could not be corrected by a

drug quantity determination on remand."  United States v. Thomas 355 F.3d 1191, 1201-02 (9[th]

Cir. 2004).

In Thomas, the defendant plead guilty to the allegations in the indictment that he

possessed more than 50 grams of cocaine base (§ 841 (b) (1) (A)), but did not specify to any

amount and requested to have drug quantity determined by a jury.  Id. 355 F.3d at 1194.  The

district court denied the request and relied on its own belief that Thomas' guilty plea

encompassed the quantity allegation in the indictment, and finding that he possessed more than

50 grams of cocaine base, sentenced him to 120 months' pursuant to § 841 (b) (1) (A).  Id. at

1200-01.[9]

---

[9]
When arrested, Thomas possessed 77.86 grams of cocaine base.  Pursuant to U.S.S.G.,
this amount, Offense Level 32, prescribes a term of 121-151 months' imprisonment.

Thomas appealed, and the Ninth Circuit held that an <u>Apprendi</u> and <u>Buckland</u> error had occurred, stating, "Thomas admitted beyond a reasonable doubt that he knowingly possessed cocaine base with an intent to distribute. He did not, however admit to possessing any specific quantity, nor did he knowingly waive his right under <u>Apprendi</u> and <u>Buckland</u> to have a jury determine quantity beyond a reasonable doubt. Absent a waiver of Thomas' right to a jury determination, the district judge cannot determine any particular drug quantity that would affect the maximum statutory sentence to which Thomas is exposed." <u>Thomas</u>, 355 F.3d at 1202. Consequently, Thomas was remanded with instructions to be re-sentenced under the default provision of § 841 (b) (1) (C).

Here, as in <u>Thomas</u>, Schulze did not waive his right to a jury determination, and like Thomas, requested the court to allow a jury determination, to which the court denied. Both cases involved a conviction of the general offense under § 841 (a) (1), and both were alleged to possess 50 grams or more of a controlled substance, exposing each to a ten-year mandatory minimum under § 841 (b) (1) (A). Save for the fact that drug type was established through Thomas' admission, the instant case is indistinguishable from <u>Thomas</u>. Therefore, on remand, the district judge may not "empanel a jury to determine drug quantity", nor can he "determine any particular drug quantity that would affect the statutory maximum sentence to which [Schulze] is exposed." <u>Thomas</u>, 355 F.3d at 1202.

### 5. <u>Buckland's</u> Line Of Case Logic Is Not Disturbed By <u>Booker</u> And Is Controlling In The Instant Matter.

The Ninth Circuit's <u>Buckland</u> holding was recently challenged in <u>United States v. Ching Tang Lo</u>, 2006 U.S. App LX 12257 (9th Cir. May 2006). In Lo, the Defendant argued that <u>Booker</u> "overruled" <u>Buckland</u>, "and that it was therefore error for him to be subject to the mandatory minimum sentence contained in 21 U.S.C. § 841(b)." <u>Id.</u> at _____. The Ninth

Circuit "rejected this argument and [held] that Lo is subject to those mandatory minimum sentences." Id. at ____.   The court stated that Booker does not change the fact that the "penalty provision in Section 841(b) is constitutional, therefore, Lo is subject to the mandatory minimum for terms of imprisonment and supervised release contained in Section 841(b)." Id. at ____.

Accordingly, because the facts of this case fall squarely on the precedent established in Apprendi and Blakely, which form the basis of Buckland's holding, the district court is therefore bound by these controlling authorities to impose a new sentence consistent with the mandatory minimum term of imprisonment proscribed by the jury's verdict which established that:

> Schulze was properly convicted of the general offense set forth in §§ 841 (a) (1) and 846 - the offense charged in Count One that encompasses Counts Two and Three (charged as overt acts in furtherance of the conspiracy) and the only offense for which there is a basis for conviction.

**6. The General Offense Committed By Schulze, As Set Forth In §§ 841 (a) (1) And 846, Does Not Involve 5 Or 50 Grams Or More Of Methamphetamine As Alleged In Counts 1, 2 And 3 Of The Second Superceding Indictment Because The Jury's Verdict Does Not Establish Beyond A Reasonable Doubt That A Specific Quantity Or Controlled Substance Exists; Therefore, Schulze's Sentence is Constitutionally Restricted To The Statutory Maximum Term Of One Year Imprisonment (Per Count If Not "grouped" Under U.S.S.G. § Section 2D1.1) Pursuant To The Default Penalty Provision Of 21 U.S.C. § 841 (b) (1) (D) (3).**

**a. Section 841 (a) (1), The Prohibited (Unlawful) Acts.**

The only factual determination made by the jury in this case is that Schulze conspired to "knowingly or intentionally - distribute, a controlled substance;" 21 U.S.C. § 841 (a) (1). The jury **did not** find beyond a reasonable doubt that the general offense involved a specific quantity of controlled substance, **nor did** it find that the controlled substance alleged was methamphetamine. These are facts that the Government **alleged,** but **not** facts that the jury had found beyond a reasonable doubt, which, Buckland demands be "submitted to a jury

for a decision as to the existence of the facts that make the enhancement applicable at

sentencing." Buckland, 289 F.3d at 566. Without a jury's finding of these essential facts, no

such enhancements may be applied to the general offense under § 841 (a) (1) in which Schulze

was convicted.

**b. Section 841 (b), Penalties.**

The penalty provision under 21 U.S.C. § 841 (b) provides six (6) categories that

prescribe various terms of imprisonment. Subsections (1) (A), (B) and (C) pertain to

Schedule I and II controlled substances, and prescribe ranges from: 10 years to life under (A); 5

to 40 years under (B); and 0 to 20 years under (C).

Subsection (1) (D) itself has three categories, subpart (D) provides: "in a case of any

controlled substance in Schedule III ...   such person shall be sentenced to a term of

imprisonment not more than 5 years"; subpart (D) (2) pertains to Schedule IV controlled

substances, providing a term of imprisonment of "not more than 3 years"; and finally (D) (3),

which pertains to Schedule V controlled substances and mandates a term of imprisonment of

"not more than **one year**," (emphasis added). 21 U.S.C. § 841 (b) (1) (D) (3), Exhibit "C".

As is evident, each controlled substance schedule mandates a specific category which

governs the applicable penalty provision under § 841 (b). The scheduling of a controlled

substance is therefore a factor that can also enhance a statutory sentence. Under Apprendi and

Buckland, "any fact that increases the penalty for crime ...  must be submitted to a jury and

proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490; and Buckland, 289 F.3d at 562.

Accordingly, when an indictment alleges a drug to be a specific controlled substance, the

Government is required to prove this fact to the jury beyond a reasonable doubt, because the

scheduling has the potential to enhance a sentence. Especially in light of the fact that a

Schedule II controlled substance mandates a statutory maximum sentence of life, whereas a Schedule III mandates a maximum of 5 years, and, where the same United States Code in which the indictment, conviction, and sentence in this case and is based upon specifically states that methamphetamine is Schedule III controlled substance.  See Title 21 U.S.C § 812 (2006), Exhibit "D".

Buckland defined that before a statutory sentencing range can be properly established, drug quantity and type must first be determined to exist (id. at 566).  In a conspiracy case where drug type has been determined but not quality, "Congress requires that [the defendant] be sentenced under subsection (D), which [   ] has no mandatory minimum sentence based on quantity, just a range of zero to five years".  Velasco-Heredia, 319 F.3d at 1080.

Albeit Velasco-Heredia and Banuelos primarily involve the drug marijuana,[10]   Banuelos did also admit beyond a reasonable doubt, that he conspired to possess and distribute (one pound) of **methamphetamine** to an undercover agent (i.e.,  he unequivocally possessed 448 grams), but maintained he was entrapped to sell the methamphetamine.  Consequently, the Ninth Circuit determined that it had not been established beyond a reasonable doubt that Banuelos conspired to distribute **methamphetamine**, stating, "the only crime to which Banuelos admitted guilt beyond a reasonable doubt was conspiracy to distribute an unspecified amount of marijuana."  Banuelos, at 707.

Here, as in Banuelos, "conspiracy to distribute **methamphetamine** never attained this status" because "it had not been established beyond a reasonable doubt that [Schulze] conspired to distribute **methamphetamine**".  Banuelos, at 707 (emphasis added).    And this fact has a

---

[10]
     Marijuana is classified under 21 U.S.A. § 812 (2006) as a schedule I controlled substance.  See Schedule 1 (c) (10).

stronger force in the instant matter because Schulze never admitted to a single element or fact

alleged by the Government, and the jury never made any such findings.  Consequently, Schulze

must be re-sentenced under the default provision of § 841 (b) (1) (D) (as was Banuelos), because

conspiracy to distribute **methamphetamine** was not determined beyond a reasonable doubt.  See

Banuelos, 322 F.3d at 707.

    With respect to Thomas' remand for re-sentencing under § 841 (b) (1) (C),  though drug

quantity had not been proven, Thomas "admitted beyond a reasonable doubt that he

knowingly possessed cocaine base with an intent to distribute." Thomas, 355 F.3d at 1202.
[11]
Consequently, drug type was determined beyond a reasonable doubt.

    It is important to note that when Thomas was arrested he actually possessed 77.86 grams

of cocaine base - significantly enough to satisfy the threshold amount of 50 grams to trigger

the application of the penalty provision of § 841 (b) (1) (A), which, mandate a minimum of 120

months' imprisonment, of which Thomas originally received.  Also, the amount Thomas

possessed quantified a base offense level of 32 (See U.S.S.G. 2D.1.(4)  (providing for 50 to 150

grams of cocaine base),  which prescribes a term of imprisonment of 121 to 151 months.  This

(then-mandatory) guideline range was consistent  with the sentence imposed.

    However, despite these facts in Thomas, the Ninth Circuit remanded for the simple fact

**that a quantity had not been established to justify the imposition of a sentence**

**under § 841 (b) (1) (A), because 50 grams of a Schedule II controlled substance was not**

---

[11]
    Cocaine, or any compound, mixture, or preparation which contains cocaine is a Schedule
II controlled substance.  See 21 U.S.C. § 812 (2006) Exhibit "o". Under § 841 (b), (1) (A), (B)
and (C) apply exclusively to cases where the general offense under § 841 (a) (1) involve a
Schedule II controlled substance.  See Exhibit "C".

**determined to exist beyond a reasonable doubt**. Id. at 1202. And because cocaine is a Schedule II controlled substance, (21 U.S.C. § 812), the lowest default penalty provision applicable to Thomas under § 841 (b) is (1) (C), which is the reason why Thomas was remanded under (C) and not (D).

In comparing Buckland, Velasco-Heredia, Banuelos, and Thomas, to the instant matter, the one most significant fact that forces Schulze to stand alone is that **drug type**, i.e., the controlled substance, **was never established beyond a reasonable doubt.** Not by the jury, and not through an admission by Schulze. In contrast, each defendant in these controlling cases admitted to a specific drug type. See Buckland at 581, Velasco-Heredia at 1085, Banuelos at 704, and Thomas at 1194. Consequently, drug type was not in dispute (as is here), and the subparts of § 841 (b) (1) were appropriately applied.

Because drug quantity and type were never proven in this case, the subparts of § 841 (b) cannot be distinguished and legally applied to establish the appropriate range of punishment. And there is nothing in the way of case law or our judicial system that would allow anyone to determine these facts following the trial. Especially in the light of the truth that when the moment was ripe for asking, Schulze moved the court to allow the jury to decide these Buckland factors, which not only would have satisfied the penalty provision requirements under § 841 (b), it would have justified any sentencing enhancements the court may have chosen to apply had a conviction occurred, but the court denied this request.

What is more, the Government's sudden withdrawal and fierce opposition to its own proposed special verdict form is proof positive that it realized what Schulze knew: The jury did not buy into the tall tales given by those who testified on behalf of the Government, and, felt that the 101 grams of methamphetamine provided by Olaes was unreliable.

While this fact is clear, what is more troublesome is the seemingly bias actions of the court, who, at sentencing stated that the jury had made these specific findings **despite the fact that they were never asked.**[12] "It is fundamental that an appellate court (and for that matter, a trial court) is not free to decide in a criminal case that if asked, a jury would have found something it did not find." Pope v. Illinois, 481 U.S. 497, 501-11 (1987) (citing Jackson v. Virginia, 443 U.S. 307, 320, n.14 (1979).

In essence, the court hypothesized that the jury believed Yamada's testimony, yet nothing in the record indicates this. "To hypothesize a [special] verdict that was never in fact rendered - no matter how inescapable the findings to support the verdict might be - would violate the jury trial guarantee." Sullivan v. Louisana, 508 U.S. 275, 280 (1993). A judge, whether district or circuit, "cannot reasonably conclude that these issues can be answered fairly based on reason and the record presented. When quantity [and type] is neither alleged in the indictment nor proven to the verdict in criminal prosecutions belongs exclusively to the jury." Neder v. United States, the jury beyond a reasonable doubt, there are too many unknowns to be able to say with any confidence, let alone beyond a reasonable doubt, that the error [would be] harmless. What evidence might have been [offered] by [Schulze], in a defensive effort to minimize quantity [or disprove purity], if the indictment had properly charged quantity [and type] involved in the offense, is entirely **speculative**." United States v Jordan, 291 F.3d 1091, 1096-97 (9th Cir. 2002) (Emphasis added).

---

12
    While the special verdict form request pertained specifically to a quantity finding, the amount determined by the jury would have also established whether it found certain testimony and evidence reliable. For example, had the jury found the offense involved less than 150 grams, this would prove it did not believe Yamada's testimony

In addressing **speculation**, the Supreme Court held that, "The difference between speculation directed towards confirming the jury's verdict (Sullivan) and speculation directed towards making a judgement that the jury has never made is more than semantic ... It is this sort of allocation of decision making power that the sullivan standard protects. The right to render 538U.S. 1, 38-39 (1999) (citing <u>Sullivan</u>, 508 U.S. 275 (1993). "The judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury." <u>Appendi</u>, 530 U.S. at 483, n.10.

When a jury returns a complete verdict on the crime charged (§ 841 (a) (1)), but does not make any additional findings as to **drug quantity** and **type** (<u>Buckland</u>'s required facts), "the jury has not found all the facts 'which the law makes essential to the punishment,'" <u>Blakely</u>, 542 U.S. at 413-14. Accordingly, when drug quantity and type are in truth the essential facts necessary to establish punishment pursuant to § 841 (b), but have not been determined by the jury, the law does not allow the punishment to exceed that in which is applicable for a conviction for the general offense charged under 21 U.S.C. § 841 (a) (1).

Consequently, where the violation (itself) of possessing and intending to distribute a **controlled substance** has been determined beyond a reasonable doubt, but the **controlled substance** (itself) has not, the Rule of lenity requires the defendant to receive the benefit of the doubt, and the sentencing court must impose the lesser of the penalties provided by the statute of which he stands convicted of. See <u>United States v. Ramirez</u> , 347 F.3d 792, 799-800 (9th Cir. 2003); see also <u>United States v. Bass</u> 404 U.S. 336, 337-48 (1971); <u>Huddleston v. United States</u>, 415 U.S. 831 (1974); <u>United States v. Oritz</u> , 143 F.3d 728, 729 n.1, 730-31 (2nd Cir. 1998); <u>United States v. Sanders</u>, 162 F.3d 396, 403 (6th Cir. 1998); <u>United States v. Pharis</u>, 176 F.3d 434, 437 (8th Cir. 1999); <u>United States v. Fuentes-Barahona</u>, 111 F.3d 651, 654 (9th Cir. 1997);

United States v. Gay, 240 F.3d 1222 (10th Cir. 2001); and United States v. Lazo-Ortiz, 136 F.3d

1282, 1286 (11th Cir. 1998).   "The rule of lenity favors the statutory construction that yields the

shorter sentence." United States v. R.L.C., 915 F.2d 320, 325, (8th Cir. 1990)

(citing Ladner v.United States, 358 U.S. 169, 178, (1958), aff'd, 503 U.S. 291 (1992)).

In the case at bar, uncertain terms certainly do exist.  For one, **drug quantity** is

uncertain; two, **drug type** is uncertain; and three, the **scheduling** of the controlled substance is

uncertain.  The only fact that does remain certain is the truth established in the jury's verdict

which found Schulze "guilty" of conspiring (§ 846) to knowingly and intentionally possessing

and distributing a "**controlled substance**", in violation of  21 U.S.C. § 841 (a) (1), and under the

"Penalties" Section of  841 (b), the "lesser" punishment provided by this statute for an

unspecified amount of an unspecified controlled substance, is the application of subpart (D) (3),

**Therefore, Schulze "shall be sentenced to a term of imprisonment of not more than one**

**year,"** 21 U.S.C. § 841 (b) (1) (D) (3).


      **7.  Schulze was nott An Organizer Or Leader Of The Instant Offense, And**
          **The Alleged Conspiracy Did Not Involve 5 Or More Participants, Nor**
          **Was It Otherwise Extensive.**

In order for a district court to enhance a sentence for a leadership role under U.S.S.G.

§ 3B1.1 (a), the court must make a two-part finding that (1) Schulze was "an organizer or

leader of criminal activity", and  (2) that the activity (conspiracy) "involved five or more

participants or was otherwise extensive."   The factors to be considered when determining

whether Schulze was an organizer or leader include: the exercise of decision-making authority,

the nature of participation in the commission of the conspiracy, the recruitment of accomplices,

the claimed right to a larger share of the fruits of the crime, and the degree of control and

authority exercised over others.  See U.S.S.G. § 3B1.1 cmt. n.4 (2000); United States v. Jordan,

291 F.3d 1091, 1097 (9th Cir. 2002).

The facts presented in this case do not support an enhancement for a leadership role
under § 3B1.1(a). [13]    To the contrary, they prove mitigation.

**a. The Exercise of Decision-Making Authority.**

The only testimony in relation to this subject came from Yamada, where he claimed, "I

called Mike [Schulze] and told him that [the] drug was substandard and got okayed to dump it at

a lower cost."  (RT:2-115).  And while Yamada stated he knew Schulze "to have maybe two

phone numbers the whole time I knew him" (RT:2-110), there were no phone records, witnesses

or evidence to support Yamada's claim.  The record fails to prove Schulze, or anyone for that

matter, exercised authority.

**b. The Nature of Participation.**

For this, Yamada steals the spotlight.  The trial record shows that Yamada's participation

was, in all aspects, very significant.  Testifying that he: made regular trips to Los Angeles

(2-96), to meet with his source "Gus and his brother" (2-97), "picked up the dope" (2-98),

brought it back to Las Vegas, packaged it and shipped it to Hawaii (2-101), then flew to Hawaii,

---

13
    Schulze hereby submits under Blakely, that when the Government seeks a leadership role
enhancement, pursuant to § 3B1.1(a) it must be required to allege this fact in the indictment
(thereby giving a defendant warning and allowing him opportunity to disprove); the indictment
must name at lease five persons or allege how it is otherwise extensive; and this fact must be
submitted to a jury and proven beyond a reasonable doubt.  A defendant has a constitutional right
to be given notice of the charges against him, and while being a leader itself is not a crime, when
it is applied to enhance a sentence, it then becomes a crime.  Consequently, this post-trial charge
cannot be quantitatively assessed "in the context of other evidence presented" (Sullivan, 508
U.S, at 281), and therefore violates the Sixth Amendment. See Blakely, 124 S.Ct. at 2542.

picked up the drug, distributed it to "Ralph Byrd", a "dealer on the street in Ewa Beach"
(2-105), collected the money (2-106), flew back to Los Angeles to pay his source (2-107), then
flew home to Las Vegas and waited to "meet up with Mike" (2-108).    Yamada did it all himself.

### c. The Recruitment of Accomplices.

The only evidence of recruitment is in Yamada's case where, stating he entered the
"methamphetamine business" on his own (2-151), he began shipping "the dope via Fed Ex to
"Wahiawa Animal Hospital, which is where [his] girlfriend was working at the time." (2-104).
Susan Fukumoto was Yamada's "co-defendant", the "only other person charged with him"
(2-91).  When not in Hawaii, Yamada would have Fukumoto make "deliveries" for him (1-113). [14]

### d. The Claimed Rights to a Larger Share.

Though Schulze was the only defendant from whom the government maintained assets
and cash, the evidence does not support that any particular person received a larger share of
anything. This issue is further tainted by the Government's use at trial of manufactured
spreadsheets and summary charts that  were based on worksheets fabricated by the FBI, which
were desiged to show significantly higher income compared to tax records, in an attempt to
demonstrate  Schulze "possessed unexplainable wealth" (1-124 & 6-70).  The cash taken from
Schulze's residence was proceeds from a documented construction loan (of which the
Government knew), and a number of seized items did in fact belong to other persons (6-145,

---

[14]

It is important  to note that Fukumoto declined to testify in support of the government's
position; her statements are not in evidence; and the recorded conversations relied on at trial
make no mention of her name.  In addition, Fukumoto's 48-month sentence compared to
Yamada's 135 term is sufficient evidence to prove Yamada had authority over Fukumoto, and
recruited her as well.

146, & 2-135), or were purchased years before the purported conspiracy was alleged to have
                    15
begun, i.e., 1997.

In addition, a legitimate comparison cannot be properly performed in determining which

participant might have claimed a right to a larger share,  because no effort was made to obtain

items from the other co-defendants.  It cannot be assumed that because Schulze was the

only person from whom assets were seized, that he claimed more share than the others.  Also:

1)  Schulze had a legitimate source of income (6-98, 107, 108);

2)  Tax evasion and money laundering were not charged;

3)  Credit reports in discovery show Schulze with a history of debt;

4)  Yamada testified that Schulze "didn't have money" (2-113);

5)  Byrd testified that Schulze "Always had financial problems" (5-50), and on

occasion "loaned" him  money (5-53).

6)  No firearms or weapons were used or possessed in this case.

**e. The Degree of Control and Authority Exercised Over the Others.**

In addressing this issue, the evidence in this case fails to establish that any particular

person controlled, or had authority over others.  The record does reflect that **Byrd** was "not part

of the conspiracy", but rather a "hand-to-hand" dealer (5-31),  Donald **Grimm** testified to

_____

15
     Yamada testified that Schulze bought a "brand new" pickup truck and boat in 1995
(RT:2-136).  Both items were listed in the indictment(s) as assets subject to forfeiture.  The boat
was seized and forfeited nevertheless.  The truck, however, was never seized because it was
purchased in 1999 by Alan Banks and financed through Bank of America.  The Government
knew this but did not inform the court at sentencing when it imposed a $50,000 fine and ordered
the truck sold to satisfy part of the fine.  Consequently, Schulze cannot pay the $20,000 balance
and motioned the court in June, 2005, to modify the fine (Docket 235-pending).

"assisting" Schulze (2-37), **Tabion** would simply receive packages at his shop from time-to-time

(5-112 –118), and **Yamada** testified that he "took care of all the aspects of Hawaii" (2-106) and

that Schulze was "not really [the] boss" (2-106).

 Having leadership qualities, such as a strong personality, does not itself prove

Schulze exercised them to support the underlining criminal conduct. United States v. Hoac, 990

F.2d 1099. 1111 (9th Cir. 1993). And merely speculative logic cannot displace the need for

evidence on such an issue which cannot be decided assumption or interference based on fact.

United States v. Jordan, 291 F. 3d 1091, 1099 (9th Cir. 2002).

 For reasons stated above, a leadership role is simply not applicable in the instant matter.

The evidence bears no support to qualify for an enhancement, therefore, the court should forego

the consideration.

  **8. The Sentencing Guidelines Are Not Applicable In This Case, And Even If So, Cannot Disturb The Statutory Maximum Term Of Imprisonment Fixed By The Jury's Verdict As Established In Part 6 Of This Memorandum, Or, If Applied, Would Be Limited By The Sentencing Factors Constrained Through Buckland's Drug Quantity Requirement That Forces § 2D1.1(14) To Apply.**

 Because Blakely does not permit a court to enhance a sentence beyond the "statutory

maximum" fixed by the jury's verdict (id. 124 S.Ct. At 2537), which under the position

established in part 6 of this Memorandum, is a term of **one year** (pursuant to  841 (b) (1) (D)

(3)), the Guidelines may not be applied because any enhancement would exceed the one year

"statutory maximum" sentence. However, assuming Schulze's position in part 6 is unavailing

and fails to persuade the court to adopt the application of (D) (3) to this matter, the court would

still be bound by the stare decisis established in Jordan at 1097, Velasco-Heredia at 1087,

Banuelos at 707, and Thomas at 1202, that mandate resentencing for an "unspecified amount"

under the default provision of (C) or (D), depending on the controlled substance admitted to or found by the jury.

And while Schulze maintains that subpart (D) must apply here because drug type was never found by the jury, assume then that methamphetamine was determined as the drug, and that it is a Schedule II controlled substance.   Under these facts, subpart (C) of § 841 (b) (1) would apply, and the open range for punishment would be from zero to twenty years imprisonment.  See 21 U.S.C. § 841 (b) (1) (C). Exhibit "C".

Enter now the Guidelines.  And although Booker made them effectively "advisory", the Ninth Circuit still  requires a sentencing court to utilize the Guidelines when applicable in determining a "starting point" for calculating a sentence.  See United States v. Cantrell, 433 F.3d 1269, 1280 (9th Cir. 2006).  The court recognized that after establishing the starting point, "if nothing appears that would suggest movement beyond that point, it also becomes the finishing Point."  United States v. Zavala, 433 F, 3d 1165, _____ (9th Cir. 2006).  Here, because drug quantity was never determined, the starting point for an "unspecified amount" of methamphetamine is a Base Offense Level 12.  See U.S.S.G. § 2D1.1 (14)  ("Less than 2.5 G of Methamphetamine, or less than 250 MG of Methamphetamine (actual), or less than 250 MG of "Ice").   When combined with Schulze's Criminal History Category of I, this results in a sentencing range of 10 to 16 months' imprisonment, which falls well within the open range under the penalty provision of  § 841 (b) (1) (C).  This, therefore, becomes the "starting point" in determining the appropriate Sentence.    See Ameline, 376 F.3d 967, 976 (9th Cir. 2004).

Now in the previous sentence imposed, the court enhanced Schulze's sentence based on these three factors;  **drug quantity** (finding Schulze responsible for Yamada's 2,458 grams), **drug type** (finding that the drug involved was "ice" rather than the methamphetamine charged),

16

and **leadership** (finding that Schulze was a leader or Organizer).

Because **drug type** and **quantity** are sentencing factors that <u>Buckland</u> required be determined by the jury beyond a reasonable doubt (a fact that did not occur in this case), Schulze may not, therefore, receive any enhancement based on these two factors. With respect to the **leadership** role, as Schulze articulates above, the facts in this case do not excite or justify the consideration.

Consequently, after eliminating these three factors from consideration, and "nothing appears that would suggest movement", **level 12**, therefore "becomes the finishing point", and the 16-month term becomes the **statutory maximum** sentence Schulze may receive based on the facts reflected in the jury's verdict. <u>See Apprendi</u>, 530 U.S. At 466; <u>Blakely</u>, 124 S.Ct. at 2537. And even if the court were to find the facts necessary to apply a leadership role enhancement pursuant to § 3B1.1(a), a four-level upward adjustment to the offense level of twelve would increase to sixteen and expose Schulze to a sentencing range of 21 to 27 months' imprisonment, significantly less that the period of time for which he has already served.

On the other hand, in calculating a Guideline sentence based on the 101-gram quantity recovered from this case. Pursuant to §§ 3D1.1(a) (3) and 3D1.2 (d), the court shall combine and group the offenses together and apply one sentence in accordance with §§ 3D1.3 (b) and 3D1.5. The combined offense level for drug offenses is determined by the total quantity of drugs, using the Drug Quantity Table § 2D1.1 (c) (Unlawful Trafficking)).

---

16 _____ While the court believed that others were involved in the same conspiracy (§3B1.1(a)); and Yamada's 2.458 grams was "in fact" part of that conspiracy, Schulze was the only person in the case to receive a twelve-level increase for Yamada's methamphetamine. Pursuant to 18 U.S.C. 3553 (a) (6), a court must "avoid unwarranted sentence disparities among defendants ... who have been found guilty of [the same] conduct." In this case, Tabion and Schulze were both convicted of the **same conduct**; both had no prior convictions, yet Tabion received a 60 month sentence while Schulze received a 360 month sentence - **25 years more than Tabion**.

In this case, the first count (conspiracy) does not involve any amount of drug; the second count (48 grams); and the third count (53 grams) totals 101 g of methamphetamine. Pursuant to § 2D1.1 (c), the combined offense level for the drug offense is **26.** With a criminal History Category of I, this results in a range of **63 to 68** months imprisonment. And pursuant to § 5C1.1 (f), because this range is within Zone D of the Drug Quantity Table, the minimum term prescribed **(63 months)** is sufficient to satisfy the punishment imposed, and, when applying this prescribed Guideline range to the penalty provision under 21 U.S.C. § 841 (b) (1) (C), the **Total Punishment** Schulze should receive is a term of **63 months' imprisonment**.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## IV.  Conclusion

Based on the foregoing, and, considering the fact that Schulze has thus far served 62 months in prison, whereas co-defendants Byrd and Tabion served 27 and 34* months at a prison camp (for the same offense charged), and, taking into account that this is his only conviction in 40 years, and that he will be deported following this sentence, Schulze respectfully prays this Honorable Court impose a **time-served sentence of 62 months; modify the 50,000 fine imposed to $30,000;** invoke jurisdiction pursuant to 8 U.S.C. § 1329; and Order Schulze to immediate deportation pursuant to § § 1252 and 1101 (a) (43) (B), as this would be both a compassionate and economically recognized decision.

DATED:  October 18, 2006, at Honolulu, Hawaii

Respectfully submitted,

Michael F. Schulze
Defendant in pro se

---

* Schulze's 62 month calculation includes good-time credit (see attachment).

Note:  Byrd was released from camp in July of 2005.  Tabion chose to self-surrender on 8/02/04, and is scheduled for release from camp in June of 2007.

MONTHS' IMPRISONMENT SERVED

**Arrest:** April 2, 2002  12
             2003  24  1 year
             2004  36  2 years
             2005  48  3 years
      April 2, 2006    **4 years**

                  **48 months**
1  May             49
2  June           50
3  July           51
4  August       52
5  September   53
6  October      54
7  November 2, 2006 - 55

            **55 months in actual custody** (4 years and 7 months)

**Good-Time Credit earned is 7 months and 6 days.***

The total term of imprisonment served is:**55 months**
55 months including good-time credits of: **7 months and 6 days**
**Total period including good-time credit: 62 months and 6 days imprisonment**

---

    *    Good-Time credits are based on the provisions under 28 C.F.R. § 523.20 and 28 U.S.C. § 3624(b).  Although subsection (a)(1) specifically states that 54 days of good-conduct time shall be awarded per year, the Bureau of Prisons only awards 47 days per year under its own calculating system.

        47 days per year
    X   4 years
    = **188 days** good-time credit for the first four years

        47 days per year is approximately 4 days per month
         4 days per month times 7 months is **28 days**
        28 days plus 188 is **216 days**
      216 divided by 30-day months is **7 months and 6 days**
    **Total Good-Time credit is: 7 months and 6 days.**