IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. MICHAEL F. SCHULZE, Defendant. | ) | CR.NO. 02-00090-DAE MEMORANDUM OF LAW |

MEMORANDUM OF LAW

**I. BACKGROUND**

On February 11, 2003, Schulze was found guilty by a jury of conspiring to possess and distribute a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(1), (Count 1); and distributing a controlled substance to Steven Olaes on August 30th and October 2nd, 2001, in violation of 21 U.S.C. § 841(a)(1), (Counts 2 and 3, respectively). The Indictment alleged that Schulze distributed 5 grams or more of methamphetamine in Count 2 (§ 841(b)(1)(B), and 50 grams or more of methamphetamine in Count 3 (§ 841(b)(1)(A).

The total amount of methamphetamine alleged in the instant offense is 55 grams "because Counts 2 and 3 charge the substantive offenses that were the sole object of the conspiracy charged in Count 1." (Presentence Report, ¶45). At trial, the total amount of methamphetamine produce by the Government as a result of the investigation into the instant offense was 101 grams, however, the Government also introduced 2,458 grams of methamphetamine that was seized in a separate criminal case (No. 00-00320-SOM) and witness, Earl Yamada, who testified that the quantity seized in his case was provided by Schulze.

Prior to jury deliberations SChulze moved the Court to allow a special verdict form requiring the jury to determine drug quantity attributable to

him. The Government objected and the Court denied the motion.

On September 2, 2003, the Court adopted the findings provided in the Presentence Report that concluded Schulze's Base Offense Level was 42, and with a criminal history category of I, imposed a sentence of **360** months' imprisonment pursuant to the mandatory U.S. Sentencing Guidelines.

On September 23, 2003, Ralph Byrd, a co-defendant of Schulze who was also convicted of distributing 5 and 50 grams of methamphetamine to Steven Olaes, but on 4 occasions, and who admitted to distributing "hundreds and hundreds" of pounds of methamphetamine,[1] also in violation of 21 U.S.C. § 841(a)(1), and, who has a prior felony for sexual contact with a minor, was sentenced in the same district court to **51** months' imprisonment.

On June 7, 2004, Anthony Tabion, a co-defendant of Schulze who was also convicted of conspiring to possess and distribute (21 U.S.C. § 846) and distributing 50 grams or more of methamphetamine (§ 841(a)(1)), and did also distribute methamphetamine to Steven Olaes, was sentenced by this Court to **60** months' imprisonment.[2]

Schulze appealed his sentence on the basis that it violated the Sixth Amendment under Apprendi v. New Jersey, 120 S.Ct. 2348, 530 U.S. 466 (2000), and Blakely v. Washington, 124 S.Ct. 2531, 542 U.S. 296 (2004); that the facts found by the judge using the preponderance of the evidence standard to enhance his sentence beyond the statutory maximum established by the jury's factual findings violated his Due Process rights under the Sixth Amendment.

The Government requested to postpone its response until the Supreme Court issued its holding in United States v. Booker, 125 S.Ct. 738, 543 U.S. 220 (2005). Following Booker, the Government filed its response to Schulze's

---

[1] This quote is taken from Ralph Byrd's trial testimony of February 6, 2003, Records of Transcripts, volume 5, page 84.

[2] Tabion, Byrd, and Schulze were the only three charged in this case.

appeal and stated the following:

> "the District Court erred in making factual findings which increased Schulze's maximum sentence beyond that justified by the jury's verdict. At the sentencing hearing, the court made factual findings related to drug weight that went beyond the jury's findings of 50 grams or more of methamphetamine as charged in Counts 1 and 3. The Court also found that Schulze was an organizer or leader of criminal activity involving 5 or more persons. Based on this finding, Schulze's offense level increased by four levels." (Brief of Appellee, at 9 & 10).

On November 28, 2005, a panel for the Ninth Circuit Court of Appeals affirmed Schulze's conviction but issued a limited remand pursuant to United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005)(en banc)(holding that defendants on direct review who were sentenced under a mandatory Guideline system and where the record is void to demonstrate whether the district judge would have imposed a materially different sentence had the Guidelines been advisory at the time, are entitled to a limited remand to ask the person who knows that answer). Ameline, 409 F.3d at 1079.

## II. DISCUSSION

An Ameline limited remand is designed to answer a single question: Whether the district judge would have given the defendant a materially different sentence under an advisory Guidelines system. United States v. Combs, C.A. No. 05-30486 (District of Alaska, December 18, 2006). If the district court responds in the negative and explains why on the record, the original sentence will stand. Ameline, 409 F.3d at 1079. But if the district court would have imposed a different sentence in an advisory regime, "[T]he original sentence will be vacated, and the district court, with the defendant present, will resentence in accordance with the Reform Act as modified by Booker." Id. at 1073, 1081.

## III. ARGUMENT

### A. In Light of the Authority Invested by Ameline, this Court Should Vacate the Original 30-Year Sentence and Order a Full Resentencing.

The holding in Ameline grants a district court the authority to vacate a sentence imposed during a period of the Guidelines' mandatory life where judges were forced to abandon their discretion and impose sentences that they may have thought were too harsh, especially for first-time offenders. See United States v. Labrada-Bustamante, 428 F,3d 1252 (9th Cir. 2005)(expressing that 151 months' imprisonment was a "very, very sever" punishment for defendants convicted (by jury) of violating 21 U.S.C. §§ 846 and 841(1)(a); that "12 years in prison is an extraordinary long time for a first offender...") Id. 428 F.3d at 1262.

In the case at bar, while the Court did not specifically express whether it felt Schulze's 360-month term was too harsh, it did state that there were portions of the the Guidelines in which the Court did not particularly agree with. The person who stood before the Court that day was a non-violent first-time offender convicted of violating a controlled substance law, not murder or rape. Yet he received a sentence of 30 years' in prison. And while it is true he maintained his innocence and proceeded to trial, there exists no circumstances to justify the fact that he received **360** months' in prison while both co-defendants received just **51** and **60** months' in a prison camp for committing the same offense.

The Government would argue that Schulze received an enhanced sentence for the quantity seized from Susan Fukumoto and Earl Yamada, which, the Court found was part of the instant case. Even if so, Fukumoto only received a sentence of **48** months', and Yamada, who was accountable for that quantity at his sentencing, received a term of **135** months' - not **360.** And that was prior to receiving a sentence reduction for his cooperation. Furthermore, even

Yamada's sentencing judge, the Honorable Susan Oki Mollway, expressed frustration with the 135-month term she imposed on Yamada, stating that her "hands were tied" by the Guidelines.[3] Moreover, if the quantity seized in the Yamada/Fukumoto case was part of the instant offense, then Byrd and Tabion should have also received sentencing enhancements based on that quantity as well. The record does not reflect whether this fact was ever considered at either of defendant's sentencing hearing.

Next, the Government would argue that Schulze received an enhanced sentence for being the leader or organizer of a criminal scheme that involved 5 or more participants. The Government alleges that Donald Grimm, Yamada, Fukumoto, Byrd, and Tabion, were all involved with Schulze in distributing a controlled substance. The evidence and testimony from four of these persons do not support this claim, and the fifth never testified and her statements are not in the record. In fact, Yamada and Fukumoto were charged and plead guilty in a separate case, as did Donald Grimm. Byrd testified that he quit "selling dope in 1998, probably 1999", which is before Yamada "entered the methamphetamine business on his own" in mid 1999. And Tabion testified that he did not participate at all between May of 1999 and July of 2001 - a period when Grimm and Yamada were already in prison.

When closely analyzed, the testimony of each felon does not support the finding that Schulze (1) exercised decision-making authority; (2) participated in the commission of the offense; (3) recruited accomplices; (4) claimed a right to a larger share of the fruits of the alleged crime; (5) or controlled others. Of more importance is the fact that each felon participated at different intervals - and several did not know each other.

The chart on the following page demonstrates the period where each

---

[3] This information was provided to Schulze from Attorney, M. Green.

felon testified to violating the controlled substance law of § 841(a)(1).




**SOURCE:** **Tabion** - Presentence Report, Paragraphs 28, 29, and 30.
**Byrd** - Reporter's Transcripts, volume 5, pages 31, 32, 47, and 52.
**Grimm** - Reporter's Transcripts, volume 2, pages 34 and 44.
**Yamada** - Reporter's Transcripts, volume 2, pages 91 and 131.

It is important to note that Grimm testified that he delivered the drug to Byrd after Tabion received the packages that Grimm would send from the Mainland. However, Tabion testified that he only received packages from late 1998 until Grimm's arrest in May of 1999. If credence is given to the testimony of Tabion, Grimm, and Byrd, then the whole thing lasted six months and ended in May of 1999. And if Byrd quit in 1999, then Yamada could not have been distributing anything to him, which creates a void because there is no one else involved, and Tabion and Yamada did not know one another.

Schulze is prepared to submit an entire brief on this subject to prove that the facts do not support a leadership enhancement, however, the point is that the leadership enhancement should not have been applied to Schulze's sentence. But considering it was, which was a violation of the Sixth Amendment according to Booker - an issue preserved by Schulze and raised on appeal, this Court should vacate his original 30-year sentence and order a full resentencing.

//

//

//

**B. The Booker/Ameline Sixth Amendment Guideline Holding Does Not Disturb the Apprendi/Buckland Sixth Amendment Mandate Requiring that Drug Quantity and Type be Proven to a Jury Beyond a Reasonable Doubt in Order to Satisfy the Penalty Provision of 21 U.S.C. § 841(b)(1).**

The Ameline Court characterized the Booker error as creating a constitutional infirmity only where defendant's sentence is enhanced under a mandatory Guideline system as a result of factual findings made by the sentencing judge beyond the facts found by the jury. However, no part of any text in Booker or Ameline address the **statutory** concerns of the Sixth Amendment established in Apprendi and articulated in United States v. Buckland, 289 F.3d 558 (9th Cir. 2002)(en banc), which held that due process requires drug quantity and type be charged in an indictment, submitted to the jury, and proven beyond a reasonable doubt before establishing the prescribed **statutory** sentencing range under 21 U.S.C. § 841(b). Buckland, 289 F.3d at 568.

Booker returned the sentencing discretion to judges in a **Guidelines** system, however, Booker did not authorize a sentencing judge to override the constitutional demands of due process which require a jury to determine facts necessary to establish a **statutory** sentencing range and to justify an enhancement for an aggravated drug quantity finding. And Ameline does not disturb Buckland's mandate that clearly established drug quantity and type are sentencing factors for the purposes of determining a **statutory mandatory** sentence under 21 U.S.C. § 841(b).

In Buckland, the court held that Congress structured § 841 in two parts, with 841(a) defining the Unlawful Acts (possessing or distributing a controlled substance), and 841(b) providing a range of punishment under the Penalties provision which is based on the quantity and type of controlled substance found by the jury. Buckland, 289 F.3d at 566, and 573 (Hug,

Circuit Judge, Concurring and Dissenting). The majority in Buckland defined that § 841(a) pertained to the offense charged (elements), and that § 841(b) pertained to sentencing (factors). Id. 289 F.3d at 566.

In the case at bar, the jury answered one question with just one word. The jury found Schulze "guilty" of Counts 1, 2, and 3, which **charged** that he committed the general offense of violating 21 U.S.C. §§ 846 and 841(a)(1) - the "Prohibited Act". The jury was not asked, and indeed did not find, that the offense committed involved 50 grams or more of methamphetamine as **alleged** under § 841(b)(1)(A) - the "Penalties" provision.

Accordingly, Schulze did not qualify, and should not have received, a sentence under the enhanced penalty provision of § 841(b)(1)(A), which, increased his sentencing exposure from the applicable default penalty provision of § 841(b)(1)(C) (which provides a range of no mandatory minimum and a **statutory** maximum of twenty years), to the aggravated penalty enhancement provision of § 841(b)(1)(A) (which mandates a **statutory** minimum of ten years and a **statutory** maximum of life imprisonment). "The **statutory** mandatory minimum sentence under 21 § 841(b) are not triggered unless and until a jury has found, beyond a reasonable doubt, the quantity of a controlled substance." Labrada-Bustamonte, 428 F.3d at 1252, 1262 (citing United States v. Valasco-Heredia, 319 F.3d 1080, 1086 (9th Cir. 2003)(stating that after apprendi, the **statutory** minimum sentence under 21 U.S.C. § 841 do not apply "until the jury, or the court in a bench trial, finds beyond a reasonable doubt [] the quantity involved in the violation.")(emphasis added).

The Government would argue that the jury did determine that the offense did involve 50 grams or more of methamphetamine because the jury found Schulze "guilty" of the charges contained in the Indictment, which, had also alleged the sentencing factors. under this theory the Government would assume that the jury's "guilty" verdict encompassed finding the elements of

the offense charged and the sentencing factors. In essence, the Government put two questions before the jury and received one answer, now it may try to persuade this Court to adopt the belief that the jury's verdict somehow satisfied the aggravated penalty provision under a **statutory** sentencing system to warrant an enhanced sentence under § 841(b)(1)(A). However, the Ninth Circuit has clearly held that this one-verdict-covers-all approach is inconsistent with the intent of Congress when it enacted Title 21 U.S.C. § 841. Buckland, 289 F.3d at 568.

Consequently, Schulze's 30-year sentence is illegal because it was imposed under the aggravated penalty provision of § 841(b)(1)(A) instead of the applicable § 841(b)(1)(C), which would have prevented the imposition of a sentence beyond twenty years, which, was prejudicial and affected Schulze's substantial rights. See United States v. Jordan, 291 F.3d 1091 (9th Cir. 2002)(remanded for resentencing under § 841(b)(1)(C) because defendant was sentenced under § 841(b)(1)(A) in error where quantity of methamphetamine was not proven beyond a reasonable doubt.) id. at 1095, 1097; United States v. Thomas, 355 F.3d 1191, 1202 (9th Cir. 2004)(same).

Ameline's limited remand is based on Booker's remedial opinion that specifically pertains to **Guideline** sentencing, whereas Buckland, Blakely, and Apprendi specifically pertain to **statutory** sentencing. And while Booker and Apprendi both pertain to the Sixth Amendment, they are in no way similar, and their perspective holdings have yet to be crossed. Moreover, Booker does not implicate a Sixth Amendment violation in a **statutory** sentencing system because mandatory minimum sentences are driven by **statutes**, not the **Guidelines.** United States v. Cardenas, 405 F.3d 1046, 1048 (9th Cir. 2005) (holding that "Booker does not bear on mandatory minimums"). Furthermore, Blakely specifically prevented a court from enhancing a sentence beyond the "statutory maximum" established by a jury's verdict. Id. 124 S.Ct. at 2537.

A statutory sentencing range must first be determined before a sentence crafted by the Guidelines can be imposed. The law at the time of Schulze's sentencing required that "any fact (other than the fact of a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Following Schulze's sentencing but prior to filing his appeal, Blakely defined what Apprendi meant by holding that the "statutory maximum" is the maximum sentence a judge may impose on the basis of the facts reflected in the jury's verdict. Blakely, 124 S.Ct. at 2537.

Based on the law at the time, Schulze argued in his appeal that the "statutory maximum" was the ten-year mandatory minimum under § 841(b)(1)(A) (assuming the jury found 105 grams of methamphetamine based on 50 grams in Counts 1 and 3, and 5 grams in Count 2); that the district court erred in enhancing his sentence based on judge-found facts using the preponderance of the evidence standard in violation of the Sixth Amendment. And the Government conceded, stating, "the District Court erred in making factual findings which increased Schulze's maximum sentence beyond that justified by the jury's verdict." (Brief of Appellee, at 9 & 10).

Schulze did not challenge his sentence on the basis of the Guidelines because its application had no place in a statutory mandatory minimum sentencing range, which was established by the jury's verdict and secured by the authority in Apprendi and Blakely, which, was controlling authority then as is now. And that is why Booker is not applicable to this case, and Ameline's limited remand is misplaced. And that, is the reason why this Court should vacate Schulze's 30-year sentence and order a full resentencing.

//

//

//

**C. Schulze Did Preserve His Sixth Amendment Error and is Entitled to a Full Remand.**

In United States v. Lence, 466 F.3d 721, 725 (9th Cir. 2006), the court held that a criminal defendant who preserved his Sixth Amendment error is entitled to a full resentencing, because "[a] defendant who preserves a claim of error should receive no less of a chance to benefit from [a] subjective assessment than a defendant who fails to preserve a claim of error and obtains a limited remand." Accordingly, Schulze is entitled to a full resentencing because he did in fact preserve his Sixth Amendment error claim.

## IV. CONCLUSION

**WHEREFORE**, Schulze prays this Honorable Court VACATE his original 30-year sentence and ORDER a full resentencing.

DATED: January 8, 2007, at Honolulu, Hawaii

Respectfully submitted,

MICHAEL F. SCHULZE
Defendant, pro se