## DECLARATION OF DEFENDANT

I, MICHAEL F. SCHULZE, declare:

1.  That I am the named defendant in criminal matter No. 02-00090-DAE, charged for violating a federal controlled substance statute.

2.  That I proceded to trial and that Earl Yamada, convicted of violating a federal controlled substance statute in criminal matter No. 00-000320-SOM, testified on behalf of the Government in exchange for a reduction in his 135-month sentence.

3.  That Earl Yamada testified that when he first became "involved in the methamphetamine business" "in 1999", he would ship his packages to "a body shop".

4.  That when the Government asked Earl Yamada whether he could recall the name of the body shop, he stated "[N]o.  I  don't recall the name."

5.  That Earl Yamada testified that "the week before" his arrest (which occurred on July 22, 2000), he obtained and shipped "approximately four pounds of crystal methamphetamine" to Hawaii, where he "dropped [the package] off to the Candy man."  He then received "about $120,000" "that night and then [] came back ... to Las Vegas" where he "gave the money to Mike." (Accordingly, this took place on July 15, 2000).

6.  That Earl Yamada testified that "a couple days" later he "got another call [from "Mike"] and was told to go back down and get another -- ... whatever [Gus] had."  Earl Yamada then stated that he obtained "whatever [Gus] had and took it back to Vegas that day" where he "packaged it up real quick ... and sent it out Fed Ex that day."

7.  That Earl Yamada testified that this was "the package [the FBI] opened at the animal hospital."

-8-

8. That based on Earl Yamada's statements, the District Court found that the quantity of controlled substance recovered by the FBI from Susan Fukumoto at the animal hospital on July 21, 2000, was attributable to me by a preponderance of the evidence, and enhanced my sentencing exposure from the range of 63 to 78 months' based on the 105-gram amount of methamphetamine specifically alleged in the Indictment, to 360 months' to life, and imposed a sentence of 360 months' imprisonment.

9. That there was no evidence to support Earl Yamada's uncorroborated testimony. No phone records, witnesses, travel receipts, shipping receipts, etc. Nothing but the sworn testimony of Earl Yamada, who, the District Court found to have testified truthfully.

10. That information realized and provided following my sentencing hearing has established a foundation upon which I now move the District Court for help in securing evidence that will prove Earl Yamada committed perjury, concealed information, and was deceitful with federal investigators, thereby diminishing the credibility that formed the basis in finding the quantity of controlled substance recovered from Susan Fukumoto attributable to me, which would prevent any sentencing enhancements from being applied at the April 5th resentencing hearing.

11. That Earl Yamada committed perjury when he stated that he did not recall the name of the body shop in Hawaii where he sent his packages of methamphetamine to. I have learned that the body shop was owned by his brother, Tommy Yamada, who owned a shop (and apparently still does), named Tommy's Auto Body. Earl Yamada purposely lied to conceal his brother's identity and involvement. And this fact can be proven by confronting Earl Yamada with subpoenaed Fed Ex shipping receipts demonstrating overnight deliveries from Las Vegas to Honolulu in 1999 to the address in Tommy Yamada's name, which, can be obtained through a private investigator.

12. That Earl Yamada committed perjury when asked by the Government which other persons (besides Ralph Byrd) did he deliver his drugs to, whereby he stated, "I don't know the real names... I just -- Candy Man and Blacky... Actually, I didn't really do much with them. It was my girlfriend [Susan Fukumoto] who did a lot of stuff with those people." I have learned the identity of the "Candy Man", whose first name is Mike. And I have learned that Mike was a close friend of Earl Yamada's and a drug associate during this period. I have also learned that Susan Fukumoto is well acquainted with Mike, and has accompanied Earl Yamada on occasions where he would deliver his drug to Mike that he had shipped to Susan Fukumoto from Las Vegas; that Susan Fukumoto has first-hand knowledge that Earl Yamada called Mike the "Candy Man", and that she never "did a lot of stuff" with Mike, nor even knew who "Blacky" was; that these people were drug associates of Earl Yamada, not Susan Fukumoto. I have learned that Susan Fukumoto can, and is willing to attest to the fact that the "Candy Man" was Mike, and that Earl Yamada purposely lied under oath to protect and conceal Mike's true identity and personal involvement. **(See Attached Exhibit "A").** Further, I have learned that Mike frequently traveled to Los Angeles and Las Vegas during the period when Earl Yamada stated he was obtaining methamphetamine in Los Angeles and shipping it back to Hawaii, and that on occasion Mike and Earl Yamada would travel together to Los Angeles. It is very important to point out that Earl Yamada testified that the "four pounds of crystal methamphetamine" that he shipped to Hawaii "a week before" his arrest, was "dropped off to the Candy Man" (Mike), and that "a couple days later" he received "another call from Mike" to go back to Los Angeles where he obtained the quantity of controlled substance that was subsequently seized. I believe evidence can be obtained through a private investigator to prove that the "call from Mike" was actually a call from the "Candy Man", i.e., another Mike, not me. And I

believe that the FBI could not produce phone records at trial to prove that I was the "Mike" that called Earl Yamada because he concealed the true identity of the other Mike that called him. Earl Yamada testified that I had only two phone numbers "the whole time [he] knew [me]." And given his "cooperation", he did not inform of any other method in which he would receive calls. Therefore, there should have been some proof that I called Earl Yamada during this time period where he claimed I had. I believe that a private investigator can, once given the true name of the "Candy Man", obtain phone records that connect Earl Yamada to the other Mike on or about the dates that coincide with Earl Yamada's testified events. Such evidence will prove that he committed perjury, and more importantly prove that the quantity seized by the FBI on July 21, 2000, was obtained by Earl Yamada on behalf of another "Mike", and that it is not, therefore, part of the same offense in which I proceded to trial for.

13. That Earl Yamada committed perjury when he testified that "a week before" his arrest (which occurred on Saturday, July 22, 2000), he returned to Las Vegas after delivering four pounds of crystal methamphetamine to the Candy Man in Hawaii, and "gave [about $120,000] to Mike." I was not in Las Vegas during this period. I was in Atlanta, Georgia, tending to my record company **(see attached Exhibit "B")**, and moving my cabinet shop that was located in Fayetteville, Georgia. And during this period I was constantly among friends and business associates, as well as in the company of my then fiancee. Through the services of a private investigator, I could produce statements, documents, receipts and the like that prove I was not in Las Vegas during the period when Earl Yamada claimed I was. Such evidence would prove that Earl Yamada committed perjury thereby severing any link that connects the quantity seized the following week to me, that, or prove the "Mike" he gave the $120,000 to was really his friend the "Candy Man".

-11-

14. That the facts as stated in this Declaration are true to the best of my knowledge and are based on information I believe to be truthful and sound, and of which I submit in good faith.

15. EXECUTED this 23rd day of January, 2007, at Honolulu, Hawaii.

By: _____
     MICHAEL F. SCHULZE