EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

KENNETH M. SORENSON
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-Mail:  Ken.Sorenson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00090 DAE |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S MOTION FOR |
| vs. | ) | FUNDS FOR PRIVATE INVESTIGATOR |
| | ) | EXHIBITS "A" & "B"; |
| MICHAEL F. SCHULZE, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |


GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR FUNDS FOR PRIVATE INVESTIGATOR

Defendant Michael Schulze has moved the Court for

"Payment of Defense Witness/Private Investigator" in order to

"impeach Government witness Earl Yamada". Schulze represents

that he desires a private investigator to develop facts to

impeach witness Earl Yamada's trial testimony naming Schulze as

his drug partner in a shipment of 2,458 grams of methamphetamine into Hawaii from Las Vegas, Nevada in July, 2000.  Schulze's request for funds for the acquisition of a private investigator are not properly supported and should be denied.

Title 18, United States Code, § 3006A(e) is designed to provide indigent defendants with access to the assistance of professional experts in criminal cases.  This provision provides in relevant part as follows: "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an *ex parte* application.  Upon finding, after appropriate inquiry in an *ex parte* proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services."  18 U.S.C. § 3006A(e)(1).  Although § 3006A(e) makes reference only to the appointment of an expert at the request of counsel, the courts have generally found that § 3006A(e) is applicable to *pro se* defendants. See United States v. Hamlet, 456 F.2d 1284 (5th Cir. 1972) ("The fact that [the defendant] was acting as his own counsel does not remove him from the benefits of § 3006A"); see also United States v. Greschner, 802 F.2d 373 (10th Cir. 1986), cert. denied, 480 U.S. 908 (1987); Edwards v. United States, 795 F.2d 958, 963 (11th Cir. 1986), cert. denied, 481 U.S. 1019 (1987).

The decision to grant or deny a request for the appointment of an expert under § 3006A(e) is committed to the trial court's discretion. United States v. Goodwin, 770 F.2d 631, 635 (7th Cir. 1985), *cert. denied*, 474 U.S. 1084 (1986).  The defendant has the burden of showing both that the appointment of an expert is necessary to his defense and that he is financially unable to afford the expert's services.  United States v. Sanchez, 912 F.2d 18, 22 (2d Cir. 1990).  The test for determining whether an expert's services are necessary is "whether a reasonable attorney would engage such services for a client having independent financial means to pay for them." Goodwin, 770 F.2d at 635.

Schulze cannot meet the necessary burden for appointment of a private investigator.  Schulze's demands a private investigator to assist him in developing information to impeach Yamada's trial assertions that Schulze was his supervising partner in the July, 2000 methamphetamine deal for which Yamada was arrested.  Evidence offered at trial, which was all cross-examined by Schulze's attorneys, proved conclusively that Schulze was Yamada's drug partner, and that Schulze was fully involved and invested in the 2,458 grams of methamphetamine that was seized from Susan Fukamoto on July 21, 2000.

Evidentiary Review

        Evidence at trial showed that Yamada was known by the
nickname "Achie" or "Archie". [TT Vol. 2, 90; Vol. 5,40][1]  Yamada
testified that in July, 2000 Schulze had directed him to unload a
substandard 4 pound load of methamphetamine. [TT Vol. 2, 115.]
Yamada testified that he sold it in Hawaii for "like, $30,000 or
something."  Yamada testified that he flew to Hawaii, picked up
$120,000 and returned to Vegas and "gave the money to Mike
[Schulze]". [TT Vol. 2, 117]  Yamada then testified that a couple
days later he got another call from Schulze telling him to go
back to Los Angeles and get another load of methamphetamine.  [TT
Vol. 2, 118].  Yamada testified that he returned to the Los
Angeles area and picked up another "approximately,...six pounds
of – crystal methamphetamines". [TT Vol. 2, 120]  Yamada
testified that he sent this load, as was his practice, to Susan
Fukamoto at the Wahiawa Animal Hospital.  Yamada was subsequently
arrested, and testified that Schulze hired a local attorney,
Michael Green, to represent him. [TT Vol. 2, 124] This fact was
corroborated by records introduced at trial showing that Schulze
had paid Michael Green's law firm $25,000 on behalf of Yamada.
[TT Vol. 2, 159-161].

———————————————

        [1]    Citations to "TT" reflect citations to the trial
transcript of this case.  (ie. TT Vol. 2, 90 refers to trial
transcript volume 2, page 90.)

There is no need for the court to expend funds to hire a private detective to assail the trial testimony of Yamada since Schulze's own words and other evidence adduced at trial confirm Yamada's testimony. On February 5, 2002 and February 6, 2002 Schulze was recorded by FBI agents discussing his extensive drug business and his relationship with Yamada (Achie). During these conversations Schulze discussed Yamada's arrest and how the seizure of the July, 2000 methamphetamine load he had directed Yamada to sell nearly put him out of the drug business since the drugs had been partially fronted to Schulze by his drug source. During the February 5, 2002 conversation Schulze directly implicated himself in the July, 2000 methamphetamine deal stating:

> MS: I use to drop off a hundred thirty thousand, I would pick up six, seven pounds, whatever...
>
> CW: And...and...
>
> MS: And I would come to the island and it would be all mine. If I lost two or three (pounds) or whatever, that was mine, that was fine. **The day that Achi (Yamada) lost those nine...**
>
> CW: Mmm, huh.
>
> MS: **I fucken had to pay everybody.**
>
> CW: But you..those were fronted, right?
>
> MS: **Most of um were fronted but I still had like fifty, eighty grand invested.**
>
> CW: Mmm, huh.

MS:  **So then I lost. Then I was out of business. I was like I have no money and on top of that I had to pay twenty-five grand to get him a lawyer.** So then the guys were like "You can't quit on us now, you owe us money." "Well, what do you want me to do?" "Ok, here's one, go make some money." "Ok, I'll take the one, make some money." Then after like a year or six months later, "Here..here's two, go make some money." I come back, then I got up to like three, four, and then the four I brought out there, I lost two and a half, three. So I turn back, I come back with twenty-five, thirty grand, they're like, "Ho, what happened to the rest?" "I lost it." "Wow, so right after you lost our seven, within six, seven months or a year later you lost three?"

CW:  Yeah, those guys must, they shouldn't have fronted you stuff. (Exhibit A)

Schulze's recorded admissions above clearly demonstrate that he was responsible for the 2,458 grams of methamphetamine seized from Fukamoto and Yamada.[2] No reasonable attorney would seek to hire an investigator to impeach Yamada's testimony when Schulze's own words indisputably demonstrate his involvement in the offense.

Multiple other statements of Schulze at trial, and the testimony of other witnesses tied him directly to Yamada. An

---

[2]  Pages 1-6 of the February 6, 2002 transcript provide other corroboration of Schulze's drug relationship with Earl Yamada. Specifically, on pages 4-6 Schulze discusses Yamada's sentence and his interaction with Michael Green, the attorney he hired to represent Yamada on the July, 2000 bust. Schulze concludes that Yamada got a good sentence for dealing drugs with him for five years and then says: "Like I often think, you know what, if I had to go away for five years and I came back and this was all here...you know half a million in five years, that's not too bad, you know." (Exhibit B, 4-6)

exhaustive review of this evidence is not offered here in light of the above direct evidence of Schulze's involvement in the 2,458 gram deal.  Based on the overwhelming evidence at trial, including corroborating evidence of Schulze's relationship with Yamada given by Anthony Tabion, Ralph Byrd and Donald Grimm[3], Schulze has failed to demonstrate cognizable need for a private investigator.

//

//

//

//

---

[3]  <u>Grimm's Testimony</u>:

Q:   Now, how do you know Earl Yamada?

A:   He was hired (by Schulze) to take my place.

Q:   Okay.  And when you say hired to take your place, was this done before you were arrested?

A:   Yes. [Vol. 2, 56-57]

    <u>Byrd's Testimony</u>:

Q:   How many times did you see Mike Schulze and Earl Yamada together dealing drugs or delivering drugs to you?

A:   Too many to count.  Too many times to count.

....

Q:   As many as 50?

A:   Could be. [Vol. 5, 41,42]

See also, Tabion's trial testimony at TT Vol. 5, 116-118.

<u>Conclusion</u>

        Schulze has failed to demonstrate the necessary need for the acquisition of investigative services in this case, and his motion should be denied.

        DATED:  Honolulu, Hawaii, February 12, 2007.


                                Sincerely Yours,

                                EDWARD H. KUBO, JR.
                                United States Attorney
                                District of Hawaii


                        By <u>/s/ Kenneth M. Sorenson</u>
                                KENNETH M. SORENSON
                                Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:


Served by First Class Mail:           February 12, 2007

MICHAEL F. SCHULZE, Reg. No. 36817-048
Federal Detention Center
P. O. Box 30080
Honolulu, HI 96820
DEFENDANT PRO SE


DATED:  Honolulu, Hawaii, February 12, 2007.


/s/ M. Derby-Taufa'asau