IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00090-01 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL F. SCHULZE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR FUNDS FOR PAYMENT
OF DEFENSE WITNESS AND PRIVATE INVESTIGATOR

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After reviewing Defendant's motion and the supporting and opposing memoranda, the Court DENIES Defendant's Motion for Funds for Payment of Defense Witness and Private Investigator.

BACKGROUND

On February 13, 2003, a jury found Defendant guilty as to Count One for conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine; Count Two for distribution of 5 grams or more of methamphetamine; and Count Three for distribution of 50 grams or more of methamphetamine. Defendant was sentenced on September 2, 2003, to 360

months imprisonment as to each count, all terms to be served concurrently. The term of his sentence was based upon his criminal history category level one and a total offense level of 42.

The offense level was reached in part by finding that Defendant was accountable for conspiring to possess with intent to distribute and distribute at least 2,560 grams of ice. (Presentence Investigation Report.) This amount was attributed to Defendant because the government had seized 2,458.2 grams of ice that was in ziplock bags, which were in three paint cans sent via Federal Express to Susan Fukumoto, another defendant, on July 21, 2000. The ice was seized from Susan Fukumoto's place of business. In a voluntary statement, Fukumoto indicated that the ice recovered from her place of business had been supplied by her boyfriend, yet another defendant, Earl Yamada, of Las Vegas, Nevada. Fukumoto indicated that she had been receiving similar packages from Yamada on a monthly basis since July 1999.

After being arrested, Yamada confirmed that he sent Fukumoto pound quantities of ice concealed in paint cans from Las Vegas since July 1999. Yamada identified the Defendant as a major methamphetamine trafficker who resided in Las Vegas, Nevada, and as the sole source of the ice that he sent to Fukumoto. Yamada stated that Defendant was involved in sending multi-pound quantities of

methamphetamine from Las Vegas to Honolulu via Federal Express and that he was one of Defendant's sub-distributors, and that he sent the packages to Fukumoto on Defendant's instructions. He further stated that the methamphetamine was concealed inside paint cans and that the "ice" seized from Fukumoto's place of business had been supplied to him by Defendant. In addition, other sub-distributers, Anthony Tabion, and Donald Grimm, corroborated Yamada's statement that from 1998 or 1999 to April 2002 Defendant shipped pound quantities of ice to Hawaii in paint cans.

      Defendant, then represented by counsel, filed a sentencing statement objecting to his offense level. Defendant argued that there was no physical evidence to connect him to the methamphetamine recovered from Susan Fukumoto's place of business and that Yamada had an incentive to lie in exchange for a reduction of his own sentence.

      In addition to the information provided during the investigation of this case, at trial, Yamada testified that in July 2000, the week before his arrest, Defendant instructed him to unload four pounds of methamphetamie, which he did for approximately $30,000. Yamada had picked up these four pounds of methamphetamine in Los Angeles, just has had done several times in the past, at Defendant's behest. He would then bring the drugs back to Las Vegas and ship

them to Fukumoto. He would fly to Honolulu and begin the distribution process. Once he had the money he would fly right back to Las Vegas and give the money to Defendant. A few days after the incident with the four pounds of methamphetamine, he picked up more drugs, approximately six pounds,[1] packed them in paint cans, as Defendant had shown him, and sent them Federal Express to Fukumoto's workplace. (TT Vol. 2 at 90-101, 115-21.) Yamada was subsequently arrested. Defendant hired local attorney Michael Green to represent, his friend, Yamada.

Grimm testified at trial that he had been arrested and convicted for distributing methamphetamine in 1999 and that Defendant was his source for the drugs. Grimm further testified that Defendant approached him about distributing drugs and he and Defendant would pick up the drugs in Los Angeles and deliver them to Las Vegas, and then ship the drugs in paint cans to Hawaii. (TT Vol. 2 at 37-40.) Grimm further testified that Defendant hired Yamada to take his place before Grimm was arrested. (Id. at 56.)

Other sub-distributer and defendant, Ralph Byrd, testified that he had seen Defendant and Yamada dealing drugs or delivering drugs together too many

---

[1] 2,458 grams, the amount seized from Fukumoto is equal to approximately 5.4 pounds.

times to count and it could have been as many as 50 times.  (TT Vol. 5 at 41-42.)  Sub-distributor Tabion also testified that he met Yamada through Defendant and that Yamada was one of Defendant's friends.  He further testified that Defendant opened paint cans in front of him and they had methamphetamine inside of them.  (TT Vol. 5 at 116-18.)

        This Court found that based on the statements of Fukumoto, Yamada, Grimm, and Tabion, it was established by a preponderance of the evidence that the 2,458.2 grams of "ice" seized on July 21, 2000 from Fukumoto's place of business was sent by or at the direction of Defendant as part of the same course of conduct or common scheme or plan as the offense of conviction, pursuant to U.S.S.G. §§ 1B1.3(a)(1).

        Defendant appealed his conviction and sentence.  Defendant argued to the Ninth Circuit that this Court erred by enhancing his sentence beyond the range established by the jury's verdict.  On November 28, 2005, the Ninth Circuit affirmed Defendant's conviction and remanded his sentence.  The Ninth Circuit noted that this Court had treated the Sentencing Guidelines as mandatory, and that the Supreme Court's subsequent ruling in United States v. Booker, 125 S. Ct. 738 (2005) impacted this Court's factual findings and guideline treatment.  Thus, the Ninth Circuit found that "[b]ecause the record is insufficient to show whether the

judge would have given Schulze a materially different sentence had he known that the Sentencing Guidelines were advisory, Schulze is entitled to a limited remand pursuant to United States v. Ameline, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc)." (11/28/05 Memorandum at 3.)

Defendant, pro se, filed the instant motion on January 25, 2007, arguing that because he is currently serving a 30-year term of imprisonment, under a $50,000 fine, and has no income and assets, he is indigent and cannot pay for the services of an investigator. Defendant argues that an investigator is necessary to obtain evidence and to serve subpoenas to enable him to call and impeach Yamada at his resentencing. Defendant asserts that he intends to prove that Yamada committed perjury during the trial testimony. The Government filed an opposition on February 13, 2007, and Defendant filed a reply on February 16, 2007.

## DISCUSSION

Defendant requests public funds so that he can hire an investigator to find evidence and to call witnesses to support his assertion that Yamada committed perjury. Specifically, Defendant claims that since he has been in prison, he has learned that Yamada was associated with another "Mike," who he referred to as the "Candy Man," and who Yamada delivered approximately four pounds of drugs to a week. Defendant also claims when Yamada testified that he received a call from

6

Mike to pick up the drugs that Yamada eventually sent to Fukumoto, that the call was really from the Candy Man.  Defendant believes that an investigator could obtain phone records to show that the call to which Yamada was referring was not from him but from the Candy Man.  He also believes that an investigator could show that when Yamada testified that he delivered $120,000 to Mike, after delivering four pounds of methamphetamie to the Candy Man in Hawaii, Yamada could not have been referring to Defendant because Defendant was in Atlanta and was not in Las Vegas at that time.  Defendant claims that Yamada falsified his testimony to protect the Candy Man and to be ensure that he had a reduced sentence.

> 18 U.S.C.A. § 3006A provides that
>
> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

18 U.S.C.A. § 3006A(e).  "The statute requires the district judge to authorize defense services when the defense attorney makes a timely request in

circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them." United States v. Bass, 477 F.2d 723, 725 (9th Cir. 1973).  Courts have found that this statute also entitles pro se defendants to make requests for investigative or expert services.  The fact that Hamlet was acting as his own counsel does not remove him from the benefits of § 3006A.  United States v. Hamlet, 456 F.2d 1284, 1284 (5th Cir. 1972).

   Defendant must establish by clear and convincing evidence, "the prejudice ... caused by the court's failure to appoint an expert [or investigator]." United States v. Brewer, 783 F.2d 841, 843 (9th Cir. 1986) (citation and internal quotation marks omitted, brackets and ellipses in original).  It is within the Court's discretion to provide an investigator or expert.  United States v. Labansat, 94 F.3d 527, 530 (9th Cir. 1996).

   Here, Defendant cannot establish that an investigator is necessary or that he will be prejudiced at his resentencing if he is unable to present evidence to impeach Yamada.  First, Defendant was represented by counsel at his trial and Yamada was subject to cross-examination.  Thus, issues regarding phone records, and whether Defendant was in Las Vegas at the time that Yamada claimed he was

when he gave him the $120,000 could have been dealt with at that time.  None of this is "newly discovered" evidence, as Defendant claims.

Nevertheless, this Court finds that removing Yamada's testimony from consideration, the evidence against Defendant is overwhelming and at a minimum is certainly sufficient to find by a preponderance of the evidence that Defendant is responsible for the 2,458.2 grams of "ice" seized on July 21, 2000 from Fukumoto's place of business as part of the same course of conduct or common scheme or plan as the offense of conviction.  Indeed, the trial transcript is replete with testimony from persons other than Yamada regarding Defendant's drug distribution methods and working directly with Yamada.  Furthermore, Defendant admits to knowing Yamada and Fukumoto.  Finally, even if Yamada delivered drugs to "Candy Man," who is allegedly another "Mike" that Yamada is trying to protect, such alleged "evidence" does not rebut or weaken all the other evidence that establishes that Defendant directed Yamada and others to pick up drugs, and ship them in paint cans via Federal Express to Hawaii and/or that Defendant worked closely with Yamada.  Therefore, Defendant has not established that an investigator is necessary.

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Funds for Payment of Defense Witness and Private Investigator.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 9, 2007.



_____
David Alan Ezra
United States District Judge

United States v. Schulze, CR. No. 02-00090 DAE; ORDER DENYING DEFENDANT'S MOTION FOR FUNDS FOR PAYMENT OF DEFENSE WITNESS AND PRIVATE INVESTIGATOR