CA 03-10493
DC NO. CR 02-00090-DAE
(District of Hawaii)

IN THE UNITED STATES COURT OF APPEAL

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,  )
                           )
        Plaintiff/Appellee,  )
                           )
        vs.                )
                           )
MICHAEL F. SCHULZE,        )
                           )
        Defendant/Appellant.  )
                           )
                           )
                           )



--------------------

APPELLANT'S OPENING BRIEF

--------------------

APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

HONORABLE DAVID ALAN EZRA,
UNITED STATES DISTRICT COURT JUDGE

SUNG B. PARK, ESQ.
ATTORNEY AT LAW
17620 Sherman Way, Suite 211
Van Nuys, California  91406
(818) 609-9349

ATTORNEY FOR APPELLANT
MICHAEL F. SCHULZE



EXHIBIT C

CA 03-10493
DC NO. CR 02-00090-DAE
(District of Hawaii)

IN THE UNITED STATES COURT OF APPEAL

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,              )
                                       )
        Plaintiff/Appellee,            )
                                       )
        vs.                            )
                                       )
MICHAEL F. SCHULZE,                    )
                                       )
        Defendant/Appellant.           )
                                       )
                                       )
_____          )

------------------------

APPELLANT'S OPENING BRIEF

------------------------

APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

HONORABLE DAVID ALAN EZRA,
UNITED STATES DISTRICT COURT JUDGE

SUNG B. PARK, ESQ.
ATTORNEY AT LAW
17620 Sherman Way, Suite 211
Van Nuys, California  91406
(818) 609-9349

ATTORNEY FOR APPELLANT
MICHAEL F. SCHULZE

# TABLE OF CONTENTS

PAGE

Table of Authorities Cited ............................ii

I.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........1

II.  STATEMENT OF THE CASE ...........................2

     A.  Nature of the Case ...........................2

         1.  Jurisdiction of the District Court .........2

         2.  Basis for Jurisdiction in the Court of
             Appeals ..................................2

         3.  Notice of Appeal was Timely ...............2

     B.  Proceedings and Disposition of the Trial Court .3

     C.  Bail Status ...................................5

III. STATEMENT OF FACTS .............................5

IV.  STANDARD OF REVIEW AND ARGUMENT ...............12

     A.  APPELLANT'S SENTENCE VIOLATED HIS SIXTH
         AMENDMENT RIGHT TO HAVE A JURY DETERMINE BEYOND
         A REASONABLE DOUBT THE FACTS WHICH RESULTED IN
         HIS ENHANCED SENTENCE ........................12

         Standard of Review ...........................12

         Argument .....................................13

     B.  THE DISTRICT COURT ERRED IN DENYING APPELLANT'S
         MOTION TO RECONSIDER AND SHOULD HAVE SUPPRESSED
         THE EVIDENCE SEIZED FROM APPELLANT'S RESIDENCE
         AND THE AUDIOTAPE RECORDINGS .................18

         Standard of Review ...........................18

         Argument .....................................19

V.   CONCLUSION ......................................28

CERTIFICATE OF RELATED CASES .........................29

CERTIFICATE OF COMPLIANCE ............................30

i

## TABLE OF AUTHORITIES

### Cases

Apprendi v. New Jersey,
530 U.S. 466 (2000) .................................12,13

Blakely v. Washington,
124 S.Ct 2531 (2004) ...............................13,18

Deteresa v. ABC Companies, Inc.,
121 F.3d 460 (9th Cir. 1997) ........................24

Franks v. Delaware,
438 U.S. 154 (1978) ................................19,21

Sussman v. Am Broad. Companies,
186 F.3d 1200 (9th Cir. 1999) .......................24

United States v. Alexander,
287 F.3d 811 (9th Cir. 2002) ........................12

United States v. Ameline,
376 F.3d 967 (9th Cir. 2004) ......................14-15

United States v. Buffington,
815 F.2d 1292 (9th Cir. 1987) .......................18

United States v. Celesine,
324 F.3d 1095 (9th Cir. 2003) .......................18

United States v. Fernandez-Castillo,
324 F.3d 1114 (9th Cir. 2003) .......................18

United States v. Garcia,
323 F.3d 1161 (9th Cir. 2003) .......................12

United States v. Hobbs,
31 F.3d 918 (9th Cir. 1994) .........................18

United States v. Ippolito,
774 F.2d 1482 (9th Cir. 1985) .......................21

United States v. Smith,
282 F.3d 758 (9th Cir. 2002) ........................13

United States v. Tham,
960 F.2d 1391 (9th Cir. 1992) ......................19,21

## Statutes

18 U.S.C. Section 2511(2)(c)........................20,23-25

18 U.S.C. Section 2511(2)(d)......................20,21,23-25

18 U.S.C. Section 3231 ...................................2

21 U.S.C. Section 841(a)(1)..............................1

U.S.C. Section 841(b)(i)...............................2,17

21 U.S.C. Section 846....................................2

28 U.S.C. Section 1291...................................2

## Sentencing Guidelines

Section 2D1.1(c)......................................15,17

CA 03-10493
DC NO. CR 02-00090-DAE
(District of Hawaii)

IN THE UNITED STATES COURT OF APPEAL

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff/Appellee,      )
                                   )
          vs.                      )
                                   )
MICHAEL F. SCHULZE,                )
                                   )
          Defendant/Appellant.     )
                                   )
                                   )
_____    )

I

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

A.   APPELLANT'S SENTENCE VIOLATED HIS SIXTH AMENDMENT RIGHT

TO HAVE A JURY DETERMINE BEYOND A REASONABLE DOUBT THE FACTS

WHICH RESULTED IN HIS ENHANCED SENTENCE.

B. THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO

RECONSIDER AND SHOULD HAVE SUPPRESSED THE EVIDENCE SEIZED

FROM APPELLANT'S RESIDENCE AND THE AUDIOTAPE RECORDINGS.

1

## II

## STATEMENT OF THE CASE

A.  Nature of the Case

1.  Jurisdiction of the District Court

This appeal is from the District Court's judgment
entered on September 10, 2003, following a guilty verdict by
jury of one count of conspiracy to distribute and to possess
with intent to distribute 50 grams or more of
methamphetamine in violation of 21 U.S.C. Section 846,
841(a)(1) and 841(b)(1)(A), one count of distribution of 5
grams or more of methamphetamine in violation of 21 U.S.C.
Sections 841(a)(1) and (b)(1)(B), and one count of
distribution of 50 grams or more of methamphetamine in
violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(B).
The jury also found true that appellant's property should be
forfeited in Count Four.  The District Court had
jurisdiction pursuant to 18 U.S.C. Section 3231.

2.  Basis for Jurisdiction in the Court of Appeal

This Court has jurisdiction over appeals from
final judgments under 28 U.S.C. Section 1291.

3.  Notice of Appeal was Timely

The judgment was pronounced on September 2, 2003.
The Notice of Appeal was filed on September 4, 2003, and was
therefore timely made.

B. <u>Proceedings and Disposition of the Trial Court</u>

On March 21, 2002, the Government filed a secret indictment against Appellant, Ralph Byrd ("Byrd"), and Anthony Tabion ("Tabion"), and arrest warrants were issued against all three defendants. (ER 251) [1]. On April 2, 2002, Appellant, Byrd, and Tabion were arrested. (ER 252).

On July 11, 2002, Tabion changed his plea and entered a guilty plea to a single count of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine. (ER 258).

On October 3, 2002, the Government filed a superseding indictment against Appellant and Byrd. (ER 260). On October 29, 2002, Byrd changed his plea and entered a guilty plea to three counts of distribution of methamphetamine and one count of possession with intent to distribute methamphetamine. (ER 263) On October 21, 2002, Appellant filed, among other things, motions to suppress evidence seized from his 3224 Ludlow Avenue, Las Vegas, Nevada residence and to suppress tape recorded evidence. (ER 1-64).

On November 26, 2002, the district court denied Appellant's motions to suppress. (ER 112-134). On December

---

[1] ER refers to Excerpts of Records; RT refers to Reporter's Transcript, followed by either a volume number and the page number or the date of the transcript and the page number. Presentence report is filed under seal.

27, 2002, the Government filed a second Superseding
Indictment against Appellant, charging him with four counts.
(ER 135-144).   Count One charged Appellant of conspiracy to
distribute and to possess with intent to distribute 50 grams
or more of methamphetamine in violation of 21 U.S.C.
Sections 841(a)(1) and 841(b)(1)(4); Count Two charged
Appellant of knowingly and intentionally distributing 5
grams or more of methamphetamine in violation of 21 U.S.C.
Sections 841(a)(1) and (b)(1)(B); Count Three charged
Appellant of knowingly and intentionally distributing
methamphetamine in violation of 21 U.S.C. Sections 841(a)(1)
and (b)(1)(A); and Count Four charged Appellant with
forfeiture of property constituting, or derived from, any
proceeds which Appellant obtained as the result of the
offense.   (Ibid).

On December 31, 2002, Appellant filed a motion for
reconsideration of the district court's denial of his
motions to suppress the evidence seized from his Ludlow
residence and the tape recordings.   (ER 145).   On January
23, 2003, the district court denied Appellant's motion for
reconsideration.   (ER 166).

A jury trial began on January 30, 2003.  After eight
days of trial, on February 11, 2003, the jury found
Appellant guilty on Counts One, Two, and Three.   (ER 187).
On February 12, 2003, the jury found that the property

4

identified in Count 4 either constituted or was derived from proceeds that Appellant obtained as a result of the conspiracy charged in Count One. (ER 273). After the district court granted the Government's motion to remove two of the 14 items in Count Four, the jury determined that all remaining 12 items be forfeited. (Ibid).

On September 2, 2003, after a hearing, the district court adopted the sentencing guideline calculations in the presentence report and sentenced Appellant to the custody of the Bureau of Prisons for a term of 360 months on each of Counts One through Three to be served concurrently and imposed a fine of $50,000. (ER 219,221; RT 9/2/03 at 24,26). Defendant was ordered to a supervised release for a term of five years. (ER 220; RT 9/2/03 at 25).

C.  Bail Status

Defendant is currently serving his 360-month sentence at USP at Atwater, Taft, California.

III

STATEMENT OF FACTS

Prosecution's Case

On April 22, 1999, Donald Grimm was arrested, and he was subsequently convicted and sentenced to 10 years in a federal prison for aiding and abetting intentional

distribution of methamphetamine and knowingly and
intentionally possessing with intent to distribute 50 grams
or more of methamphetamine.  (RT 2:61-62).

Grimm testified for the Government at Appellant's trial
as follows: He met and worked for Appellant, doing
construction work in Las Vegas in 1993.  He followed
Appellant to Florida and Georgia for construction work in
1996.  (RT 2:31-32).  In November of 1997, Grimm moved to
Hawaii and started helping Appellant distribute
methamphetamine.  He would pick up the drug from Los
Angeles, take them to Las Vegas, box them up, and ship them
to Hawaii.  (RT 2:37-41).  The drug was sent to a mechanic
shop, Custom Rod Shop, in Hawaii.  (RT 2:42).  Grimm would
then go to Hawaii, pick up the drug, and distribute them
according to Appellant's instruction.  (RT 2:43).  Grimm
would also collect the money and make sure it got to L.A.
(RT 2:43).  Grimm hoped to reduce his sentence by testifying
for the government.  (RT 2:78).

In July of 2000, Earl Yamada was arrested, and he was
subsequently convicted and sentenced to 135 months in a
federal prison for conspiracy to distribute drugs.  (RT
2:90,91,143).

Yamada testified for the Government at Appellant's
trial as follows: He moved to Las Vegas from Hawaii around
1997.  (RT 2:91).  He met Appellant sometime in 1998.  (RT

6

2:92). About a year later, Appellant approached Yamada about drug trafficking. (RT 2:94-95). In the beginning, Yamada went to Los Angeles and brought packages back to Las Vegas. (RT 2:95-96). He eventually tested the drug, brought it back to Las Vegas, packaged it up in metal containers and shipped it to Hawaii. (RT 2:99-101). Yamada shipped the drug to Wahiawa Animal Hospital in Hawaii where his girlfriend worked. (RT 2:102,104). Yamada would then go to Hawaii, pick up the drug, and drop it off to whomever he was instructed to drop it off. (RT 2:105,106). Yamada would also pick up the drug proceeds and take a part of the proceeds to the drug source in Los Angeles and take the rest to Appellant in Las Vegas. (RT 2:106-108). Yamada hoped to reduce his sentence by testifying for the Government.

In August of 2001, Steve Olaes, a drug addict since seventeen (RT 6:142), called the FBI stating that he had information on Appellant. (RT 3:16). The FBI signed him up as an informant for the FBI. (RT 3:17). Steve Olaes worked for the FBI for nine subsequent months until the investigation ended with Appellant's arrest on April 2, 2002. (RT 3:18).

On August 30, 2001, Olaes contacted the FBI and claimed that he had met Appellant and that Appellant had given him two ounces (56 grams) of methamphetamine. (RT 3:20). The FBI received a Ziplock bag from Olaes, containing 48.334

7

grams of d-methamphetamine with 99% purity.  (RT 3:20;
4:134).  To confirm that the drug was from Appellant, the
FBI recorded a telephone conversation between Olaes and
Appellant.  (RT 3:20,24,30).  Stephanie Kumakana of the
Honolulu Police Department compared the fingerprints lifted
from the Ziplock bag and Appellant's fingerprints and found
positive identification to Appellant's left index
fingerprint.  (RT 4:142-143; 5:8,19).  On September 20,
2001, Olaes met with Appellant to pay $1,800.00 for the drug
he purchased on August 30, 2001.  (RT 3:31-38).

On October 2, 2001, Olaes called Appellant to arrange a
meeting with Appellant.  (RT 3:56,58).  Olaes was outfitted
with a recording device and a transmitter.  (RT 3:58).  The
FBI followed Olaes to Appellant's house.  (RT 3:59).  After
Olaes left the house, the FBI met with Olaes at a staging
area and received a Ziplock bag containing 53 grams of d-
methamphetamine hydrochloride with 99% purity.  (RT 3:60;
4:136).  A partial payment for the drug purchased on October
2, 2001 was made to Anthony Tabion by Olaes on October 4,
2001.  (RT 3:63-64, 69-70).

Olaes volunteered information to the FBI that he used
drugs throughout the investigation of Appellant and that he
took some methamphetamine from the evidence on several
occasions.  (RT 4:21-23,90).  Olaes also told the FBI that
he had personally used some of the sample drugs he received

from Tabion to show to potential buyers. (RT 4:61). The Government conceded that Olaes engaged in a numerous criminal conduct by committing a false statement to a federal official, being in possession of drug, obstruction of justice, distribution of drug, conspiracy, probation violation, and theft. (RT 4:87).

The Government paid Olaes a total sum of $17,794.74 for his expenses, such as living expenses, mortgage, utilities, and so forth, during his participation in the investigation of Appellant. (RT 4:27,48). The money was paid in cash. (RT 4:73). As a result of Olaes' work, Ralph Byrd, Anthony Tabion, and Ronnie Vasconcellos were also arrested.

Co-defendant Byrd had pleaded guilty to distribution and possession with intent to distribute methamphetamine and was in custody at the time of Appellant's trial. (RT 5:30,31). Byrd testified at Appellant's trial as follows: He met Appellant at high school. (RT 5:31). He and Appellant got involved in selling drugs in 1995 or 1996. (RT 5:32-34). Appellant was his source of methamphetamine. (RT 5:33). Appellant was living in the mainland during this time, and when he would come to his mother's house in Hawaii, Byrd would pick up the drug from Appellant's mother's house. (RT 5:34). In the early days, Grimm took the drug to Byrd. (RT 5:36). Byrd would sell the drug for cash and give the money to whomever Appellant sends to pick

9

up the money.  (RT 5:37-39).  After Grimm was arrested,
Yamada delivered the drug.  (RT 5:40-41).  Sometimes, both
Appellant and Yamada together delivered the drug to Byrd.
(RT 5:41).  Once, Byrd met with Appellant and Yamada in
Texas to deliver the money.  (RT 5:43,44).  He stopped
selling drugs and stopped doing business with Appellant
sometime in 1999.  (RT 5:47).  Byrd hoped to get a lower
sentence by testifying at Appellant's trial.  (RT 5:63).

    Co-defendant Tabion had pled guilty to conspiracy to
distribute drugs at the time of Appellant's trial and was
awaiting sentencing.  Tabion testified as follows at
Appellant's trial:  He met Appellant in 1987.  (RT 5:112).
He owns a body shop, the Custom Rod Shop, in Kapolei,
Hawaii.  (RT 5:112).  Appellant approached him in 1998 to
receive some packages for him at his business.  (RT 5:113).
Tabion refused at first, but he agreed to accept the
packages after he had borrowed some money from Appellant.
(RT 5:113-114).  Tabion did not know what was in the
packages until Appellant opened one of the packages and
showed him the drugs.  (RT 5:114,117,118).  He received
$2,000 from Appellant a box per delivery.  (RT 5:115).  Some
time later, he was offered to be paid by the pound.  (RT
5:115).  Grimm and Yamada used to pick up the packages.  (RT
5: 116).  Tabion also delivered $40,000 to Appellant in Las
Vegas.  (RT 5:119).  Appellant gave him phones which he

10

would use to talk to Appellant. (RT 5:126,127). Tabion was told that his sentence would be lowered if he testified at Appellant's trial. (RT 5:134-136).

William Johnstone testified that he met Appellant in 1999. (RT 5:143). Appellant purchased a 1992 Mercedes Benz from him for $35,000 for his girlfriend. (RT 5:144-146). Appellant also purchased from him two trucks and a Suburban at a price of $18,000 each. (RT 5:147-152).

The government also introduced evidence regarding Appellant's bank deposits and evidence to show that Appellant may have arranged deposits and transfers of money to avoid a reporting requirement. (RT 6:78-83).

Defense

Carl Gaumont, a general contractor, testified that Appellant worked for him a number of years. (RT 6:97). Appellant worked for him as a carpenter from 1990 to 1994, 1996, and 1998. (RT 6:98). Gaumont stated that Appellant was a very good carpenter. (Ibid).

Brian Thompson, a husband of Appellant's first cousin, testified that he saw Appellant's office in Atlanta where Appellant managed a recording business. (RT 6:107). He also saw Appellant in Las Vegas and saw one of the homes Appellant was building. (RT 6:107,108). Thompson visited

Appellant's warehouse in Las Vegas where Appellant had his tools.  (RT 6:109).

Olaes testified for the defense and admitted that when he approached the FBI to offer his cooperation, he owed Appellant $4,500 (RT 6:124), that he was getting paid to help the government (RT 6:136), that he stole from and smoked methamphetamine that he received from Appellant (RT 6:139,140), and that he was doing drugs once or twice a week during the investigation.  (RT 6:140).

## IV

## STANDARD OF REVIEW AND ARGUMENTS

A.  APPELLANT'S SENTENCE VIOLATED HIS SIXTH AMENDMENT RIGHT TO HAVE A JURY DETERMINE BEYOND A REASONABLE DOUBT THE FACTS WHICH RESULTED IN HIS ENHANCED SENTENCE.

Standard of Review

The district court's interpretation and application of the Sentencing Guidelines are reviewed de novo.  United States v. Garcia, 323 F.3d 1161, 1165 (9th Cir. 2003).  The court's application of the guidelines to the facts of a particular case is reviewed, however, for an abuse of discretion.  United States v. Alexander, 287 F.3d 811, 818 (9th Cir. 2002).  A claim that a defendant's sentence violates Apprendi v. New Jersey, 530 U.S. 466 (2000) is

reviewed de novo.  <u>United States v. Smith</u>, 282 F.3d 758, 771
(9th Cir. 2002).

<u>Argument</u>

In <u>Apprendi v. New Jersey</u>, <u>supra</u>, 530 U.S. at 490, the
United States Supreme Court held that "other than the fact
of a prior conviction, any fact that increases the penalty
for a crime beyond the prescribed statutory maximum must be
submitted to a jury and proved beyond a reasonable doubt."
In <u>Blakely v. Washington</u>, 124 S.Ct. 2531, 2537 (2004), the
Supreme Court held that "the 'statutory maximum' for
<u>Apprendi</u> purposes is the maximum sentence a judge may impose
solely on the basis of the facts reflected in the jury
verdict or admitted by the defendant." "In other words, the
relevant 'statutory maximum' is not the maximum sentence a
judge may impose after finding additional facts, but the
maximum he may impose *without* any additional findings.  When
a judge inflicts punishment that the jury's verdict alone
does not allow, the jury has not found all the facts 'which
the law makes essential to the punishment,' and the judge
exceeds his proper authority."  <u>Ibid</u>.

In <u>Blakely</u>, the Supreme Court addressed a provision of
Washington State's determinate sentencing law that allowed a
judge to impose a sentence above the standard statutory
sentencing range if the judge found, by a preponderance of
the evidence, that certain offense aggravating factors

13

existed that justified a sentence in excess of the "standard range." Id, at 2535.  When the trial court in Blakely utilized this authority to impose a 90 month sentence, even though the standard range for Blakely's offense was 49 to 53 months, the Supreme Court struck down the sentence, holding that the sentence could not survive the Sixth Amendment challenge because the offense aggravating factors were not found by the jury beyond a reasonable doubt.  Id. at 2537.

In United States v. Ameline, 376 F.3d 967, ___ (9th Cir. 2004), the Ninth Circuit held that Blakely applies to sentences imposed pursuant to the Federal Sentencing Guidelines.

In Ameline, the defendant pled guilty to knowingly conspiring to distribute methamphetamine.  His plea agreement did not contain an agreement as to a specific quantity of methamphetamine for purposes of sentencing, but rather left that determination to the district court at the time of sentencing.  Id. at ___.  At the change of plea hearing, the defendant disputed the government's offer of proof that he distributed one and a half kilograms of methamphetamine, but admitted that "some methamphetamine" was involved in his offense conduct.  Id. at ___.  The presentencing report submitted to the court attributed 1,079.3 grams of methamphetamine to the defendant.  The report also recommended a two level enhancement for

14

possession of a weapon on the basis of hearsay testimony by a confidential informant. Id. at ___. The defendant objected to both the amount of drug attributed to him in the report and the report's recommendation for the two level increase for the possession of a weapon. Id. at ___.

The Ninth Circuit in Ameline held that the district court plainly erred in finding by preponderance of the evidence that the defendant should be responsible for more amount of methamphetamine than admitted by the defendant and also in increasing the offense level by two levels for possession of a gun. Id., at ___.

In this case, the district court violated Appellant's Sixth Amendment right to a jury trial by enhancing his sentence based on the findings made by the court by preponderance of the evidence.

Prior to sentencing, the probation officer submitted a presentence report, setting Appellant's base offense level at 38. The PSR stated that Appellant was responsible for 101.871 grams net weight of "Ice"[2] which he distributed to the confidential informant on August 30, 2001 and October 2, 2001 and for 2,458.2 grams of "Ice" which Earl Yamada sent

---

[2]Note (C) to U.S.S.G. section 2D1.1(c) defines "Ice," for purposes of the guideline, as a mixture or substance containing d-methamphetamine hydrochloride of at least 80 percent purity. The base offense level under the Sentencing Guidelines varies depending on whether the drug was simply methamphetamine or "Ice." U.S.S.G. section 2D1.1(c).

to Fukumoto on July 21, 2000.  (PSR Para. 11,12,14,18,46).
The PSR also increased Appellant's base offense level by
four levels for a role adjustment.  (PSR Para. 51).

At sentencing, the district court adopted the factual
statements contained in the presentence report and found
that Appellant was responsible for 2,560.07 grams of "Ice."
(ER 201-204; RT 9/2/03 at 6-9).  The court also found that
Appellant was a leader, organizer and controller of the
conspiracy and held that a four level increase for his role
in the offense was appropriate.  (Id., at 205; Id., at 10).
After making these findings, the court sentenced Appellant
to 360 months in prison.  (ER 219; RT 9/2/03 at 24).

None of the above factual findings made by the district
court was found by the jury beyond a reasonable doubt in
this case.  The jury did not make a specific finding that
Appellant should be responsible for 2,458.2 grams that
Yamada sent to Fukumoto; nor did the jury make a finding
that the drug type involved in this case was "Ice."  Rather,
the jury simply found that Appellant was guilty of
conspiring to distribute and to possess with intent to
distribute 50 grams or more of methamphetamine and of
distributing 55 grams or more of methamphetamine.  (ER 135-
144, 179-186).[3]  Furthermore, the jury did not make a

---

[3]When Appellant submitted a special verdict form in order to
have the jury make a specific finding with respect to the
amount of drug he should be responsible for, the district

16

specific finding that Appellant was a leader, organizer and controller of the conspiracy.

Based on the verdicts rendered by the jury, Appellant is responsible at most for 105 grams of methamphetamine (55 grams for distribution and 50 grams for conspiracy if the conspiracy is determined to be based on some other activity). Under U.S.S.G. section 2D1.1(C)(7), the base offense level based on the drug amount of 50 grams but less than 200 grams of methamphetamine is 26, with the guideline sentencing range of 63 to 78 months. However, given the ten-year mandatory minimum of 21 U.S.C. section 841(b)(1)(A), the maximum sentence the court was authorized to impose is 120 months.

Because the district court sentenced Appellant beyond the statutory maximum based on the findings not made by the jury beyond a reasonable doubt, Appellant was denied his

---

court denied the request, stating, "I am going to go with the straight up guilty or not guilty, which means that they would have to find him – that he possessed at least 50 grams, and then, if he gets convicted, we will argue at sentencing about the amounts, and that's the appropriate time to do it. . . [A]nd then I will make a determination as to what the appropriate amount is. (RT 7:3-7; ER sp). The court subsequently instructed the jury that the government was required to prove for Count One that the conspiratorial agreement involved either the distribution or possession with intent to distribute "50 grams or more of methamphetamine" and for Counts Two and Three that Appellant distributed "5 grams or more of methamphetamine" and "50 grams or more of metheamphetamine," respectively. (RT 7:21-22, 24-25).

Sixth Amendment right to a jury trial. <u>Blakely v.</u>
<u>Washington</u>, 124 S.Ct. at 2537.[4]


B. THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO
RECONSIDER AND SHOULD HAVE SUPPRESSED THE EVIDENCE SEIZED
FROM APPELLANT'S RESIDENCE AND THE AUDIOTAPE RECORDINGS.

<u>Standard of Review</u>

Motions to suppress are reviewed de novo. <u>United</u>
<u>States v. Fernandez-Castillo</u>, 324 F.3d 1114, 1117 (9th Cir.
2003). The district court's factual findings are reviewed
for clear error. <u>Ibid</u>.

Whether to reconsider a suppression order at trial is
reviewed for abuse of discretion. <u>United States v.</u>
<u>Buffington</u>, 815 F.2d 1292, 1298 (9th Cir. 1987); <u>see also</u>
<u>United States v. Hobbs</u>, 31 F.3d 918, 923 (9th Cir. 1994)(the
district court's denial of a motion to reconsider and to
reopen a suppression hearing is reviewed for an abuse of
discretion.).

The issuance of a search warrant by a magistrate judge
is reviewed for clear error. <u>United States v. Celesine</u>, 324
F.3d 1095, 1100 (9th Cir. 2003). The question of whether a
false statement or omission is necessary to a finding of
probable cause is a mixed question of law and fact which is

---

[4]Appellant also challenges the fine of $50,000.00 imposed on
him as the amount was determined without any regard for his
ability to pay and also in violation of <u>Blakely</u>.

reviewed de novo.  United States v. Tham, 960 F.2d 1391,
1395 (9th Cir. 1992).  The district court's underlying
factual determination is reviewed for clear error.  Ibid.

Argument

A.  Motions to suppress evidence

On October 21, 2002, Appellant moved to suppress
evidence seized from Appellant's residence located at 3224
Ludlow Avenue in Las Vegas, Nevada ("Ludlow residence") and
also audiotape recordings made through Olaes' assistance.
(ER 1-64).

With respect to the evidence seized from the Ludlow
residence, Appellant contended that the evidence should be
suppressed because there was no probable cause to issue a
warrant authorizing the search and because the affidavit
supporting the search warrant contained deliberate omissions
bearing on Olaes' credibility in violation of Franks v.
Delaware, 438 U.S. 154 (1978).  Specifically, Appellant
argued that that the FBI Agent Gavin intentionally omitted
from his affidavit that Olaes 1) was a heavy narcotics user
during the investigation; 2) stole both money and drugs from
various people during the investigation; 3) lied to targets
of the investigation; 4) has a long history of drug use; 5)
was paid by the FBI for his role in the investigation; 6)
often made tape recordings without supervision and would
turn over the tapes to law enforcement at a later time; 7)

19

has been promised a percentage of the proceeds from the sale of the items seized from Appellant; 8) had an extensive 15-year criminal background; 9) suffers from a sleep disorder; and 10) had previously committed immigration fraud and made false statements on immigration documents.  (ER 11-15).

With respect to the audiotape recordings, Appellant contended that the recordings should be suppressed because Olaes did not give a valid consent to record the conversations of others as required under 18 U.S.C. section 2511(2)(C), because Olaes recorded the conversations in order to engage in criminal acts in violation of 18 U.S.C. section 2511(2)(d); and because the recordings were unreliable in that many of them were done without any law enforcement supervision.  (ER  53-63).

On November 18, 2002, the district court held a hearing on Appellant's motions to suppress and denied the motions. (ER 109; RT 11/18/02 at 45).  On November 26, 2002, the court issued a written order denying Appellant's motions to suppress.  (ER 112-124).

With respect to the suppression of the evidence seized from the Ludlow residence, the district court found that although Appellant's allegations place Olaes' credibility in question, Olaes' information was repeatedly proven to be reliable and that it was corroborated by independent FBI investigations and recorded conversations.  (ER 122).  The

district court held that in light of the reliability of the information Olaes provided and the fact that the information was heavily corroborated, the magistrate judge did not err in finding probable cause for the search warrant.   (Ibid).

With respect to the suppression of the audiotape recordings, the district court found that Olaes consented to the recording, that 18 U.S.C. section 2511(2)(d) does not apply in this situation, and that the recordings are not required to be monitored by law enforcement.   (ER 131-134).

The district court erred in denying Appellant's motions to suppress.

Under Franks v. Delaware, 438 U.S. at 156, evidence seized pursuant to a search warrant must be suppressed if the defendant can prove by a preponderance of the evidence that: (1) in the affidavit in support of the search warrant, the affiant included a statement which he knew was false or whose veracity he recklessly disregarded, and (2) the false statement was necessary to the magistrate judge's finding of probable cause.   See United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir. 1985).   The Ninth Circuit has extended Franks to include deliberate or reckless omissions.   United States v. Tham, 960 F.2d at 1395.

In this case, the omitted discrediting information about the informant was crucial to the magistrate judge's finding of probable cause.   The affiant states that he has

21

"relied upon significant amounts of information and cooperation from a cooperating witness." (ER 21). Had the fact that the informant has an extensive criminal record, was paid by the government substantially during the investigation, had been a long time drug user and was consistently using drugs during the investigation, and had often made tape recordings on his own which questions the reliability of the tape recordings, it would have significantly undermined the information included in the affidavit.

For example, the information provided by the informant on August 17, 2001 that Appellant was in Hawaii to deliver or to collect money for the drug was not independently corroborated by the FBI. (ER 25). Also, the informant's recitation of his meeting with Appellant on August 30, 2001 was not recorded or corroborated. (ER 26). The alleged September 5, 2001 telephone conversation between Appellant and the cooperating witness was also not recorded. (ER 26-27).

The informant's discrediting information was even more crucial because it appears that the affiant has not even listen to the tape recordings. Without stating that he has personally reviewed the conversations and without identifying who "those" are, the affiant states that "the general substance of the conversation has been set forth as

22

was understood by those who recorded or by those who monitored or reviewed the conversations." (ER 25; emphasis added). Therefore, it is unclear just how much of the information contained in the affidavit came from the informant. In light of the potentially vast amount of information provided by the cooperating witness, the Government's failure to include the discrediting information regarding the informant contributed to the issuance of the search warrant. The district court, therefore, erred in holding that the omission was not prejudicial.

With respect to the tape recordings, Section 2515 of Title 18 of the United States Code prohibits the evidentiary use of any illegally obtained recording, with two exceptions. The first exception is where a person "acting under color of law" permits the interception of an oral communication "where such person is . . . one of the parties to the conversation." 18 U.S.C. section 2511(2)(c). Under the second exception, use of tape recordings is permissible where one of the parties to a conversation gives "consent" to its interception, provided the consenting party has not intercepted the conversation "for the purpose of committing any criminal or tortuous act" violative of the Constitution, the laws of the United States or of any state. 18 U.S.C. section 2511(2)(d).

The substance of Appellant's motion regarding the tape recordings was that Olaes was not "acting under color of law" when he recorded his conversations with the targets of the FBI's investigation, and that his assent to make these recordings was a subterfuge whose "criminal and tortuous" objective was to steal drugs and money from the FBI's targets.   Contrary to the district court's finding, these allegations triggered the mechanisms of section 2511(2)(d) when read in conjunction with section 2511(2)(c).   <u>Deteresa v. ABC Companies, inc.</u>, 121 F.3d 460, 467 (9th Cir. 1997); <u>see also</u>, <u>Sussman v. Am Broad. Companies</u>, 186 F.3d 1200, 1203 (9th Cir. 1999)(where interception of an oral communication is legal but is done for the purpose of facilitating some impropriety, the provisions of section 2511 apply).

The district court was swayed by the argument that the FBI was "acting under color of law" when it intercepted (through Olaes) the conversations contained in the contested tape recordings, and that the FBI's motives were not "criminal or tortuous."  This argument would have force in a proper factual context, but the legitimacy of the FBI's investigation is of no moment here.  The FBI's legitimate purpose cannot, and indeed does not, operate to sanitize Olaes' illicit purpose.  It is Olaes' purpose, not the FBI's that was at issue, and since Olaes had his own criminal

purpose in participating in the recording, he was not acting under color of law, and the district court erred in holding that section 2511(d)(2) was inapplicable.

On the other hand, if Olaes is considered acting under color of law because he was an undercover cooperating witness in the Government's investigation, his illicit purpose for intercepting conversations (to steal drugs and money) must be imputed to the Government or assessed without consideration of the FBI's legitimate purpose. Under either scenario, the audiotape recordings should have been suppressed as the conversations contained in them were intercepted in violation of sections 2511(2)(c) and (d). Olaes' illicit purpose is not legitimized by conflating it with the FBI's, which is exactly what the district court did.

B.   Motion for reconsideration.

On December 31, 2002, Appellant filed a motion requesting the district court to reconsider its November 26, 2002 order denying his motions to suppress. (ER 145). In filing his motion for reconsideration, Appellant relied on a letter from the Government, dated December 17, 2002, that contained newly discovered evidence supporting the claims he alleged at the November 18, 2002 evidentiary hearing. (ER 160).

25

The Government's letter substantiated Appellant's allegations of Olaes' illegalities. The letter confirmed that Olaes was on a felony pre-trial release during a substantial part of his participation in the investigation and was paid $11,000.00 by the FBI for his participation in the investigation plus additional $6,779.00 for expenses. The Government's letter also revealed that Olaes suffered from narcolepsy, and the he used "approximately $20-a-week worth of methamphetamine" throughout his participation in the investigation. Most importantly, the letter confirmed that Olaes opened and stole drugs from drug-evidence packages for his personal consumption and that he lied to the investigators.

On January 23, 2003, the district court denied Appellant's motion for reconsideration without a hearing. In its written order denying the motion, the district court found that the new evidence before it was still "inopposite of the issue of whether [Olaes'] information was unreliable to the extent that it undermined the magistrate's finding of probable cause" to issue the search warrant. (ER 176). The court also found that there was "still no evidence that the Government intentionally misrepresented the evidence available to it" when it submitted its affidavit to the magistrate. (Ibid).

With respect to the tape recordings, the court found that Olaes' "potentially faulty credibility" did not alter the fact that the information he provided was "highly reliable and useful to the Government." (ER 177). The court reasoned that the tape recordings were admissible because Olaes was merely a "host" in the Government's "recording of all conversations between Olaes and the various targeted persons." (Ibid).

The record belies the court's finding that there was no evidence that the Government intentionally misrepresented the evidence at the time it submitted its search warrant affidavit. The Government already knew that it had made substantial payment to the informant during the investigation. Also, the Government already had or should have had information regarding the informant's criminal history and the fact that he had been a drug user. Clearly, these facts which question the informant's credibility should have been included in the affidavit. Furthermore, the December 17, 2002 letter confirmed that the informant is not trustworthy in that he lied to the investigators, stole drug evidence, and used and dealt drugs during the investigation. The letter further demonstrated that the informant was recording the conversations for "criminal or tortuous" purposes.

Given that Appellant presented ample evidence of the informant's untrustworthiness and his criminal purpose in cooperating with the Government in his initial motions to suppress and also in his motion for reconsideration, the district court erred in denying Appellant's motion for reconsideration of the denial of the motions to suppress.

**v**

## CONCLUSION

For the foregoing reasons, petitioner respectfully urges this Court to reverse the district court's judgment.

Dated:    September 3, 2004                    Respectfully submitted,

Sung B. Park, Esq.

Attorney for Appellant
Michael Schulze

28

## CERTIFICATE OF RELATED CASES

Counsel for the appellant hereby certifies that there are no cases related to this appeal known to him pending in this Court at this time.

Dated:    September 3, 2004          Respectfully submitted,

Sung B. Park, Esq.

Attorney for Appellant
Michael Schulze

**CERTIFICATE OF COMPLIANCE PURSUANT TO FED.R.APP.P.
32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 99-56757**

Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit
Rule 32-1, the attached opening brief is **not** subject to the
type-volume limitations of Fed.R.App.P. 32(a)(7)(B) because
this brief complies with Fed.R.App.P. 32(a)(1)-(7) and is a
principal brief of no more than 30 pages.

Dated:   September 3, 2004         Respectfully submitted,

                                   Sung B. Park, Esq.

                                   Attorney for Appellant
                                   Michael Schulze

## CERTIFICATE OF SERVICE

I, the undersigned, declare: that I am a citizen of the United States and a resident of Los Angeles County and employed in Van Nuys, California; that my business address is 17620 Sherman Way, Suite 211, Van Nuys, California, 91406; that I am over the age of eighteen years; that I am not a party to the above-entitled action; the service by mail was made to:

Kenneth Sorenson
Assistant United States Attorney
300 Ala Moana Blvd., #6-100
Honolulu, HI  96850

by placing in the United States Mail at Los Angeles, California on September 7, 2004:

TWO COPIES OF APPELLANT'S OPENING BRIEF AND ONE COPY OF EXCERPTS OF RECORD

This certificate is executed on the date shown below, at Van Nuys, California.

Sung B. Park

DATE OF EXECUTION:   September 7, 2004

31