IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00090-01 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL F. SCHULZE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER AFFIRMING SENTENCE

On May 25, 2007, the Court held a hearing regarding the limited

remand from the Ninth Circuit.  Kenneth M. Sorenson, Assistant U.S. Attorney,

appeared at the hearing on behalf of Plaintiff; Michael F. Schulze, appeared at the

hearing pro se, along with his standby counsel Joseph R. Mottl, Esq.

In February 2003, defendant was convicted by a jury of conspiracy to

distribute and possess with intent to distribute 50 grams or more of

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1 of the

Second Superseding Indictment); distribution of 5 grams or more of

methamphetamine in violation of 21 U.S.C §§ 841(a)(1) (Count 2 of the Second

Superseding Indictment); distribution of 50 grams or more of methamphetamine, in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 3 of the Second

Superseding Indictment) and Criminal Forfeiture, in violation of 21 U.S.C. § 853

(Count 4 of the Second Superseding Indictment).

On September 2, 2003, Defendant was sentenced to 360 months

imprisonment as to Counts 1, 2, and 3, all counts to be served concurrently.

Defendant was ordered to serve a 5-year term of supervised release as to each

count, all terms to be served concurrently.  Defendant was also ordered to pay a

fine of $50,000 immediately and a special assessment of $100 as to each count, for

a total of $300.  The term of his sentence was based upon his criminal history

category level one and a total offense level of 42.  The base offense level was 38.

Defendant received a four-level increase for being the organizer or leader of the

following five sub-distributors, Donald Grimm, Earl Yamada, Susan Fukumoto,

Anthony Tabion, and Ralph Byrd.

The base offense level was reached in part by finding that Defendant

was accountable for conspiring to possess with intent to distribute and distribute

2,560 grams of methamphetamine.  This amount was attributed to Defendant

because the government had seized 2,458.2 grams of methamphetamine that were

in ziplock bags, which were in three paint cans sent via Federal Express on July 21,

2000, to Susan Fukumoto, another defendant.  The methamphetamine was seized

from Susan Fukumoto's place of business.  In a voluntary statement, Fukumoto

indicated that the methamphetamine recovered from her place of business had been

supplied by her boyfriend, yet another defendant, Earl Yamada, of Las Vegas,

Nevada.  Fukumoto indicated that she had been regularly receiving similar

packages from Yamada on a monthly basis since July 1999.

After being arrested, Yamada confirmed that he sent from Las Vegas

to Fukumoto pound quantities of methamphetamine concealed in paint cans since

July 1999.  Yamada identified Defendant as a major methamphetamine trafficker

who resided in Las Vegas, Nevada, and as the sole source of the methamphetamine

that he sent to Fukumoto.  Yamada stated that  Defendant was involved in sending

multi-pound quantities of methamphetamine from Las Vegas to Honolulu via

Federal Express and that he was one of Defendant's sub-distributors, and that he

sent the packages to Fukumoto on Defendant's instructions.  He further stated that

the methamphetamine was concealed inside paint cans and that the

methamphetamine seized from Fukumoto's place of business had been supplied to

him by Defendant.  In addition, other sub-distributers, Anthony Tabion and Donald

Grimm, corroborated Yamada's statement that from 1998 or 1999 to April 2002

Defendant shipped pound quantities of methamphetamine to Hawaii in paint cans.

Defendant, then represented by counsel, filed a sentencing statement objecting to his offense level.  Defendant argued that there was no physical evidence to connect him to the methamphetamine recovered from Susan Fukumoto's place of business and that Yamada had an incentive to lie in exchange for a reduction of his own sentence.

In addition to the information provided during the investigation of this case discussed above, at trial, Yamada testified that in July 2000, Defendant instructed him to unload four pounds of methamphetamie, which he did for approximately $30,000.  Yamada had picked up these four pounds of methamphetamine in Los Angeles, just as he had done several times in the past, at Defendant's behest.  He would then bring the drugs back to Las Vegas and ship them to Fukumoto.  He would fly to Honolulu and begin the distribution process. Once he had the money he would fly right back to Las Vegas and give the money to Defendant.  A few days after the incident with the four pounds of methamphetamine, Yamada picked up approximately six pounds of methamphetamine, packed it in paint cans, as Defendant had instructed him, and sent it via Federal Express to Fukumoto's workplace.  (TT Vol. 2 at 90-101, 115-21.)  Yamada was subsequently arrested.  Defendant hired local attorney Michael Green to represent Yamada.

4

Grimm testified at trial that he had been arrested and convicted for distributing methamphetamine in 1999, and that Defendant was his source for the drugs. Grimm further testified that Defendant approached him about distributing drugs, and that he and Defendant would pick up the drugs in Los Angeles and deliver them to Las Vegas, and then ship the drugs in paint cans to Hawaii. (TT Vol. 2 at 37-40.) Grimm further testified that Defendant hired Yamada to take his place before Grimm was arrested. (Id. at 56.)

Other sub-distributer and defendant, Ralph Byrd, testified that he had seen Defendant and Yamada dealing drugs or delivering drugs together too many times to count and it could have been as many as 50 times. (TT Vol. 5 at 41-42.) Sub-distributor Tabion also testified that he met Yamada through Defendant and that Yamada was one of Defendant's friends. He further testified that Defendant opened paint cans in front of him and they had methamphetamine inside of them. (TT Vol. 5 at 116-18.)

Based on the statements of Fukumoto, Yamada, Grimm, and Tabion, this Court found that it was established by a preponderance of the evidence that the 2,000 plus grams of methamphetamine seized on July 21, 2000 from Fukumoto's place of business was sent by or at the direction of Defendant as part of the same course of conduct or common scheme or plan as the offense of conviction,

pursuant to U.S.S.G. §§ 1B1.3(a)(1).  This Court specifically noted that it found, as

did the jury, that Yamada was credible.

 Defendant appealed his conviction and sentence.  Defendant argued to

the Ninth Circuit that this Court erred by enhancing his sentence beyond the range

established by the jury's verdict.  On November 28, 2005, the Ninth Circuit

affirmed Defendant's conviction and remanded his sentence.  The Ninth Circuit

noted that this Court had treated the Sentencing Guidelines as mandatory, and that

the Supreme Court's subsequent ruling in United States v. Booker, 125 S. Ct. 738

(2005) impacted this Court's factual findings and guideline treatment.  Thus, the

Ninth Circuit found that

> [i]n imposing Schulze's sentence, the district court made
> factual findings concerning the drug weight and Schulze's
> role as an organizer of criminal activity and, treating the
> Sentencing Guidelines as mandatory, used these findings
> to increase Schulze's sentence beyond that justified by
> the jury's verdict.  Because the record is insufficient to
> show whether the judge would have given Schulze a
> materially different sentence had he known that the
> Sentencing Guidelines were advisory, Schulze is entitled
> to a limited remand pursuant to United States v. Ameline,
> 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc).

(11/28/05 Memorandum at 3.)

 On March 16, 2006, Defendant filed a Motion for New Trial.  On July

20, 2006, Defendant began representing himself.  This Court has denied

6

Defendant's motion for new trial and he has appealed that order to the Ninth

Circuit.  Defendant is representing himself on appeal and the appeal is still

pending.  Defendant also has pending with this Court a Motion to Dismiss

Indictment, which has been taken under advisement.

      After reviewing the evidence, this Court finds that had it known that

the guidelines were advisory, rather than mandatory, at the time of sentencing, it

would have imposed the same sentence.  The Court felt at the time of his original

sentencing that the sentence was justified and reasonable in light of the

Defendant's extensive drug activity and the Court continues to feel so today.  This

Court notes that the Ninth Circuit has specifically ordered only a limited remand in

this case for this Court to make the determination set forth above.  Indeed, the

Ameline case provides:

> If the district court judge determines that the sentence
> imposed would not have differed materially had he been
> aware that the Guidelines were advisory, the district court
> judge should place on the record a decision not to
> resentence, with an appropriate explanation.  A party
> wishing to appeal the order may file a notice of appeal as
> provided in Fed. R. App. P. 4(b).
>
> If the district court determines that the sentence imposed
> would have differed materially if the district court judge
> were applying the Guidelines as advisory rather than
> mandatory, the error was prejudicial, and the failure to
> notice the error would seriously affect the integrity,

> fairness and public reputation of the proceedings.  In
> such a case, the original sentence will be vacated and the
> district court will resentence with the defendant present.

United States v. Ameline, 409 F.3d 1073, 1084-85 (9th Cir. 2005).  The Ninth

Circuit did not vacate Defendant's sentence and remand for a full resentencing.

This Court notes confusion that may have been caused by its docketing,

calendaring, or previous orders in this case that may have led Defendant to believe

that he was entitled to a full re-sentencing.  It is quite clear to this Court now that

the Ninth Circuit did not order a resentencing, but instead only made a limited

remand for this Court to determine whether it would have imposed the same

sentence.

For the reasons stated above, the Court AFFIRMS Defendant's

sentence.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 30, 2007.



_____
David Alan Ezra
United States District Judge

United States of America vs. Michael F. Schulze, CR. No. 02-00090 DAE;
ORDER AFFIRMING SENTENCE