MICHAEL F. SCHULZE
Register No. 36817-048
Federal Detention Center - Honolulu
Post Office Box 30080
Honolulu, Hawaii 96820

Defendant, pro se

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 30 2007

at __ o'clock and __ min. __ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>    )<br>        Plaintiff,  )<br>    )<br>    vs.  )<br>    )<br>MICHAEL F. SCHULZE,  )<br>    )<br>        Defendant.  )<br>_____ ) | CR. NO. 02-00090-DAE<br><br>**REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS INDICTMENT; EXHIBIT "A"; CERTIFICATE OF SERVICE** |

REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO DISMISS INDICTMENT

The basis upon which this Court denied Schulze's motion for a new trial was over the issue of whether information disclosed during trial was "newly discovered" for the purposes of satisfying Rule 33 requirements. It was not dismissed for lack of merit.

The Ninth Circuit did not find the recordings lawful, the panel simply stated that the District Court did not error in finding that they were made under color of law based on the Government's representation that Olaes was acting under the direction of the Government. The issue here is whether the Government concealed information from the defense **pre-trial** that would have caused suppression of the bulk of the evidence in violation of Brady. The Brady issue raised here was not previously decided.

The Government here violates the doctrine of judicial estoppel. On appeal, Schulze specifically preserved a claim of error by objecting to

sentencing enhancements applied in violation of the Sixth Amendment and the Government agreed. The Ninth Circuit has clearly defined that when a defendant properly preserved a Booker error on appeal he is entitled to a **full resentencing**. See United States v. Lence, 466 F.3d 721 (9th Cir. 2006). The Court in Lence specifically held that the limited remand in "Ameline does not apply to preserved claims of Booker error". Lence, 466 F.3d at 724.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position and then later seeking an advantage by taking a clearly inconsistent position. Hamelton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). The doctrine is "applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or prior one." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)(internal quotation marks omitted).

Here, although the Government conceded to Schulze's Sixth Amendment Booker error preserved on appeal, which should have resulted in a **full resentencing**, the Government now takes the other position that Schulze did not preserve a Booker issue and is only entitled to a limited remand pursuant to Ameline III. This is inconsistent with its earlier concession on appeal. And the Government now attempts to prevent this Court from reviewing a motion under the jurisdiction of a full remand by insisting that Schulze is only under a limited remand.

Furthermore, the Government ignores the fact that Schulze moved this Court on January 11, 2007, to vacate his sentence pursuant to the authority granted in Ameline based on the Ninth Circuit's holding in Lence, and after reviewing the situation this Court rendered his motion moot, finding that he was entitled to a full remand. See this Court's Order of

January 26, 2007, page 2, document #300.

In regards to Schulze's motion for a new trial being "disposed of and is currently on appeal", on May 22, 2007, Schulze filed a motion in the Ninth Circuit requesting a stay of that appeal pending the outcome of the matter now before this Court, as a favorable decision here would render the issue on appeal moot.

The position asserted that Maglasang testified during trial that Olaes was acting under FBI authority in conducting all investigative activities with Schulze is inconsistent with trial testimony, and it is the very core of the issue here. A simple review of Exhibit "E" of Schulze's exhibits will demonstrate that Olaes was not under the authority of FBI. Maglasang was specifically asked whether "by the end of August of 2001, had you completed your process of signing [Olaes] up?" Agent Maglasang said "No", because they had to "get approval from the state side to actually have him ... undertak[e] criminal activity under our direction." (See Exhibit "E" of supporting exhibits for motion to dismiss indictment).

Maglasang's testimony clearly indicates **by the end of August of 2001, the FBI did not have authorization to allow Olaes to conduct criminal activity.** However, Olaes did conduct criminal activity on August 30, 2001, which formed the basis of Count 2 of the Second Superceding Indictment in this case. According to Maglasang's sworn testimony, Olaes was not acting under her or any FBI Agent's direction untill they received permission, which, did not occur "by the end of August of 2001".

With respect to the claim that "[A]ll activities with Schulze were 'live' monitored by FBI agents, and Olaes' activities with Schulze were under the surveillance of multiple FBI agents during the investigative acts that occurred both before and after October 5, 200[1]." This statement is misleading as no illegal activities were ever monitored, and

the activities under surveillance occurred during social setting which did not involve any criminal acts. Furthermore, the only two alleged criminal acts believed to have involved Schulze occurred on August 30th and October 2nd, 2001. And these respectively formed the basis of Counts 2 and 3 which were the predicate acts to support the charge in Count 1. The simple fact of the matter is that there was no surveillance or "live" monitored conversations conducted on either August 30th or October 2nd, 2001.

The Government's "color of law" argument is misplaced because it continues to assert the very fact that Schulze is challenging here. Olaes was not acting under the Government's direction because Maglasang testified Olaes was on probation and she needed to get authorization, which, again, she did not do "by the end of August of 2001". This means at the very least that evidence obtained on August 30, 2001, should have been suppressed as a matter of law, but the Prosecutor withheld the information from the defense, which, violates the doctrine established under Brady.

The declaration from Maglasang attached to the Government's opposition is nothing more than a last-ditch effort to save their case from becoming justifiably dismissed. Maglasang's declaration is highly suspicious in form as it comes dangerously close to proving perjury.

To begin with, her declared statement is inconsistent to that made while under oath at Schulze's trail, where here she states to have received approval to use Olaes on the very day (August 30th) that had she not, this Court would find required suppression, where during trial she swore under oath that she had not received approval by the end of August.

Second, no supporting documents from her "electronic" communication, Officer Dwight Sato, or Harry Yoshida, have been provided to confirm that Olaes was authorized on August 30, 2001, to conduct drug transactions. There is nothing more than this newly declared statement.

-4-

Third, the Unlawful Activity Authorization forms and other documents were drafted by Maglasang herself (see Government Exhibit "B") and do not prove that she received approval from the State of Hawaii to use Olaes on August 30th, 2001, to conduct drug transactions. Furthermore, in light of the fact that she has manufactured other evidence in this matter, it is more than likely that she manufactured these documents now submitted.

Fourth, the attached documents were not previously disclosed to the defense and they are inconsistent with those in which were provided 5 years ago and the trial testimony given by Maglasang. For example, at trial Maglasang testified that Olaes signed the "Unlawful Activity Authorization" forms on "August 17, 2001, October 24, 2001, and January 18, 2002", which were good for a 90-day period. (Trial Record, day 4, page 59). Here, her new declaration states that Olaes' "initial form, designated an 'unlawful Activity Authorization' [signed on August 31, 2001] was good for 90 days and is included with this declaration." (Declaration of Maglasang, at 2). However, none of the previously released chronologically numbered pages of Olaes' Unlawful Activity Authorization forms that reveal the dates: August 17, 2001, October 24, 2001, and January 18, 2002, are consistent with those suddenly produced 5 years later and now claimed to have existed all along.

Fifth, the issue of Olaes' "designation as a cooperating source" is of no import. The issue is not whether Olaes was a cooperating source, the question is whether or not Maglasang received approval to use Olaes to conduct drug transaction, and if so, when. And these questions cannot be answered by the very agent who has manufactured evidence in this case. At the very least, this Court should request the Government to produce documents from the source, the States of Hawaii, who Maglasang claims gave her permission, and conduct an in camera review to verify once and for all whether Maglasang indeed received approval on August 30, 2001, to use Olaes.

With respect to Maglasang's manufacturing of evidence in this matter. The Government claims that Schulze offers no factual support. The Government here choses to ignore the evidence offered in Schulze's exhibits which provide a fraction of the worksheets that exist in this case, which, plainly show Maglasang double and triple-counted loans and transfers to which FBI Agent, Conrad Ho testified accurately reflected the amount of money claimed to have been involved in this case. What's more, even the Prosecutor elected not to submit Government Exhibit 91 following direct examination of Ho, where it became obvious that the information provided had been grossly inflated. (See Trial Transcript, volume 6, page 51). In addition, during cross-examination by Defense Counsel, Mr. Shawn Perez, Agent Ho conceded that the figures contained in the Government's Exhibits were not accurate and did, in fact, contain double and triple-counted figures. See attached Affidavit of Shawn R. Perez, marked Exhibit "A".

The simple fact of the matter is that Maglasang manufactured documents that Agent Ho used to create exhibits that the Prosecutor not only introduced in Schulze's trial, but continues today to assert proves that Schulze "deposited over $514,000 into his ... account", "$221,000" of which was "in currency". These statements are based on manufactured evidence created by Maglasang.

To briefly address the Government's statement that Schulze "reported no income for tax years 1999, 2000, 2001 or 2002", the simple truth is, which the Government is fully aware of, Schulze filed for tax extentions through his accountant in Las Vegas, Nevada. In addition, Schulze was arrested in early 2002 and no income had been earned since. Further, no allegations of tax evasion have been made in this case, yet the Government continues to allude as if it were so.

It is the Government's claims that are erroneous and unfounded.

The testimony of Maglasang clearly indicates that by the end of August of 2001, she had not completed the process of signing Olaes up because she had yet to receive approval to allow him to conduct drug transactions. The new claim made now that she received approval on August 30, 2001, is inconsistent with her original sworn testimony. Moreover, there is not a scintilla of evidence to corroborate the new-claimed position that the State of Hawaii had given its approval on August 30, 2001. Nowhere in the context of this case had any such information been provided. The documents now produced are so fresh and new that they reek of something foul.

It is for these reasons, and for those proven by way of exhibition, that this Honorable Court should invoke its supervisory powers and reverse Schulze's conviction and dismiss his Indictment with prejudice.

DATED: Honolulu, Hawaii, May 26, 2007.

Respectfully submitted,

_____
MICHAEL F. SCHULZE
Defendant, pro se