IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHAEL F. SCHULZE, | ) | CV. NO. 11-00188 DAE-RLP |
| | ) | CR. NO. 02-00090 DAE |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PETITIONER'S § 2255 MOTION AND (2) DENYING
A CERTIFICATE OF APPEALABILITY

After reviewing Petitioner's Motion and the supporting and opposing

memoranda, the Court **DENIES** Petitioner's 28 U.S.C. § 2255 Motion to Vacate,

Set Aside, or Correct Sentence.  (Doc. # 430.)  Further, since Petitioner has not

made a substantial showing of the denial of a constitutional right, the Court also

**DENIES** Petitioner a Certificate of Appealability.

BACKGROUND

On December 27, 2002, a Grand Jury returned a Second Superseding

Indictment ("SSI") charging Petitioner Michael F. Schulze ("Petitioner") with the

following:

Count One: Conspiracy to distribute and possess with intent to distribute 50
grams or more of methamphetamine, its salts, isomers, and salts of its

isomers in violation of 21 U.S.C. §846.

Count Two: Knowing and intentional distribution of 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

Count Three: Knowing and intentional distribution of 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

Count Four: Criminal forfeiture allegations pursuant to 21 U.S.C. § 853.

(Doc. # 111.)

On October 21, 2002, Petitioner moved to suppress tape recorded evidence of his conversations with others, which were made with the help of confidential informant, Steven Olaes.  (Doc. # 74.)  On that same day, Petitioner also moved to suppress evidence seized from his residence.  (Doc. # 75.)  Both Motions were denied on November 26, 2002.  (Docs. ## 97, 99.)  On December 31, 2002, Petitioner filed a Motion for Reconsideration of the Orders denying his Motions to Suppress.  (Doc. # 112.)  On January 23, 2003, the Court denied Petitioner's Motion for Reconsideration.  (Doc. # 128.)  The Ninth Circuit affirmed the Court's denial of that Motion.  See United States v. Schulze, 156 Fed. Appx. 38 (9th Cir. 2005).

A jury trial began on January 30, 2003.  (Doc. # 134.)  After eight days of trial, on February 11, 2003, the Jury found Petitioner guilty on Counts One,

Two, and Three. (Doc. # 148.) On February 12, 2003, the Jury returned a special

verdict finding that the property identified in Count Four either constituted or was

derived from proceeds that Petitioner obtained as a result of the conspiracy charged

in Count One. (Doc.# 146–47.) After the Court granted the Government's motion

to remove two of the items in Court Four, the Jury determined that all the

remaining items were subject to forfeiture. (Id.)

On September 2, 2003, Petitioner was sentenced to 360 months

imprisonment as to each of Counts One through Three, all counts to run

concurrently. (Doc. # 171.) Petitioner was ordered to serve a five-year term of

supervised release as to each of Counts One through Three, all terms to run

concurrently. (Id.) Petitioner was also ordered to pay a fine of $50,000. (Id.) The

sentence was based on a criminal history category level of one and total offense

level of 42. (Doc. # 347.) Petitioner received a four-level increase from the base

offense level of 38 for being the organizer or leader of the following five sub-

distributors: Donald Grimm, Earl Yamada, Susan Fukumoto, Anthony Tabion, and

Ralph Byrd. (Id.)

On September 4, 2003, Petitioner appealed his conviction and

sentence. (Doc. # 172.) Petitioner advanced the following arguments on appeal:

(1) Schulze's sentence violated his Sixth Amendment right to a jury trial

because the Court sentenced him beyond the statutory maximum based on findings not made by a jury beyond a reasonable doubt as required under Apprendi v. New Jersey, 530 U.S. 466 (2000).

(2) The Government intentionally or recklessly omitted material information about confidential informant Steven Olaes from its affidavit in support of a search warrant for Schulze's residence, and therefore the evidence seized from his residence should have been suppressed.

(3) Confidential informant Steven Olaes was not acting under color of law when he recorded the conversations with the targets of the FBI's investigation and therefore the audiotapes should have been suppressed.

(See Doc. # 457 at 180–212.)  On November 28, 2005, the Ninth Circuit affirmed

Petitioner's conviction but remanded his sentence in light of the Supreme Court's

intervening decision in Booker.  Schulze, 156 Fed. Appx. at 39–40.  Pursuant to

United States v. Ameline, 409 F.3d 1073, 1084–85 (9th Cir. 2005) (en banc), the

Ninth Circuit ordered a limited remand for the purpose of ascertaining whether the

sentence imposed by this Court would have been materially different had this

Court known that the United States Sentencing Guidelines were advisory.  Id. at

40.  On remand, this Court determined that it would have imposed the same

sentence had it known that the guidelines were advisory and thus affirmed

Petitioner's sentence.  (Doc. # 347.)

On March 16, 2006, Petitioner filed a Motion for New Trial based on

newly discovered evidence.  (Doc. # 245.)  Petitioner claimed that previously

4

undisclosed evidence regarding Olaes' probationary status during part of the FBI's investigation warranted a new trial. (Id.) On October 4, 2006, this Court denied the Motion for New Trial. (Doc. # 282.) The Ninth Circuit affirmed the Court's denial of that Motion. See United States v. Schulze, 346 Fed. Appx. 268, 269 (9th Cir. 2009).

On May 10, 2007, Petitioner, proceeding pro se, filed a Motion to Reverse Conviction and Dismiss Indictment on the ground that the government engaged in various forms of misconduct prior to and during his trial. (Doc. # 328.) On July 25, 2007, this Court denied the motion on the ground that Petitioner had waived his new arguments regarding government misconduct because he could have raised them in his earlier appeal, but did not do so. (Doc. # 362.) The Court's decision was affirmed on appeal. See Schulze, 346 Fed. Appx. at 269.

On March 21, 2011, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion"). ("Mot.," Doc. # 430.) On April 8, 2011, Petitioner requested leave to supplement his Motion in order to add an additional subclaim that was inadvertently omitted. (Doc. # 438.) The Court granted that request on April 22, 2011. On June 24, 2011, the Government filed a response. ("Resp.," Doc. # 455.)

## STANDARD OF REVIEW

The Court's review of a petitioner's motion is provided for by statute:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The scope of collateral attack of a sentence under § 2255 is

limited and does not encompass all claimed errors in conviction and sentencing.

United States v. Addonizio, 442 U.S. 178, 185 (1979). Under § 2255, the court

shall hold an evidentiary hearing on a petitioner's motion "unless the files and

records of the case conclusively show that the prisoner is entitled to no relief." 28

U.S.C. § 2255(b). The standard for holding an evidentiary hearing is whether the

petitioner has made specific factual allegations that, if true, state a claim on which

relief could be granted. United States v. Schaflander, 743 F.2d 714, 717 (9th Cir.

1984).

An evidentiary hearing is not required if the petitioner's allegations,

"when viewed against the record, do not state a claim for relief or are so palpably

incredible or patently frivolous as to warrant summary dismissal." United States.

6

v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).  Mere conclusory statements, without supporting evidence, are not sufficient to require a hearing.  United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).  Although the moving party is not required to detail his evidence, he must "make factual allegations" to establish his right to a hearing.  United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).  The Court has discretion to ascertain whether a claim is substantial before granting a full evidentiary hearing.  Sanders v. United States, 373 U.S. 1, 18 (1963).  That discretion is limited, however, when a petitioner claims that he or she instructed his or her attorney to file an appeal and the attorney failed to do so.  United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005).  In such situations, evidentiary hearings generally are necessary to determine whether the petitioner, in fact, made such an express instruction.  See id.

There are also some general rules regarding what kinds of claims can and cannot be raised in a § 2255 petition.  For example, a § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.   As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161 (9th Cir. 1970), "[h]aving raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."  Id. at 162; see also United States v. Berry, 624 F.3d 1031, 1038 (9th Cir.

2010) ("[T]he [Supreme Court] has cautioned that § 2255 may not be used as a chance at a second appeal."); United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.").

Even when a § 2255 petitioner has not raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error.  See United States v. Frady, 456 U.S. 152, 167–68 (1982) ("[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."); accord Davis v. United States, 411 U.S. 233, 242 (1973); United States v. Johnson, 988 F.3d 941, 945 (9th Cir. 1993) ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error."); Hammond v. United States, 408 F.2d 481, 483 (9th Cir. 1969) ("Section 2255 may not be invoked to relitigate questions

which were or should have been raised on a direct appeal from the judgment of conviction.").  To show "actual prejudice," a § 2255 petitioner "must shoulder the burden of showing, not merely that the errors at [her] trial created a possibility of prejudice, but that they worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.

DISCUSSION

Petitioner raises four general grounds for relief in the instant Motion: (1) prosecutorial misconduct, (2) ineffective assistance of counsel, (3) constructive amendment of the indictment, and (4) unlawful use of surreptitiously recorded statements.

I.      Alleged Prosecutorial Misconduct

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756,

765 (1987) (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)).  Under

this standard, a petitioner must show that there exists a "reasonable probability that

the result of the proceeding would have been different" absent the alleged

impropriety.  See Hein v. Sullivan, 601 F.3d 897, 905 n.4 (9th Cir. 2010); see also

United States v. Amlani, 111 F.3d 705, 713 (9th Cir. 1997).

     A.    Opening Statements

     In evaluating allegations of prosecutorial misconduct based on

improper remarks, Darden instructs that "it 'is not enough that the prosecutors'

remarks were undesirable or even universally condemned[,]' [t]he relevant

question is whether the prosecutors' comments 'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'" 477 U.S.

at 181 (citations omitted).  In other words, under Darden, "the first issue is whether

the prosecutor's remarks were improper and, if so, whether they infected the trial

with unfairness."  Tak Sun Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).

     Petitioner argues that the prosecution made several improper and

prejudicial remarks in its opening statement.  (Mot. at 3–6.)  First, Petitioner claims

that the prosecution's references to Petitioner's "money-laundering scheme"

involving his family and his companies, Innovative Investments and New Vision

Development Corporation, were improper because there was no evidence to

support those statements.  (Mot. at 3–4; TR 1 at 114–15.)[1]  According to

Petitioner, since the prosecution knew there was no direct evidence of money

laundering or use of "shell corporations," these improper statements were intended

to inflame the Jury and show criminal propensity in violation of Rule 404(b) of the

Federal Rules of Evidence.  (Mot. at 4–5.)  Second, Petitioner claims it was

improper for the prosecution to tell the Jury in his opening statement that

Petitioner's mother "had close to ten accounts at Pear Harbor Federal Credit

Union" and that he "[has] no idea why she had so many accounts."  (Id. at 6; TR 1

at 125.)  Petitioner claims that these statements were improper and misleading

because the prosecution knew or should have known, based on its own evidence,

that three of these accounts were institutional loans; three were the same Money

Market Certificate account; and two were the same IRA account.  (Mot. at 6.)

According to Petitioner, these improper statements were made in order to appeal to

the prejudices of the Jury by implying that something had to be amiss because

normal people did not have ten bank accounts.  (Id.)  Lastly, Petitioner asserts that

the prosecution made various other allegedly unsupported statements regarding

Petitioner's associations with Mark Arakaki, a gentleman named "Ronnie,"

Brennen Roberts, and Shane Ahlo.  (Id. at 5.)

---

[1] "TR 1 at 114–15" refers to Trial Transcript, Volume 1, Pages 114 to 115.

Even assuming the veracity of these contentions, Petitioner has not demonstrated that these opening remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181. Indeed, the evidence adduced at trial established that Petitioner operated a substantial and profitable methamphetamine trafficking operation for the five year period preceding his April 2002 arrest. (TR 2 at 36–63, 94–133; TR 5 at 32–109, 112–128.) That evidence included Petitioner's fingerprint on a two ounce bag of methamphetamine that he sold (TR 4 at 141–144; TR 5 at 19), hundreds of thousands of dollars of unexplained cash transactions and wealth (TR 6 at 32–74), Petitioner's recorded admissions of his involvement in a large scale methamphetamine operation (Doc. # 457-2 at 243–291), and testimony of his closest drug dealing workers who identified him as the leader of a major methamphetamine organization that moved hundreds of pounds of "ice" into Hawaii (TR 2 at 27–63, 90–133; TR 5 at 30–52.). Thus, in light of the overwhelming evidence against Petitioner that was presented at trial, there is no "reasonable probability that the result of the proceeding would have been different" had the prosecution not made the allegedly improper remarks in its opening statement. Hein, 601 F.3d at 905 n.4.

B.    <u>False Evidence and Testimony</u>

Petitioner next argues that his Due Process rights were violated because the prosecution introduced evidence that it knew, or should have known, was false and misleading.  (Mot. at 6–7.)  Specifically, Petitioner claims that Government Trial Exhibits ## 87, 90, 91, and 94 contained false and misleading financial information when compared with trial exhibit #83.  (<u>Id.</u> at 8.)  Those exhibits, which were prepared by FBI Financial Analyst Conrad Ho, contain summaries of various bank, tax, and income records for Petitioner and others associated with him.  (Doc. # 436-1 at 52–56; TR 6 at 32–59.)  These financial records were obtained by FBI Agent Cindy Maglasang.  (TR 3 at 83–95.)  According to Petitioner, the trial exhibits prepared by Ho reflect double and triple counted bank deposits, transfers and bank loans as well as inflated deposit amounts.  (<u>Id.</u>)  Petitioner further argues that the prosecution knowingly elicited false testimony that was based on the allegedly false and misleading financial trial exhibits.  (<u>Id.</u> at 9–10.)  In particular, Petitioner claims that the prosecution elicited false testimony from Maglasang and Ho regarding the amount of money that went through the various bank accounts at issue in this case.  (<u>Id.</u>)  Respondent, for its part, contends that the law of the case doctrine forecloses Petitioner's claims regarding the allegedly false and misleading financial trial exhibits.  (Resp. at 11.)

"The law of the case doctrine ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case." United States v. Caterino, 29 F.3d 1390, 1395 (9th Cir. 1994) (quoting U.S. v. Maybusher, 735 F.2d 366, 370 (9th Cir. 1984), cert. denied, 469 U.S. 1110 (1985)). Under this doctrine, a district court will ordinarily refrain from acting if an appellate court previously has issued a decision on the merits of the claim. Id. at 1395. Thus, the Ninth Circuit has long held that "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent petition under 2255." Stein v. United States, 390 F.2d 625, 626 (9th Cir. 1968).

On appeal, Petitioner made the very same arguments that he now advances with respect to the Government's trial exhibits ## 87, 90, 91, and 94 and the corresponding testimony from Ho and Maglasang. (See Petitioner's 2008 Opening Appellate Brief at 23–26; see also Petitioner's 2009 Reply Appellate Brief at 13–14.) In his Opening Appellate Brief, which was filed on March 19, 2008, Petitioner asserted that the Government fabricated those trial exhibits and gave false testimony based on those exhibits. (Petitioner's 2008 Appellate Brief at 25–26.) The Ninth Circuit rejected Petitioner's contentions, stating that he "waived his new arguments regarding government misconduct because he could have raised them in his earlier appeal, but did not do so." Schulze, 346 Fed. Appx.

at 269 (citing <u>United States v. Thornton</u>, 511 F.3d 1221, 1229 (9th Cir. 2008);

<u>United states v. Radmall</u>, 340 F.3d 798, 801–02 (9th Cir. 2003)).  Since the claims

of false evidence and testimony were resolved on direct appeal, Petitioner may not

present those claims in this proceeding.  <u>See</u> <u>Olney</u>, 433 F.2d at 162 ("Having

raised this point unsuccessfully on direct appeal, appellant cannot now seek to

relitigate it as part of a petition under § 2255.").

      C.    <u>Closing Argument</u>

Petitioner asserts that the prosecution committed reversible error by

making various improper remarks during its closing argument.  Petitioner identifies

four specific instances of alleged misconduct.

First, Petitioner claims that the prosecution improperly vouched for

Maglasang's and Ho's testimony by stating that "[w]e have $514,000 rolling into

Innovative Investments; . . . 81,000 into Pearl Harbor Federal Credit Union, New

Vision Development Corporation 68,000."  (Mot. at 10; TR 7 at 49.)  This

statement does not constitute vouching.  "Improper vouching occurs when the

prosecutor places the prestige of the government behind the witness by providing

personal assurances of the witness's veracity."  <u>United States v. Stinson</u>, 647 F.3d

1196, 1212 (9th Cir. 2011).  It also occurs "where the prosecutor suggests that the

testimony of government witnesses is supported by information outside that

presented to the Jury." Id. Here, the prosecution neither provided personal

assurances of Maglasang's and Ho's veracity, nor did it suggest that their

testimony was supported by outside information. In fact, the prosecution made no

comment regarding their credibility, but merely reiterated the amount of various

cash transactions based on the evidence presented at trial. These were not

improper statements to make in closing argument. See United States v. Gray, 876

F.2d 1411, 1417 (9th Cir. 1995) (stating that in closing arguments, prosecutors are

"free to argue reasonable inferences from the evidence"). Accordingly,

Petitioner's claim of improper vouching lacks merit.

　　　　　Second, Petitioner claims that it was improper for the prosecution to

tell the Jury that Petitioner's reported income "[d]oesn't even come close to

explaining how Mike was able to come up with so much money . . . .There's no

explanation for it. There's no explanation in the record whatsoever." (Mot. at

10–11; TR 7 at 49.) According to Petitioner, these statements were improper

because they are based on Ho's trial exhibits, which the prosecution allegedly

knew to contain exaggerated figures. (Mot. at 10.)

　　　　　As discussed above, the Ninth Circuit has already rejected Petitioner's

contention regarding Ho's allegedly false and misleading trial exhibits on the

ground that Petitioner waived this argument by failing to raise it on his first direct

appeal. Schulze, 346 Fed. Appx. at 269. Although Petitioner is now challenging

the prosecution's closing remarks, his argument is predicated on the contention that

Ho's trial exhibits were false and misleading. Since the Ninth Circuit has

determined that Petitioner waived that argument, this Court declines to revisit the

issue now. See Olney, 433 F.2d at 162.

Third, Petitioner argues that the prosecution made comments that

improperly drew attention to Petitioner's failure to testify, in violation of Griffin v.

California, 380 U.S. 609, 615 (1965). (Mot. at 11.) Specifically, Petitioner

challenges the following statements made by the prosecution regarding his source

of income and cash deposits:

> [T]here's no explanation for it. There's no explanation in the record
> whatsoever . . . . But Mr. Schulze does have subpoena power. He can
> bring in people who can say they paid money to him. We could hear
> that. They had access to these records. They have known that this
> financial part of the case was coming. Absolutely no evidence to
> indicate the source of this level of income, whatsoever.

(TR 7 at 49–50.) Petitioner alleges that at the time that these statements were

made, the prosecution knew that Petitioner was the only potentially available

witness who could testify regarding his source of income because his petition for

witness funds had been denied and thus he was unable to call key witnesses. (Mot.

at 13.) Petitioner further alleges that since he had invoked his Fifth Amended right

not to testify, the prosecution's comments regarding his lack of witnesses improperly called attention to his own failure to testify.  (Id. at 13–14.)

This Court disagrees.  "While a prosecutor may not draw attention to a defendant's silence, prosecutors are entitled to call attention to the defendant's failure to present exculpatory evidence more generally."  United States v. Mayans, 17 F.3d 1174, 1185 (9th Cir. 1994) (citing United States v. Lopez, 803 F.2d 969, 973 (9th Cir. 1986), cert. denied, 481 U.S. 1030 (1987)).  In other words, "courts have maintained a distinction between comments about the lack of explanation provided by the defense, and comments about the lack of explanation furnished by the defendant."  Id.  (citing United States v. Sehnal, 930 F.2d 1420, 1425–26 (9th Cir. 1991).  Here, the prosecution merely drew attention to Petitioner's failure to present exculpatory evidence regarding his source of income and cash deposits.  The prosecution did not comment on the lack of explanation provided by Petitioner himself.  Therefore, Petitioner's argument that the prosecution violated Griffin lacks merit.

Fourth, Petitioner claims that the prosecution made a couple improper remarks during its closing argument in the criminal forfeiture phase of the trial, which took place after the Jury had convicted Petitioner on Counts One through Three.  First, Petitioner argues that the prosecution's statement calling for the Jury

to "send a message" during its closing argument was inflammatory, prejudicial, and reversible error.  (Mot. at 15.)  Petitioner contends that it is more probable than not that this remark had a material affect on the Jury's actions, particularly since no curative instruction was given to the Jury following Petitioner's sustained objection.  (<u>Id.</u> at 16–17.)  Second, Petitioner argues that the prosecution again drew attention to Petitioner's failure to testify by making the following statement:

> I don't know where the evidence of the "legit employment" is.  That is fiction in this case . . . .[L]egitimate income is money that comes from lawful, gainful employment . . . [for example,] if you do construction work, like Mr. Schulze claims that he does.

(TFP at 12-14; <u>see</u> Mot. at 14.)  Based on these contentions, Petitioner asserts that the Jury's special verdict regarding the criminal forfeiture count should be set aside.  (<u>Id.</u> at 17.)

The Ninth Circuit has held that "§ 2255 is available to prisoners <u>claiming the right to be released from custody</u>."  <u>United States v. Thiele</u>, 314 F.3d 399, 400 (9th Cir. 2002) (emphasis added).  "Claims for other types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody."  <u>Id.</u>; <u>see</u> <u>United States v. Kramer</u>, 195 F.3d 1129, 1130 (9th Cir. 1999) (Section 2255 is "available only to defendants who are in custody and claiming the right to be

released.")  Furthermore,

> [C]ognizable claims in a § 2255 motion do not run interference for
> non-cognizable claims.  Claims seeking release from custody can be
> brought under § 2255; claims seeking other relief cannot. To
> determine whether a given claim is cognizable under § 2255, we focus
> on the relief sought in the claim itself, not on relief sought in other
> claims mentioned elsewhere in the motion.

Thiele, 314 F.3d at 402.

Here, Petitioner's claims regarding the criminal forfeiture count are not cognizable under § 2255 because they do not seek release from custody, but rather seek relief from the Court's Order of Forfeiture.  Moreover, the other claims in his motion for release from custody "do not run interference" for his non-cognizable claims regarding the forfeiture count.  Id.  Therefore, Petitioner may not challenge the criminal forfeiture proceedings on the instant Motion.

D.    Alleged Suppression of Evidence

Petitioner contends that the prosecution suppressed evidence by choosing not to call potential witness Thomas Kaiser after learning that his testimony would rebut the prosecution's claim that Petitioner had no legitimate source of income.  (Mot. at 15.)  Petitioner further contends that the prosecution kept secret from the defense interview notes concerning Mr. Kaiser.[2]  (Id.)

_____

[2]Petitioner requests an evidentiary hearing to determine whether Mr. Kaiser was interviewed by the Government, and if so, whether he provided material

Petitioner's argument fails for several reasons. First, the prosecution was "entitled to prove its case by evidence of its own choice." <u>Old Chief v. United States</u>, 519 U.S. 172, 186 (1997). The prosecution was therefore under no obligation to call Thomas Kaiser as a witness. Next, Petitioner has failed to set forth any factual allegations to show that Kaiser would have attested to Petitioner's purported legitimate source of income. Moreover, even assuming that Kaiser would have provided such testimony, Petitioner has not demonstrated that the prosecution knew the substance of Kaiser's potential testimony and knowingly withheld that information from the defense. Lastly, even if it were shown that the prosecution knowingly withheld information regarding Kaiser's potential testimony, there it is no reasonable probability that the alleged misconduct affected the outcome of the trial. As discussed above, the prosecution presented overwhelming evidence against Petitioner at trial, including his own recorded admissions of involvement in the distribution of methamphetamine and testimony from his co-conspirators. Therefore, even if the prosecution had called Kaiser as a witness and he corroborated Petitioner's claim of a legitimate source of income, the

---

information favorable to Petitioner that might have affected the outcome of the forfeiture trial. (Mot. at 15 n.3.) The Court denies this request since Petitioner's allegations of prosecutorial misconduct regarding Mr. Kaiser, "when viewed against the record, do not state a claim for relief." <u>Leonti</u>, 326 F.3d at 1116 (holding that an evidentiary hearing is not warranted under these circumstances).

verdict would not have been different in light of the evidence presented at trial. Accordingly, the Court concludes that this contention does not constitute grounds for relief.

E.    Alleged Misconduct Before the Grand Jury

Petitioner asserts that Maglasang manufactured worksheets containing false and misleading information that she must have used during her testimony before the Grand Jury.  (Mot. at 18–19.)  Petitioner states that he was unable to view the Grand Jury transcripts but nonetheless asserts that "it is likely that Maglasang committed perjury during the Grand Jury proceedings."  (Mot. at 19.) Additionally, Petitioner argues that, in light of the prosecution's statements and elicitation of testimony at trial regarding the allegedly erroneous calculation of drug profits, "it is likely [the prosecution] committed the same misconduct before the grand jury."  (Id.)

This contention fails for several reasons.  First, Petitioner has not offered any facts to support his allegations of perjury.  Petitioner's "mere speculation" that Maglasang committed perjury is not sufficient to establish that the prosecution knowingly used perjured testimony.  See United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).  Second, and more importantly, Petitioner's allegations of misconduct before the Grand Jury are based on his assertion that

Maglasang manufactured worksheets containing false and misleading information. As stated above, the Ninth Circuit has already considered and rejected this contention. <u>Schulze</u>, 346 Fed. Appx. at 269.  Therefore, Petitioner may not reassert this claim now.  <u>See</u> <u>Olney</u>, 433 F.2d at 162 ("Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255.").

      F.      <u>Alleged Failure to Disclose Information Favorable to the Defense</u>

Petitioner asserts that the prosecution failed to disclose material information that was favorable to the defense in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  (Mot. at 21–33.)  Petitioner raises three grounds on which he alleges that the prosecution committed <u>Brady</u> violations.

Under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  There are three components of a Brady violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [Government], either willfully or inadvertently; and prejudice must have ensued."  <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82 (1999).  In determining whether prejudice exists, the court must consider

"whether admission of the suppressed evidence would have created a reasonable probability of a different result."  <u>Stinson</u>, 647 F.3d at 1208 (internal quotation omitted).

First, Petitioner claims that the prosecution failed to disclose the search warrant and supporting affidavit that authorized the FBI to open a sealed package addressed to Susan Fukumoto containing 2,458 grams of crystal methamphetamine.  (Mot. at 24.)  Petitioner further claims that, "assuming a search warrant was issued, there is a reasonable probability that the supporting affidavit contained false statements, which . . . is why these material documents were withheld."  (<u>Id.</u>)  According to Petitioner, the withholding of the search warrant and supporting affidavit resulted in prejudice because the disclosure of these documents would have led to the suppression of the drug evidence.  (<u>Id.</u> at 27.)

This first claim lacks merit for two reasons.  First, Petitioner has not offered any specific factual allegations to support his bald allegation that "there is a reasonable probability that the supporting affidavit contained false statements." Second, even assuming <u>arguendo</u> that there was no valid search warrant or that the supporting affidavit contained false statements, Petitioner has failed to demonstrate that these materials constitute exculpatory or impeaching evidence that the prosecution was required to produce pursuant to <u>Brady</u>.  More specifically,

Plaintiff has not shown that the disclosure of these materials would have led to the suppression of the drug evidence because Petitioner has not established that he would have had standing to challenge the search of the Fukumoto package on Fourth Amendment grounds. In order to have standing to contest an unreasonable search, a party "must show that 'their own expectations of privacy or property interests were violated'" by the challenged conduct. United States v. Padilla, 111 F.3d 685, 687 (9th Cir. 1997) (quoting United States v. Lingenfelter, 997 F.2d 632, 636 (9th Cir. 1993)). "Mere membership or participation in a conspiracy does not establish standing for purposes of the Fourth Amendment." Id. Here, Petitioner has not shown that he had an individual expectation of privacy in the Fukumoto package outside of his connections with his alleged co-conspirators who handled the package. In fact, Petitioner acknowledges that the package was addressed to Fukumoto and that it was Fukumoto who "had both a possessory and a privacy interest in her mailed package." (Id. at 23.) Since petitioner did not have an individual expectation of privacy or property interest in the package, he would not have had standing to move to suppress the drugs on Fourth Amendment grounds had the search warrant or allegedly false affidavit been disclosed. In other words, the evidence allegedly withheld by the prosecution would not have been exculpatory. Therefore, the alleged misconduct did not constitute a Brady

violation, let alone "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 171.

Next, Petitioner claims that the prosecution violated Brady by failing to produce Earl Yamada's phone records. (Mot. at 28.) At trial, Yamada testified that he had exchanged phone calls with Petitioner during the week prior to the July 21, 2000 seizure of the drugs. Petitioner contends the prosecution never produced Yamada's phone records because had they been disclosed, they would have established that there were no such calls between Petitioner and Yamada during that period, and that Yamada was in fact communicating with someone else during that period about the 2,458 grams.

Petitioner has failed to establish that the allegedly withheld phone records constitute exculpatory or impeaching evidence that the prosecution was required to produce pursuant to Brady. In particular, Petitioner offers no substantiating facts to support his contention that the phone records would reveal that Yamada had not communicated with Petitioner during the relevant time period. Contrary to Petitioner's argument, the evidence presented at trial demonstrates that Petitioner was communicating with Yamada about the 2,458 grams of methamphetamine. In addition to Yamada's testimony confirming that he and Petitioner had been communicating about those drugs before they were seized

(TR 2: 112–117), the prosecution presented Petitioner's own recorded admissions of involvement with those drugs (Doc. # 457-2 at 259).  In light of this evidence, there is no reasonable probability that the outcome of the trial would have been different if the phone records had been disclosed.  See <u>Hein</u>, 601 F.3d at 905 n.4.

Finally, Petitioner argues that the prosecution withheld material evidence at the November 18, 2002 suppression hearing regarding the allegedly prohibited use of informant Steven Olaes.  Specifically, Petitioner alleges that the Government withheld the fact that the FBI had not received authorization to use Olaes as an informant prior to the August 30th transaction.  Based on this contention, Petitioner argues that evidence of the August 30th transaction should have been suppressed.  However, this argument was raised by Petitioner on direct appeal and rejected by the Ninth Circuit.  See <u>Schulze</u>, 156 Fed. Appx. at 40 ("The district court . . . properly concluded that audiotapes of conversations between Schulze and a confidential informant were legally made because the confidential informant was 'acting under color of law' as required by 18 U.S.C. § 2511(2)(c).").  Since this claim was plainly addressed on direct appeal, it cannot be relitigated in the instant Petition for post conviction relief.  See <u>Thornton</u>, 511 F.3d at 1226–29.

II.      <u>Effective Assistance of Counsel</u>

The United States Supreme Court has interpreted the guarantee of a

fair trial in the Sixth Amendment of the United States Constitution to encompass the right to effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 684–85 (1984). Accordingly, counsel's failure to provide adequate legal assistance may deprive a defendant of the constitutional right to counsel. <u>Id.</u> at 686. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Id.</u> In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) in light of all the circumstances, his counsel's performance was outside the "wide range of professionally competent assistance," by identifying specific material errors or omissions <u>and</u> (2) his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different. <u>Id.</u> at 687–89; <u>see also</u> <u>Hensley v. Christ</u>, 67 F.3d 181, 184–85 (9th Cir. 1995) (a petitioner must show that "his counsel's performance was so deficient that it fell below an 'objective standard of reasonableness.' In addition, a [petitioner] must show that the deficient performance prejudiced the defense and made the trial results unreliable."). To successfully demonstrate ineffective assistance of counsel, Petitioner must satisfy both prongs of the test.

The performance inquiry considers whether counsel's assistance was reasonable considering all of the circumstances. Id. at 688. There is no particular set of detailed rules to apply to determine whether the assistance was reasonable. Id. A court's scrutiny of counsel's performance must be highly deferential to counsel. Id. at 689. "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quotations omitted); see also United States v. Austin, 817 F.2d 1352, 1354 (9th Cir. 1987) (finding a strong presumption that an attorney provided effective assistance); Michel v. Louisiana, 350 U.S. 91, 101 (1955) (defendant must overcome presumption of effectiveness, including the possibility that, under the circumstances, the challenged action might be considered sound trial strategy). Counsel's strategic decisions made after thorough investigation of the law and facts are virtually unchallengeable. Strickland, 466 U.S. at 690.

It is not enough that the defendant show counsel's actions were unreasonable; the defendant also must affirmatively prove prejudice. Id. at 693. Put simply, "even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense." Id. at 693. For example, in order to prove ineffective assistance of counsel for failure to file a particular motion, a defendant "must not only

demonstrate a likelihood of prevailing on the motion, but also a reasonable

probability that the granting of the motion would have resulted in a more favorable

outcome in the entire case." Styers v. Schriro, 547 F.3d 1026, 1030 n.5 (9th Cir.

2008) (citing Kimmelman v. Morrison, 477 U.S. 365, 390–91 (1986) (explaining

that to establish prejudice, a defendant must show not only that counsel would have

prevailed on a suppression motion, but also a reasonable probability that exclusion

of the evidence would have resulted in acquittal)).  Judicial scrutiny of counsel's

performance must be highly deferential and must take into account the facts of the

particular case, viewed at the time of counsel's conduct.  See Strickland, 466 U.S.

at 689–90.

     Finally, trial counsel is not required to present a particular defense

merely because the defense might be available and viable.  Mickey v. Ayers, 606

F.3d 1223, 1238 (9th Cir. 2010).  For example, counsel may forego a certain

defense because the defense is not entirely persuasive, is subject to serious cross-

examination, or would expose the Jury to the defendant's other wrongdoing.  Id.

A.    Seizure of Fukumoto/Yamada Drugs

     Petitioner argues that his counsel rendered ineffective assistance by

failing to adequately investigate and seek suppression of the 2,458 grams of

methamphetamine in the Fukumoto package, which Petitioner maintains was

seized in violation of the Fourth Amendment.  (Mot. at 35–36.)  Petitioner asserts

that "it does not appear that discovery was sought concerning the seizure of the

2,458 grams of methamphetamine."  (<u>Id.</u> at 35.)  He further asserts that his counsel

"should have requested the Government to provide[] the reports, statements, and

search warrant regarding the seizure of the Fukumoto drugs."  (<u>Id.</u> at 48.)

According to Petitioner, "[h]ad this been done, counsel [sic] would have likely

found that the 2,458 grams was seized in violation of the Fourth Amendment,

because either there was no search warrant to open and seize the box, or, that the

supporting affidavit to the search warrant contained false statements."   (<u>Id.</u> at 36.)

Petitioner alleges that his counsel's inaction was "unreasonable, unprofessional,

and prejudicial."  (<u>Id.</u> at 49.)

        The record indicates that Petitioner's trial counsel sought discovery of

"[r]eports of examination and tests, including all expert reports generally, and

specifically as to the examination of any drugs allegedly seized in the instant

manner."  (Doc. # 72.)  Presumably this request would have covered documents

regarding the seizure of the Fukumoto drugs.  Moreover, to the extent that this

discovery request did not encompass such documents, counsel's failure to request

those materials does not constitute ineffective assistance.  As discussed above,

Petitioner would not have had standing to challenge the search and seizure of the

Fukumoto package.  Therefore, counsel's failure to seek discovery regarding the seizure of the drugs was not objectively unreasonable.

Finally, even assuming counsel's failure to further investigate the seizure of the drugs somehow fell "outside the wide range of professionally competent assistance," Petitioner has not demonstrated that this error "had an adverse effect on the defense." <u>Strickland</u>, 466 U.S. at 687–89, 693.  Indeed, since Petitioner does not have standing to challenge the seizure of the drugs, there is no reasonable probability that any further investigation regarding the seizure of the drugs would have changed the outcome of the trial.  Therefore, the alleged error did not result in actual prejudice to the defense.

B.      Government's Financial Trial Exhibits

Petitioner challenges counsel's failure to move to suppress or object to the Government's financial trial exhibits concerning the finances relevant to the conspiracy allegation in Count One and the forfeiture allegation in Count Four. (Mot. at 37–38, 51).  Specifically, Petitioner claims that Exhibits ## 87, 90, 91, and 94 contain false and misleading information when compared to Exhibit # 83.  (<u>Id.</u> at 8.)  Petitioner further claims that the exhibits contain "double and triple-counted bank deposits, transfers & bank loans."  (<u>Id.</u> at 8.)

Preliminarily, to the extent that Petitioner asserts that the Court's

Order of Forfeiture should be vacated based on his counsel's failure to object to or seek suppression of these exhibits, that claim is not cognizable in an action for post conviction relief pursuant to § 2255 because it does not seek release from custody. See Thiele, 314 F.3d at 400.

With respect to Petitioner's contention regarding the conspiracy allegation in Count One, the Court concludes that his counsel's failure to object to or move to suppress these exhibits was not objectively unreasonable. Petitioner's allegation that these exhibits contained false and misleading information is not supported by the record. Based on its own review of the exhibits, the Court finds that the allegedly improper exhibits accurately reflect the information set forth in Exhibit #83. To be sure, there are some apparent inconsistencies in the summaries. For instance, Exhibit # 87 states that the total deposits received in Michael Schulze's bank accounts was $112,563.18 while Exhibit # 90 reflects Michael Schulze's total bank deposits as $696,030.00. (Doc. # 436-1 at 52–53.) However, this alleged inconsistency is easily explained. Exhibit # 90 explicitly states that it includes deposits with Innovative Investments and New Vision Development Corp (Doc. # 436-1 at 53); Exhibit # 87 does not include those additional amounts (Doc. # 436-1 at 52).

Petitioner also complains that "several trial exhibits reflect amounts

deposited into Alena Olaes's accounts which were from sources already included in Exhibit # 83." (Mot. at 8.) Exhibit # 83, however, is a simple bank ledger, while the other exhibits about which Petitioner complains are summaries. (Doc. # 436-1 at 33–51.) Therefore, Petitioner's contention that these trial exhibits contain "double and triple-counted bank deposits, transfers & bank loans" is without merit. (Mot. at 8.) Accordingly, trial counsel's failure to object to these exhibits was not objectively unreasonable.

Assuming _arguendo_ that trial counsel should have objected to these exhibits, Petitioner still has not satisfied the second prong of _Strickland_. Specifically, Petitioner has not shown that his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings with respect to the conspiracy count would have been different. _Strickland_, 466 U.S. at 687–89.

The Ninth Circuit has held that "[p]roof of a conspiracy violation under 21 U.S.C. § 846 requires: '(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime.'" _United States v. Garza_, 980 F.2d 546, 554 (9th Cir. 1992) (quoting _United States v. Medina_, 940 F.2d 1247, 1250 (9th Cir.1991); _United States v. Meyers_, 847 F.2d 1408, 1412–13 (9th Cir. 1988)).

Here, even if the financial trial exhibits had been excluded from evidence, there is no reasonable probability that the outcome on the conspiracy count would have been any different.  As discussed above, the prosecution presented overwhelming evidence against Petitioner at trial which more than supported Petitioner's conspiracy conviction.

      C.    <u>Olaes' Drug Evidence</u>

Petitioner next contends that his counsel provided ineffective assistance by failing to file a motion to suppress the drug evidence found in Government's Exhibits ## 12 and 13 after Olaes' admission that he tampered with the evidence by removing a small amount of the drugs before delivering it to Maglasang.  (Mot. at 39–41.)  Petitioner further contends that his counsel should have objected to the evidence pursuant to Federal Rules of Evidence 901 and 1006 because the drug's identity and continuity of condition was not established by a chain of custody.  (<u>Id.</u> at 50.)

However, the record indicates that Petitioner's trial counsel did move to suppress other evidence based, <u>inter</u> <u>alia</u>, on Olaes' removal of drugs from the drug exhibits.  Before the trial began, his counsel moved to suppress taped recorded evidence and evidence seized at Petitioner's residence on the ground that Olaes was not reliable because he: (1) was coerced into helping the FBI; (2) had an

extensive criminal history; (3) was a drug user who used his relationship with the FBI to secure drugs for his own consumption; and (4) was paid by the Government for his assistance.  (Docs. ## 75, 76.)  This Court denied the Motions to Suppress on November 22, 2002.  (Doc # 97, 99.)  Thereafter, on December 31, 2002, Petitioner's counsel filed a Motion for Reconsideration of that decision based on additional evidence confirming that Olaes had abused drugs while assisting the Government and had stolen drugs from targets of the investigation.  (Doc. # 112.)  In denying the Motion for Reconsideration, this Court held that such evidence was not "sufficient to warrant a new finding in this matter that would suppress all evidence obtained by the Government as a result of its reliance on the [confidential informant]'s assistance."  (Doc. # 128.)  The Ninth Circuit affirmed the Court's decision, finding that "[t]he confidential informant consistently supplied the government with reliable information, which the government confirmed through independent investigation."  Schulze, 156 Fed. Appx. at 39.

Against that background, the Court concludes that counsel's failure to move to suppress the drug evidence based on grounds previously rejected by this Court and the Ninth Circuit is not objectively unreasonable.  Indeed, the decision to not file such a motion falls well within the "wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.

Moreover, Petitioner's contention that the drug's identity was not established at trial lacks merit. The Government presented substantial evidence to show that the drug evidence in Exhibits ## 12 and 13 came from Petitioner, including Petitioner's fingerprint on the two ounce bag of crystal methamphetamine in Exhibit 12 (TR 4 at 141–144; TR 5 at 16–20) and the FBI recordings connecting him to those drug exhibits (TR 3 at 20–30).

D.      Retainer/Fee Agreement

Petitioner challenges counsel's failure to object to the Government's introduction of evidence regarding the retainer and fee arrangement between Petitioner and attorney Michael Green whereby Petitioner agreed to pay Earl Yamada's legal fees. (Mot. at 41–43). Petitioner asserts that the fee arrangement between him and Mr. Green should have been excluded pursuant to the attorney-client privilege because it "created an inference that Schulze was criminally associated with Yamada." (Id. at 42.)

The attorney-client privilege generally does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement. Ralls v. United States, 52 F.3d 223, 226 (9th Cir. 1995) (citing In re Grand Jury Proceedings, 33 F.3d 1060, 1063 (9th Cir. 1995). "This is so because the attorney-client privilege applies only to confidential professional communications,

and the payment of fees is usually incidental to the attorney-client relationship."
Id.  However, a narrow exception to the general rule exists where disclosure of
information regarding a client's fee arrangements "would 'convey [ ] information
which ordinarily would be conceded to be part of the usual privileged
communication between attorney and client.'"  Id. (quoting United States v. Horn,
976 F.2d 1314, 1317 (9th Cir. 1992)).  To be sure, the application of the privilege
"is not triggered by the fact that the disclosure of the fee-payer's identity and the
fee arrangements may incriminate the fee-payer."  Id.  Rather, the privilege may be
invoked where disclosure of the fee-payer's identity and the fee agreements
"would be tantamount to revealing a privileged communication."  Id. at 226.

   Petitioner cites Ralls to support his contention that his identity as the
fee-payer was privileged information.  (Mot. at 41.)  However, Ralls involved
different facts from those presented here.  In Ralls, the evidence showed that the
fee-payer specifically discussed with the attorney his own liability in connection
with the crime for which the attorney's client had been arrested.  52 F.3d at 226.
Under those circumstances, the Ninth Circuit found that "disclosure of the fee-
payer's identity would expose the substance of a confidential communication
between the attorney and the fee-payer."  Id.

   Here, by contrast, there is no evidence of any confidential or

privileged communications between Petitioner and attorney Michael Green. Petitioner does not claim that he discussed with Green his own liability in connection with the crimes for which Yamada was arrested.  Thus, unlike in <u>Ralls</u>, disclosure of the fact that Petitioner paid Yamada's legal fees was not "tantamount to revealing a privileged communication."  <u>Ralls</u>, 52 F.3d at 226.  Moreover, the fact that the disclosure of the fee arrangement suggested that Petitioner was criminally associated with Yamada is not of consequence.  <u>See Ralls</u>,  52 F.3d at 226 (holding that the privilege "is not triggered by the fact that the disclosure of the fee-payer's identity and the fee arrangements may incriminate the fee-payer").  The Court therefore concludes that information regarding the retainer and fee arrangement with Green did not fall within the attorney-client privilege.

In any event, even assuming that this information was privileged, Petitioner cannot show that he was prejudiced by his counsel's failure to seek exclusion of this evidence.  As discussed above, the evidence against Petitioner at trial was overwhelming and included Petitioner's own recorded admissions of his involvement in the methamphetamine operation.  Under these circumstances, there is no reasonable probability that, but for counsel's allegedly deficient representation, the result of the proceedings would have been different.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687–89.

E.    Grand Jury Proceedings

Petitioner claims that his counsel failed to request the transcript of
Maglasang's Grand Jury testimony and move to dismiss the SSI based on
government misconduct, namely, the prosecution's alleged knowing use of
perjured testimony before the Grand Jury.  (Mot. at 43–45.)  However, the record
indicates that Petitioner's trial counsel did receive a copy of Maglasang's Grand
Jury testimony prior to trial.  (Doc. # 253-2.)  It is self-evident that counsel did not
render ineffective assistance for failing to request a document that he already had.
Further, the remainder of Petitioner's claim is "mere speculation;"[3] there is nothing
in the record to suggest that there was any misconduct before the Grand Jury.  See
United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).  Accordingly, counsel
cannot be said to have rendered ineffective assistance for failing to move to
dismiss based on allegations not evidenced by the record.

F.    Failure to Move for Mistrial

Petitioner alleges that counsel provided ineffective assistance by
failing to move for a mistrial after Maglasang testified that the FBI had not, by the

_____

[3]In his Motion, Petitioner asserts "there is a reasonable probability that the
prosecution knowingly used perjured testimony."  (Mot. at 45.)  Petitioner
recognizes that this is speculative, as he also states "if any part of Maglasang's
grand jury testimony [was false], Schulze's lawyers should have sought dismissal
. . . ."  (Id.)

end of August 2011, received approval from the State to have Olaes work with them as an informant and undertake criminal activity under its direction. (Mot. at 45–47.) This Court and the Ninth Circuit have already <u>explicitly</u> determined that Olaes was acting under color of law when he recorded conversations for the FBI under Maglasang's supervision. (<u>See</u> Doc. # 362; <u>Schulze</u>, 156 Fed Appx. at 39.) Therefore, Petitioner's trial counsel's failure to move for a mistrial on this ground does not constitute ineffective assistance.

G.     <u>Jencks Act Material</u>

Petitioner next claims that his counsel failed to request Jencks Act material regarding the Fukumoto drug seizure and Maglasang's attempt to obtain approval to use Olaes as an informant. However, the record belies that claim. On June 6, 2002, Petitioner's counsel specifically requested "all Jencks material to which defendant is entitled pursuant to the Jencks Act." (Doc. # 46.) Additionally, on October 21, 2002, Petitioner's counsel sought "[a]ll Jencks Act statements, including grand jury transcripts." (Doc. # 72.) Therefore, contrary to Petitioner's assertion, his trial counsel did request Jencks Act materials. Moreover, for the reasons discussed above, Petitioner's claims regarding the Fukumoto drug seizure and Olaes' authority to act as an informant lack merit.

H.    <u>Prejudicial Variance</u>

Petitioner alleges that his counsel's failure to move for dismissal of

Count One based on "prejudicial variance" constituted ineffective assistance.

Specifically, Petitioner claims that there existed a variance between the SSI, which

charged a single conspiracy, and the evidence at trial, which Petitioner maintains

established the existence of multiple conspiracies.

In <u>United States v. Bauer</u>, 75 F.3d 1366 (9th Cir. 1996), the court

stated:

> The question whether a single conspiracy, rather than multiple
> conspiracies, has been proved is a question of sufficiency of the
> evidence.  A single conspiracy can include subgroups or
> subagreements and the evidence does not have to exclude every
> hypothesis other than that of a single conspiracy.  A single conspiracy
> exists, as compared with multiple conspiracies, where there is one
> overall agreement to perform various functions to achieve the
> objectives of the conspiracy.

<u>Id.</u> at 1377.  "A mere change in participants and a lapse of time, without more, are

insufficient to support a finding of multiple conspiracies."  <u>United States v. Taren-</u>

<u>Palma</u>, 997 F.2d 525, 530 (9th Cir. 1993), overruled on other grounds by <u>United</u>

<u>States v. Shabani</u>, 513 U.S. 10, 11 (1994).  Further, "[e]very member of the

conspiracy need not know every other member nor be aware of all acts committed

in furtherance of the conspiracy."  <u>Taren-Palma</u>, 997 F.2d at 530.  On the other

42

hand, "[f]inding multiple conspiracies requires some evidence of separate agreements and purposes." Id. The Ninth Circuit has held that, in order to demonstrate the existence of a single drug conspiracy as opposed to multiple conspiracies, it is enough for the Government to prove that defendant "was involved in a broad project to distribute cocaine and that his benefit depended on the success of the operation." United States v. Shabani, 48 F.3d 401, 403 (9th Cir. 1995).

In the present case, the evidence presented at trial supports a finding of a single conspiracy. The Government presented evidence establishing that Petitioner and his co-conspirators were involved in a joint operation of moving high volume quantities of crystal methamphetamine from Las Vegas to Hawaii between 1997 and 2002. (TR 2 at 36–63, 94–133; TR 5 at 32–109, 112–128; Doc. # 457-2 at 243–291.) The evidence showed that the conspiracy involved Petitioner, Donald Grimm, Earl Yamada, Susan Fukumoto, Anthony Tabion, and Ralph Byrd. (TR 2 at 36–63, 94–133; TR 5 at 32–109, 112–128.) Grimm and Yamada each testified that they played the same role at different time periods as the one in charge of shipping multi-pound quantities of methamphetamine from Las Vegas to Honolulu. (TR 2 at 36–42, 56–57, 94–133.) Yamada confirmed that the drugs were frequently sent to Susan Fukumoto's work location at Wahiawa

Animal Hospital.  (TR 2 at 103–105, 115–17.)  Anthony Tabion also accepted packages at his place of business in Hawaii.  (TR 5 at 113–117.)  According to testimony presented at trial, Grimm and later Yamada would then fly to Honolulu, pick up the package from its shipping destination, and deliver the product to Ralph Byrd or someone else for distribution to sub-dealers.  (TR 2 at 36–45, 104–106; TR 5 at 33–38, 114–118.)  Petitioner usually directed that the money owed for the drugs be paid to Tabion.  (TR 5 at 112–28.)

The evidence presented at trial collectively demonstrated that there was an "overall agreement to perform various functions to achieve the objectives of the conspiracy," which was the transportation and distribution of methamphetamine.  Bauer, 75 F.3d at 1377.  Further, the mere fact that Yamada eventually replaced Grimm or that the conspiracy took place over the course of several years is not sufficient to support a finding of multiple conspiracies.  See Taren-Palma, 997 F.2d at 530.  Therefore, in light of the evidence presented at trial establishing the single conspiracy charged, Petitioner's trial counsel's failure to assert a multiple conspiracies theory did not constitute ineffective assistance.

I.     Forfeiture Proceeding

Petitioner raises three separate grounds on which he claims that counsel provided ineffective assistance of counsel during the forfeiture proceeding.

First, he contends that his counsel failed to object to the use and reference to the allegedly false and misleading financial exhibits.  (Mot. at 58.)  Second, he argues that his counsel failed to challenge the sufficiency of the evidence supporting the forfeiture claim.  (Id. at 58–59.)  Third, he claims that his counsel failed to present evidence to establish that items were either purchased by legitimate means or purchased prior to the period covered in the indictment.   (Id. at 59–60.)  These errors, according to petitioner, warrant setting aside the Jury's forfeiture verdict and vacating the Court's Order of Forfeiture.  (Id. at 75.)

As discussed above, Petitioner's claims regarding the criminal forfeiture count are not cognizable in an action for post conviction relief pursuant to § 2255 because those claims do not seek release from custody.  Thiele, 314 F.3d at 400.  Accordingly, these claims do not provide a basis for relief in this proceeding.

J.     Jury Instructions Regarding Counts Two and Three

Petitioner claims that his counsel rendered ineffective assistance by failing to object to the Court's jury instructions regarding Counts Two and Three. With respect to those Counts, the Jury was instructed as follows:

> In order for Michael Schulze to be found guilty of those charges, the government must prove each of the following elements beyond a reasonable doubt: First, Michael Schulze knowingly delivered [X]

45

grams or more of methamphetamine, its salts, isomers and salts of its isomers; and, second, Michael Schulze knew that it was methamphetamine or some other prohibited drug.

(TR 7 at 24–25.)  Since the SSI charged Petitioner with distribution of methamphetamine, Petitioner argues that the jury instruction permitting a conviction based on Petitioner's knowledge that he was distributing "methamphetamine or some other prohibited drug" served to constructively amend the SSI and thereby violate Petitioner's Fifth Amendment right.  (Doc. # 438 at 3.) According to Petitioner, had his attorneys objected to this instruction on this ground, the outcome in the proceedings would have been different because "there is a reasonable probability that the Jury did not believe that Schulze delivered methamphetamine, but perhaps 'some other prohibited drug.'"  (Id. at 3.)

"A constructive amendment involves a change, whether literal or in effect, in the terms of the indictment."  United states v. Dipentino, 242 F.3d 1090, 1094 (9th Cir. 2001).  The Ninth Circuit has found constructive amendment of an indictment where (1) "'the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved,'" or (2) "'there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument.'"  United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002)

(quoting United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984)).

Neither type of constructive amendment occurred here. First, the crimes charged in the SSI were not effectively altered by the jury instructions given at trial. Indeed, the jury instructions were entirely consistent with the crimes for which Petitioner was charged in the SSI. The SSI charged Petitioner with knowingly distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B). The Ninth Circuit has held that "[a] defendant charged with importing or possessing a drug is not required to know the type and amount of drug." United States v. Carranza, 289 F.3d 634, 644 (9th Cir. 2002). Rather, a defendant can be convicted under § 841 if he knows that he is importing or has in his possession "some controlled substance."[4] Id. (citing United States v. Ramirez-Ramirez, 875 F.2d 772, 774 (9th Cir. 1989) and United States v. Salazar, 5 F.3d 445, 446 (9th Cir. 1993). Therefore, it was not improper to instruct the Jury that an element of the offenses set forth in Counts Two and Three was Petitioner's knowledge that the drug he distributed "was methamphetamine or some other prohibited drug."

---

[4]To be sure, the Jury also had to specifically find that the prosecution proved beyond a reasonable doubt the "drug quantity and type" for Petitioner to have been convicted on Counts Two and Three. See United States v. Hunt, --- F.3d ---, 2011 WL 3850555, at *4 (9th Cir. Sept. 01, 2011). The jury instruction plainly accounted for this requirement. (See TR 7 at 24–25.)

Second, the facts presented at trial were entirely consistent with the allegations in the SSI, which charged Petitioner with knowing distribution of methamphetamine. The prosecution presented overwhelming evidence indicating that Petitioner was involved in the distribution of methamphetamine, including the drug exhibits themselves, Petitioner's fingerprint on a two ounce bag of methamphetamine (TR 4 at 141–144; TR 5 at 19), and testimony from Petitioner's co-conspirators Donald Grimm (TR 2 at 38), Earl Yamada (TR 2 at 95), and Anthony Tabion (TR 5 at 114) confirming that the specific drug that Petitioner distributed was methamphetamine. Therefore, contrary to Petitioner's contention, there is no reasonable probability that the Jury believed Petitioner distributed some other prohibited drug.

Since the jury instructions for Counts Two and Three were not constructive amendments or otherwise improper, counsel's failure to object to these instructions did not constitute ineffective assistance.

K.    Sentencing Enhancement

Petitioner asserts that his trial counsel failed to adequately challenge the application of the four-level sentence enhancement. (Mot. at 61.) Specifically, Petitioner claims that his counsel should have objected to the four-level enhancement on the ground that the prosecution did not prove that the offense for

48

which he was convicted involved five or more participants, nor did it prove that he was the leader of the criminal activity. (Id. at 61–62.) According to Petitioner, counsel's "failure to realize this fact and object on this ground was unreasonable, unprofessional, and prejudicial because the application of § 3B1.1(a) enhanced Schulze's sentence by more than 10 years." (Id. at 62.)

As discussed above, the evidence presented at trial established one conspiracy involving Petitioner, Grimm, Yamada, Fukumoto, Tabion, and Byrd. Additionally, the testimony given by Grimm, Yamada, Tabion, and Byrd demonstrated that Petitioner served as the leader of the conspiracy, organizing the plan, inviting the others to participate, and instructing them on what to do. (TR 2 at 36–55, 95–111;TR 5 at 35–52, 113–28.) Therefore, in light of the evidence presented at trial, Petitioner's counsel's failure to challenge the four-level sentence enhancement was not "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

L.      Objection Under Apprendi

Petitioner also claims that his counsel rendered ineffective assistance during his sentencing by failing to object under Apprendi, to the Court's finding of an increased drug quantity and type. (Mot. at 63.) Petitioner alleges that his sentence violated his Sixth Amendment rights because the sentence "exceed[s] the

term authorized by the jury's verdict." (Id.)  Petitioner further alleges that his counsel's failure to object at sentencing under Apprendi has resulted in continued prejudice because he was only given a limited remand "without any chance of litigation," rather than a full remand and resentencing.  (Id. at 65.)

However, the Ninth Circuit has already considered and rejected Petitioner's Apprendi arguments, stating: "Schulze raises multiple challenges to the district court's decision not to resentence him following a limited Ameline remand. These contentions lack merit."  Schulze, 346 Fed. Appx. at 269 (citing United States v. Thornton, 511 F.3d 1221, 1226–29 (9th Cir. 2008); United States v. Combs, 470 F.3d 12294, 1296–97 (9th Cir. 2006); and United States v. Montgomery, 462 F.3d 1067, 1069–71 (9th Cir. 2006)).  Therefore, Petitioner is barred from raising this argument now under the guise of an ineffective assistance of counsel claim.  See Olney, 433 F.2d at 162 ("[H]aving raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255.").  Moreover, even if Petitioner was not barred from now asserting this claim, the Court finds that his trial counsel's failure to raise an argument that the Ninth Circuit determined lacks merit cannot be said to constitute ineffective assistance.

M.    $50,000 Fine

Petitioner challenges his counsel's failure to object to the $50,000 fine imposed on him on the ground that it exceeded the amount that he was able to pay and was based, in part, on a 1995 Chevrolet pickup truck that Petitioner claims he did not own. This claim fails for two reasons. First, Petitioner's claim regarding the amount of the imposed fine does not constitute a cognizable claim under § 2255. As set forth above, claims for relief other than release from custody cannot be brought in a § 2255 motion. Thiele, 314 F.3d at 400; see Kramer, 195 F.3d 1129, 1130 (9th Cir. 1999) ("§ 2255 is available only to defendants who are in custody and claiming the right to be released."). Second, the Ninth Circuit has already determined that "the record contains sufficient evidence that Schulze owns a 1995 Chevrolet pick-up truck that may be sold to satisfy the fine." United States v. Schulze, 360 Fed. Appx. 774, 775 (9th Cir. 2009) (citing United States v. Orlando, 553 F.3d 1235, 1240 (9th cir. 2009); United States v. Ladum, 141 F.3d 1328, 1344 (9th Cir. 1998). Therefore, the law of the case bars Petitioner from now raising this argument under the guise of an ineffective assistance of counsel claim. See Olney, 433 F.2d at 162 ("[H]aving raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255.").

N.    Appellate Counsel

Petitioner alleges that his appellate counsel failed to render effective assistance of counsel for multiple reasons.

Petitioner first contends that his appellate counsel rendered ineffective assistance by: (1) failing to seek clear error review of the Court's application of the four-level sentence enhancement, and (2) failing to seek appellate review of the "prejudicial variance" in Count One. (Mot. at 69–71.) These first two assertions are based on contentions that formed the basis of Petitioner's ineffective assistance claims against his trial counsel. As set forth above, the evidence presented at trial supports a finding that Petitioner was the leader of a single drug conspiracy involving at least five participants. Since Petitioner's arguments challenging the four-level enhancement and the alleged variance are not supported by the evidence, trial counsel's failure to raise these arguments was not objectively unreasonable. For the same reasons, the Court finds that appellate counsel's failure to raise these arguments on appeal was not objectively unreasonable.

Petitioner next contends that his appellate counsel's failure to seek appellate review of the Court's denial of his Motion for Witness Expenses constituted ineffective assistance. (Id. at 72–73.) The Court concludes that Petitioner has not demonstrated that counsel's alleged error was "so serious as to

deprive [him] of a fair trial." Strickland, 466 U.S. at 687. In other words, even assuming that counsel's failure was objectively unreasonable, Petitioner has not demonstrated that testimony from his proffered witnesses would have been favorable to the defense, let alone affect the outcome of the trial.

Petitioner also contends that his appellate counsel failed to challenge the sufficiency of the evidence in support of forfeiture. (Mot. at 74–75.) As discussed above, claims for relief other than release from custody are not cognizable under § 2255. Thiele, 314 F.3d 399, 400. Therefore, this claim does not constitute a basis for relief in this proceeding.

Next, Petitioner argues that his appellate counsel rendered ineffective assistance by failing to seek clear error review of the Court's drug quantity findings. (Mot. at 71–72.) This argument is based on Petitioner's contention that there was no evidence connecting Petitioner to the seized Fukumoto drugs. (Id. at 71.) However, that contention is not supported by the record. Yamada testified at trial that those drugs were sent at Petitioner's direction. (TR 2 at 115–22.) Furthermore, Yamada's testimony was corroborated by the undercover recordings of Petitioner himself, wherein he admits that he was responsible for the drugs sent to Fukumoto. (Doc. # 457-2 at 259.) Since Petitioner's argument is not supported by the evidence, his appellate counsel's failure to raise the argument on appeal

does not constitute ineffective assistance.

Lastly, Petitioner asserts that his appellate counsel rendered ineffective assistance by failing to seek appellate review of the alleged prosecutorial misconduct. As discussed above, the Court found that Petitioner's allegations of prosecutorial misconduct regarding the following issues lack merit: (1) the alleged improper vouching, (2) the alleged <u>Griffin</u> violation, (3) the alleged suppression of evidence in connection with Thomas Kaiser, and (4) the alleged failure to disclose the search warrant and supporting affidavit authorizing the search of the Fukumoto package. Therefore, it cannot be said that Petitioner's appellate counsel's failure to raise these issues on appeal constitutes ineffective assistance.

With respect to the remaining claims of prosecutorial misconduct, including those claims that the Court did not address in light of the Ninth Circuit's determination that they were waived, the Court concludes that appellate counsel's failure to raise those claims on appeal does not fall outside "the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 689. The record indicates that his appellate counsel raised several issues on appeal, including the validity of the search warrant for Petitioner's residence, the issue of whether Olaes was acting under color of law when he recorded his conversations with Petitioner,

and the propriety of the factual findings that formed the basis of Petitioner's

enhanced sentence.  It may be that appellate counsel decided that raising numerous

additional claims of prosecutorial misconduct would undercut his credibility and

weaken his more compelling arguments.  This is precisely the sort of second

guessing of counsel's strategic decision that <u>Strickland</u> cautions against.  <u>See</u> 466

U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly

deferential. It is all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence, and it is all too easy for a court,

examining counsel's defense after it has proved unsuccessful, to conclude that a

particular act or omission of counsel was unreasonable.").  Counsel's strategic

decisions made after thorough investigation of the law and facts are virtually

unchallengeable.  <u>Id.</u> at 690.  Here, Petitioner has failed to "overcome the

presumption that, under the circumstances, the challenged action might be

considered sound [ ] strategy." <u>Id.</u> at 689.  Therefore, the Court finds that

Petitioner's appellate counsel did not render ineffective assistance by failing to

raise these issues on appeal.

III. <u>Cumulative Error</u>

Petitioner also claims that he suffered prejudice because of the cumulative

effect of the foregoing alleged errors.  (Mot. at 17–18, 67.)  Even if no single trial

error is sufficiently prejudicial to warrant relief, the cumulative effect of several

errors still may prejudice a defendant such that his conviction must be overturned.

See Alcala v. Woodford, 334 F.3d 862, 893–95 (9th Cir. 2003).  However, where

no single constitutional error is shown, there can be no cumulative error.  See

Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).  Here, Petitioner has not

shown that there were any constitutional errors in the underlying proceedings.

IV.    Constructive Amendment of the Indictment

Petitioner asserts that the Court's jury instruction as to Counts Two

and Three constituted plain error because those instructions constructively

amended the SSI.  Based on that assertion, Petitioner claims that the Court should

vacate those two Counts or order a new trial.  As discussed above, the jury

instruction was not a constructive amendment or otherwise improper.

Moreover, even assuming that the jury instructions improperly

misstated an element of the alleged offenses, such error was harmless here.  See

United States v. Driggers, 559 F.3d 1021, 1025 (9th Cir. 2009) (holding that a jury

instruction that merely misstates an element of the crime is subject to harmless

error review).  In light of the overwhelming evidence showing that Petitioner

distributed methamphetamine, "it is clear beyond a reasonable doubt that a rational

jury would have found [Petitioner] guilty absent the error."  United States v.

Munoz, 412 F.3d 1043, 1047 (9th Cir. 2005).

V.     Use of Surreptitiously Recorded Statements

Lastly, Petitioner argues that the admission of the secretly recorded statements of Petitioner at trial violated the Confrontation Clause of the Sixth Amendment and his right against self-incrimination under the Fifth Amendment. (Mot. at 78.)

The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those "who 'bear testimony" against him." Id. at 51. The Court ruled that protections of the Confrontation Clause do not apply to statements that are not "testimonial," such as " casual remark[s] to an acquaintance" or "statements made unwittingly to an FBI informant." Id. at 51–68.

Here, Petitioner's own secretly recorded statements constitute the very type of statement that the Crawford Court expressly determined was not testimonial, that is, "statements made unwittingly to an FBI informant." Since Petitioner did not make these statements "under circumstances which would lead

an objective witness reasonably to believe that [they] would be available for use at a later trial," they were not testimonial within the meaning of <u>Crawford</u>. <u>Parle v. Runnels</u>, 387 F.3d 1030, 1037 (9th Cir.2004) (quoting <u>Crawford</u>, 541 U.S. at 52). Therefore, their admission at trial did not violate the Confrontation Clause.

With respect to Petitioner's allegation that his Fifth Amendment right was violated, the Supreme Court has held that a suspect's disclosure of incriminating facts to a government informant does not implicate the suspect's privilege against self-incrimination under the Fifth Amendment, as the potential for governmental compulsion is absent. <u>Hoffa v. United States</u>, 385 U.S. 293, 298–299 (1966); <u>cf</u>. <u>Illinois v. Perkins</u>, 496 U.S. 292, 300 (1991) (holding that undercover government agent is not required to inform an incarcerated suspect of his <u>Miranda</u> rights before engaging in a discussion with him). Therefore, there is no legal merit to Petitioner's claim that the admission of his secretly recorded statements violated his Fifth Amendment rights.

VI.    <u>Certificate of Appealability</u>

A Certificate of Appealability may only be issued if the petitioner "has made a substantial showing of the denial of a <u>constitutional</u> right." 28 U.S.C. § 2253(c)(2) (emphasis added). The petitioner is required to show that reasonable jurists could debate whether the issues could have been resolved differently or are

"adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983), superseded on other grounds by 28 U.S.C. § 2253(c)(2)); see also Mendez v. Knowles, 556 F.3d 757, 771 (9th Cir. 2009).

Here, Petitioner has made no such showing.  Reasonable jurists could not debate whether these issues could have been resolved differently.  Further, the issues raised are not "adequate to deserve encouragement to proceed further." Slack, 529 U.S. at 483.  Accordingly, Petitioner is **DENIED** a Certificate of Appealability.

CONCLUSION

For the reasons set forth above, the Court **DENIES** Petitioner's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence.  (Doc. # 188.) Further, since Petitioner has not made a substantial showing of the denial of a constitutional right, the Court also **DENIES** Petitioner a Certificate of Appealability.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 30, 2011.



_____
David Alan Ezra
United States District Judge

Schulze v. United , CV NO. 11-00188 DAE-RLP, CR. NO. 02-00090 DAE;
ORDER: (1) DENYING PETITIONER'S § 2255 MOTION AND (2) DENYING
A CERTIFICATE OF APPEALABILITY